C. Moze Cowper (Bar No. 326614)
**COWPER LAW PC**
12301 Wilshire Boulevard, Suite 303
Los Angeles, California 90025
Tel.: (877) 529-3707

Patrick Barrett (*to be admitted pro hac*)
**PROVOST UMPHREY LAW FIRM**
4205 Hillsboro Pike, Suite 303
Nashville, Tennessee 37215
Tel.: (615) 297-1932

Edward Fisher (*to be admitted pro hac*)
**PROVOST UMPHREY LAW FIRM**
350 Pine Street, Suite 1100
Beaumont, Texas 77701
Tel.: (409) 838-8813

*Attorneys for Plaintiff (additional counsel listed on signature page)*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JANE DOE (C.M.S.), an individual,<br><br>Plaintiff,<br><br>vs.<br><br>WYNDHAM HOTELS & RESORTS, INC.; WYNDHAM HOTEL GROUP, LLC; RAMADA WORLDWIDE INC.; SANT KABIR LLC; GOLDEN BRIDGE INTERNATIONAL INVESTMENT INC., SUPER8 WORLDWIDE INC., ARS HOSPITALITY LLC, VISTA INTERNATIONAL INC., HILTON DOMESTIC OPERATIONAL COMPANY INC., APPLE NINE SPE SAN JOSE INC., APPLE EIGHT HOSPITALITY OWNERSHIP INC.,<br><br>Defendants. | Case No. **'24CV0217 JLS  AHG**<br><br>**PLAINTIFF'S ORIGINAL COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

# ORIGINAL COMPLAINT

COMES NOW Plaintiff Jane Doe (C.M.S.), by and through the undersigned counsel, and respectfully submits her complaint for damages and makes the following averments.

# SUMMARY

1.      Jane Doe (C.M.S.) files this civil lawsuit seeking compensation for the harm she suffered as a result of the sex trafficking she endured in hotels owned, operated, maintained, and controlled by Defendants and their agents and employees.

2.      Sex trafficking is the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of causing the person to engage in a commercial sex act either (1) before the person turns 18 years old; or (2) through force, fraud, or coercion.[1]

3.      Commercial sex act means any sex act, on account of which anything of value is given to or received by any person.[2] Traffickers or 'pimps' use threats, violence, manipulation, lies, debt, bondage, and other forms of coercion to compel adults and children to engage in commercial sex acts against their will.

4.      Sex trafficking has become a public health crisis that has reached epidemic proportions in the United States. It is now widely recognized, including by

---

[1] 18 U.S.C. §1591; 22 U.S.C. § 7102.
[2] 18 U.S.C. §1591(e)(3).

PLAINTIFF'S ORIGINAL COMPLAINT                    1

Congress and many state legislatures, that combating sex trafficking requires more than just criminal penalties for pimps and sex buyers.

5.      Since 2003, federal law, through the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §1581, et seq, has provided victims of sex trafficking a civil remedy against perpetrators of criminal sex trafficking.

6.      In 2008, Congress recognized the need to extend liability beyond sex buyers and sellers and intentionally expanded the scope of the TVPRA to reach those who—while not criminally liable under the TVPRA—financially benefit from participation in a venture that they know or *should know* engages in criminal sex trafficking.

7.      As discussed herein, Defendants derived financial benefit from facilitating sex trafficking by providing venues where traffickers could exploit victims, including victims like Jane Doe (C.M.S.), with minimal risk of detection or interruption.

8.      Defendants continued supporting traffickers, including Jane Doe (C.M.S.)'s trafficker, despite evident and apparent signs of widespread and ongoing sex trafficking at its hotels and specifically at the Ramada Inn located at 2141 S. Harbor Blvd., Anaheim, CA 92802 and the Super8 located at 528 W. Washington Ave., Escondido, CA 92025 and the Homewood Suites located at 10 W Trimble Road, San Jose, Ca 95131. Defendants were, therefore, knowingly receiving a benefit from

PLAINTIFF'S ORIGINAL COMPLAINT                    2

participation in a venture that Defendants knew or should have known was engaged in sex trafficking.

## PARTIES

9.     Jane Doe (C.M.S.) is a natural person who is currently a resident and citizen of Arizona.

10.     Defendant Wyndham Hotels & Resorts, Inc. is a Delaware corporation with its principal place of business in New Jersey. It can be served by its registered agent Corporate Creations Network Inc., 1521 Concord Pike, Suite 201, Wilmington, DE 19803. Wyndham Hotels & Resorts, Inc. is the successor entity to Wyndham Worldwide Corporation. It retains successor liability for wrongful acts of its predecessor Wyndham Worldwide Corporation. All references to Wyndham in this Complaint include references to the acts and omissions of its predecessor.

11.     Defendant Wyndham Hotel Group, LLC is a Delaware company with its principal place of business in Parsippany, New Jersey. It can be served by its registered agent Corporate Creations Network Inc., 1521 Concord Pike, Suite 201, Wilmington, DE 19803. Upon information and belief, Wyndham Hotel Group, LLC is a wholly owned subsidiary of Wyndham Hotels & Resorts, Inc. and a former subsidiary of Wyndham Worldwide Corporation.

12.     Defendant Ramada Worldwide Inc. is a for-profit Delaware corporation with its principal place of business in Parsippany, New Jersey. It may be served through

PLAINTIFF'S ORIGINAL COMPLAINT                    3

its registered agent Corporate Creations Network In, 3260 N. Hayden Road #210, Scottsdale, AZ 85251.

13.     Defendants Wyndham Hotels & Resorts, Inc., Wyndham Hotel Group, LLC, and Ramada Worldwide Inc., will be referred to collectively as "Ramada Franchisors." Upon information and belief, they owned, operated, controlled, and/or managed the Ramada Inn located at 2141 S. Harbor Blvd., Anaheim, CA 92802.

14.     Sant Kabir, LLC is a limited liability with its principal place of business at 12800 Center Court Dr. S, Suite 525, Cerritos, CA 90703.  At all relevant times, Sant Kabir, LLC owned, operated, and controlled the Ramada Inn located at 2141 S. Harbor Blvd., Anaheim, CA 92802.

15.     All references to Sant Kabir, LLC, include any department, division, office, agency, subsidiary, or corporate affiliate whether domestic, foreign, and/or international. These references also include any director, officer, agent (either with direct/actual or implied/apparent authority), employee, person, firm, or corporation action on behalf of Sant Kabir, LLC now or at any time relevant to the claims herein.

16.     Sant Kabir, LLC may be served through its registered agent for service: Devang Patel, 12800 Center Court Dr., Suite 525, Cerritos, CA 90703.

17.     Golden Bridge International Investment Inc. is a stock corporation with its principal place of business at 796 Captiva Circle, Corona, CA 92882.  At all relevant

PLAINTIFF'S ORIGINAL COMPLAINT                    4

times, Golden Bridge International Investment Inc. owned, operated, and controlled the Ramada Inn located at 2141S. Harbor Blvd., Anaheim, CA 92802.

18.    All references to Golden Bridge International Investment Inc., include any department, division, office, agency, subsidiary, or corporate affiliate whether domestic, foreign, and/or international. These references also include any director, officer, agent (either with direct/actual or implied/apparent authority), employee, person, firm, or corporation action on behalf of Golden Bridge International Investment Inc. now or at any time relevant to the claims herein.

19.    Golden Bridge International Investment Inc. may be served with process through its registered agent for service: Yihong Shan, 796 Captiva Circle, Corona, CA 92882.

20.    Defendants Sant Kabir, LLC and Golden Bridge International Investment Inc. will be referred to collectively as "Ramada Franchisees."

21.    Wyndham Hotels & Resorts, Inc., f/k/a Wyndham Worldwide Corporation, d/b/a Super 8 ("WHR") is a Delaware corporation with its principal place of business located at 22 Sylvan Way, Parsippany, New Jersey 07054. Defendant WHR is the successor entity to the hotel business of Wyndham Worldwide Corporation and its former subsidiaries. Defendant WHR is responsible, as successor, for all liabilities of Wyndham Worldwide Corporation and its predecessor subsidiaries related to franchising, controlling, and operating the Super8 Escondido. All references to WHR

PLAINTIFF'S ORIGINAL COMPLAINT                5

include the acts and omissions of predecessor entities for which WHR is responsible, including Wyndham Worldwide Corporation and its former subsidiaries.

22.     Wyndham Hotel Group, LLC ("WHG") is a for-profit Delaware company with its principal place of business in Parsippany, New Jersey. Upon information and belief, WHG is a wholly owned subsidiary of WHR and a former subsidiary of Wyndham Worldwide Corporation.

23.     Super 8 Worldwide, Inc. ("S8W") is a for-profit Delaware company with its principal place of business in Parsippany, New Jersey. Upon information and belief, S8W is a direct subsidiary of WHG, an indirect subsidiary of WHR, and a former subsidiary of Wyndham Worldwide Corporation.

24.     Defendants Wyndham Hotels & Resorts, Inc., Wyndham Hotel Group, LLC, and Ramada Worldwide Inc., will be referred to collectively as "Super8 Franchisors." Upon information and belief, they owned, operated, controlled, and/or managed the Super8 located at 528 W. Washington Ave., Escondido, CA 92025.

25.     Upon information and belief, at all relevant times, the Super 8 Franchisors, either directly or through the acts of predecessors for which they are responsible, owned, operated, controlled, and/or managed the Super 8 located at 528 W. Washington Ave., Escondido, CA 92025 through the Wyndham franchising system.

26.     ARS Hospitality, LLC is a limited liability with its principal place of business at 44 Molton St., San Franscisco, CA 94123. At all relevant times, ARS

PLAINTIFF'S ORIGINAL COMPLAINT                6

Hospitality, LLC owned, operated, and controlled the Super8 located at 528 W. Washington Ave., Escondido, CA 92025.

27. All references to ARS Hospitality, LLC include any department, division, office, agency, subsidiary, or corporate affiliate whether domestic, foreign, and/or international. These references also include any director, officer, agent (either with direct/actual or implied/apparent authority), employee, person, firm, or corporation action on behalf of ARS Hospitality, LLC now or at any time relevant to the claims herein.

28. ARS Hospitality, LLC may be served through its registered agent for service: Savitaben R. Patel - 44 Moulton St. San Francisco, CA 94123.

29. Vista International, Inc. is a stock corporation with its principal place of business at 380 Dry Creek Rd., Monterey, CA 93940. At all relevant times, Vista International, Inc. owned, operated, and controlled the Super8 located at 528 W. Washington Ave., Escondido, CA 92025.

30. All references to Vista International, Inc., include any department, division, office, agency, subsidiary, or corporate affiliate whether domestic, foreign, and/or international. These references also include any director, officer, agent (either with direct/actual or implied/apparent authority), employee, person, firm, or corporation action on behalf of Vista International, Inc. now or at any time relevant to the claims herein.

PLAINTIFF'S ORIGINAL COMPLAINT          7

31. Vista International, Inc. may be served with process through its registered agent for service: Marshall Brubacher - 650 E Hospitality Ln. Ste 470, San Bernardino, CA 92408.

32. Defendants ARS Hospitality, LLC. and Vista International, Inc. will be referred to collectively as "Super8 Franchisees."

33. Defendant Hilton Domestic Operating Company Inc. ("Hilton-Homewood Suites Franchisor") is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business at 7930 Jones Branch Drive, Suite 1100, McLean, Virginia 22102 USA.

34. Upon information and belief, at all relevant times, Hilton-Homewood Suites Franchisor has directly and through affiliates owned, operated, controlled, managed, licensed, leased, and/or provided various services to Homewood Suites, including the Homewood Suites, San Jose.

35. Apple Nine SPE San Jose Inc. is a stock corporation with its principal place of business at 814 E. Main St., Richmond, VA 23219. At all relevant times, Apple Nine SPE San Jose owned, operated, and controlled the Homewood Suites located at 10 W. Trimble Road, San Jose, CA 95131.

36. All references to Apple Nine SPE San Jose Inc. include any department, division, office, agency, subsidiary, or corporate affiliate whether domestic, foreign, and/or international. These references also include any director, officer, agent (either

PLAINTIFF'S ORIGINAL COMPLAINT                    8

with direct/actual or implied/apparent authority), employee, person, firm, or corporation action on behalf of Apple Nine SPE San Jose Inc. now or at any time relevant to the claims herein.

37.   Apple Nine SPE San Jose Inc. may be served through its registered agent for service: Corporation Service Company, CSC Lawyers Incorporating Service, 2710 Gateway Oaks Dr., Sacramento, CA 95833.

38.   Apple Eight Hospitality Ownership, Inc. is a stock corporation with its principal place of business at 814 E. Main St., Richmond, VA 23219. At all relevant times, Apple Eight Hospitality Ownership, Inc. owned, operated, and controlled the Homewood Suites located at 10 W. Trimble Road, San Jose, CA 95131.

39.   All references to Apple Eight Hospitality Ownership, Inc., include any department, division, office, agency, subsidiary, or corporate affiliate whether domestic, foreign, and/or international. These references also include any director, officer, agent (either with direct/actual or implied/apparent authority), employee, person, firm, or corporation action on behalf of Apple Eight Hospitality Ownership, Inc. now or at any time relevant to the claims herein.

40.   Apple Eight Hospitality Ownership, Inc. may be served with process through its registered agent for service: Corporation Service Company, CSC Lawyers Incorporating Service, 2710 Gateway Oaks Dr., Sacramento, CA 95833.

PLAINTIFF'S ORIGINAL COMPLAINT                9

41.     Defendants Apple Nine SPE San Jose Inc. and Apple Eight Hospitality Ownership, Inc. will be referred to collectively as "Hilton-Homewood Suites Franchisees."

## JURISDICTION AND VENUE

42.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the TVPRA.

43.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because, pursuant to 28 U.S.C. §§ 1391(c)(2) and 1391(d), at least one Defendant is a resident of the Southern District of California, and all Defendants are residents of California.

44.     Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of California.

45.     C.M.S. was trafficked in this District and Division.

## FACTS

**I.      Jane Doe (C.M.S.) was a Victim of Unlawful Sex Trafficking at a Hotels Owned, Operated, Managed, and Controlled by Defendants.**

46.     Jane Doe (C.M.S.)'s trafficking began in 2013. She had multiple traffickers in the years she was trafficked. Her traffickers controlled her through physical violence and force and made her engage in commercial sex acts for their financial benefit. All of her traffickers forced her to post ads of herself and posted ads

PLAINTIFF'S ORIGINAL COMPLAINT                    10

on her behalf. She did not want to engage in commercial sex acts but when she refused, they threatened her.

47. In February of 2014, Jane Doe (C.M.S.) was trafficked at the Ramada located at 2141 S. Harbor Blvd., Anaheim, CA 92802.

48. January through May of 2014, Jane Doe (C.M.S.) was trafficked at the Super8 located at 528 W. Washington Ave., Escondido, CA 92025.

49. The Ramada and Super8 are Wyndham brand properties and will be referred to collectively as "Wyndham properties" or "Wyndham hotels."

50. Jane Doe (C.M.S.)'s trafficking had profound effects on her, consistent with "red flags" of trafficking that are well-recognized in the hospitality industry.[3] These effects were obvious and apparent to the staff and management of the subject Wyndham hotels including effects on C.M.S.'s appearance, demeanor, movements throughout the hotel, and her interactions with her traffickers, hotel staff, and others. Observing these effects provided Defendants with notice that C.M.S. was being continually subjected to coercion, control, and exploitation.

51. Jane Doe (C.M.S.) remained under the continuous control of her traffickers through at least 2015.

**II.     The Hotel Industry's Role in Sex Trafficking and Defendants' Knowledge of the Problem.**

---

[3] *See supra* section II and accompanying footnote for discussion of "red flags" of trafficking.

PLAINTIFF'S ORIGINAL COMPLAINT                    11

52.     The widely known and pervasive relationship between sex trafficking and the hotel industry necessarily shapes what the Franchisor Defendants and Franchisee Defendants knew or should have known regarding the trafficking at their hotel properties, including the trafficking of Jane Doe (C.M.S.).

53.     Today, sex slavery is pervasive in the United States, and hotels are the primary place where it happens.[4] For years, sex traffickers have been able to reap their profits with little risk when attempting to operate within hotels.[5] In 2014, 92% of calls received by the National Human Trafficking Hotline involved reports of sex trafficking taking place at hotels.[6] Hotels have been found to account for over 90% of commercial exploitation of children.[7]

54.     Because of this link between hotels and sex trafficking, government agencies and non-profits have devoted significant efforts to educating the hotel industry, including Defendants, on best practices for identifying and responding to sex trafficking.

---

[4] "This is not only a dominant issue, it's an epidemic issue." *See* Jaclyn Galucci, *Human Trafficking is an Epidemic in the U.S. It's Also Big Business*, Fortune (April 2019),https://fortune.com/2019/04/14/human-sex-trafficking-us- slavery/ (citing Cindy McCain, who chairs the McCain Institute's Human Trafficking Advisory Council). "It's also something that is hiding in plain sight. It's everywhere—it's absolutely everywhere." *Id.*

[5] *See Human Trafficking in the Hotel Industry*, Polaris Project ( Feb. 10, 2016), https://polarisproject.org/blog/2016/02/10/human-trafficking-hotel-industry; *see also* Eleanor Goldberg, *You Could Help Save A Trafficking Victim's Life With Your Hotel Room Pic*, Huffington Post (June 2016), http://www.huffingtonpost.com/entry/taking-a-photo-of-your-hotel-room-could-help-save-a-trafficking-victimslife_us_57714091e4b0f168323a1ed7.

[6] Michele Sarkisian, *Adopting the Code: Human Trafficking and the Hotel Industry*, Cornell Hotel Report (Oct. 2015), https://scholarship.sha.cornell.edu/cgi/viewcontent.cgi?article=1222&context=chrpubs.

[7] *See* Erika R. George and Scarlet R. Smith, *In Good Company: How Corporate Social Responsibility Can Protect Rights and Aid Efforts to End Child Sex Trafficking and Modern Slavery*, 46 N.Y.U. J. Int'l L. & Pol. 55, 66-67 (2013).

---

PLAINTIFF'S ORIGINAL COMPLAINT                    12

55.     Multiple agencies and organizations who actively combat sex trafficking, including the United States Department of Homeland Security, the National Center for Missing and Exploited Children, the Polaris Project, the Texas Attorney General, Love 146, and EPCAT, among others, have established recommended policies and procedures for recognizing the signs of sex trafficking.[8]

56.     Some of the recommended policies and procedures intended to reduce or eliminate sex trafficking, which Defendants are aware or should be aware of, include learning to identify warning signs and indicators of sex trafficking, including but not limited to:[9]

- Individuals show signs of fear, anxiety, tension, submission, and/or nervousness;

- Individuals show signs of physical abuse, restraint, and/or confinement;

- Individuals exhibit evidence of verbal threats, emotional abuse, and/or being treated in a demeaning way;

- Individuals show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

- Individuals lack freedom of movement or are constantly monitored;

- Individuals avoid eye contact and interaction with others;

---

[8] United States Department of Homeland Security Blue Campaign – One Voice. One Mission. End Human Trafficking, https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf (last visited April 13, 2023);National Center for Missing and Exploited Children, https://www.missingkids.org/theissues/trafficking#riskfactors (last visited April 13, 2023); Love 146, *Red Flags for Hotel & Motel Employees*, https://love146.org/wp-content/uploads/2017/04/Hospitality-Red-Flag-and-Reporting-Love146.pdf (last visited April 13, 2023); Texas Attorney General, *Human Trafficking Red Flags*, https://www2.texasattorneygeneral.gov/files/human_trafficking/human_trafficking_red_flags_handout.pdf (last visited April 13, 2023).

[9] *See Id.*

---

PLAINTIFF'S ORIGINAL COMPLAINT                 13

- Individuals have no control over or possession of money or ID;

- Individuals dress inappropriately for their age or have lower quality clothing compared to others in their party;

- Individuals have few or no personal items—such as no luggage or other bags;

- Individuals appear to be with a significantly older "boyfriend" or in the company of older males;

- A group of girls appears to be traveling with an older female or male;

- A group of males or females with identical tattoos in similar locations. This may indicate "branding" by a trafficker;

- Drug abuse or frequent use of "party drugs" such as GHB, Rohypnol, Ketamine, MDMA (Ecstasy), Methamphetamines, Cocaine, and Marijuana;

- Possession of bulk sexual paraphernalia such as condoms or lubricant;

- Possession or use of multiple cell phones; and

- Possession or use of large amounts of cash or pre-paid cards.

57.    The signs of sex trafficking in a hotel environment follow well-established patterns and can easily be detected by appropriately trained staff.

58.    Toolkits specific to the hotel industry have been developed, which help hotel staff in every position identify and respond to signs of sex trafficking.[10]  From check-in to check-out, there are indicators that traffickers and their victims routinely exhibit during their stay at a hotel.

---

[10] Department of Homeland Security, *Blue Campaign Toolkit*, https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf.

PLAINTIFF'S ORIGINAL COMPLAINT                    14

59.     The relationship between a pimp and a prostitute is inherently coercive, and the United States Department of Justice and other agencies and organizations have recognized that most individuals involved in prostitution are subject to force, fraud, or coercion.[11] It is also well understood that "prostitution," "sex trafficking," and "child sex trafficking" involve a single common denominator, the exchange of sex for money.

60.     The definition of sex trafficking in the TVPRA under 18 U.S.C. §1591(a)(1) incorporates the definition of commercial sex act. Defendants understood the practical and legal association between commercial sex and sex trafficking in a hotel environment. Thus, Defendants knew or should have known that signs of commercial sex (prostitution) activity in their hotels were in fact signs of sex trafficking.[12]

61.     All Defendants were aware or should have been aware of these signs of sex trafficking when operating, controlling, and managing their hotel properties, when enacting and enforcing policies and procedures applicable to those hotels and when training, educating, and supervising the staff of that hotel.

62.     The most effective weapon against sexual exploitation and human trafficking is education and training.[13]  As ECPAT concluded:

---

[11] *See, e.g.*, *A National Overview of Prostitution and Sex Trafficking Demand Reduction Efforts, Final Report*, https://www.ojp.gov/pdffiles1/nij/grants/238796.pdf; *Prostitution and Trafficking in Women: An Intimate Relationship*, https://www.ojp.gov/ncjrs/virtual-library/abstracts/prostitution-and-trafficking-women-intimate-relationship.
[12] *Id.*
[13] Polaris, *Recognizing Human Trafficking*, https://polarisproject.org/recognizing-human-trafficking/ (last visited April 13, 2023).

PLAINTIFF'S ORIGINAL COMPLAINT              15

The hospitality industry is in a unique position to identify and report human trafficking due to its perceived anonymity. Traffickers believe they can go unnoticed while exploiting victims across the globe in hotels— ranging from budget properties to luxury resorts. From check-in to check-out, there are a number of indicators victims and exploiters exhibit during the time they are on a hotel property.[14]

63.     This same conclusion is echoed by others who seek to eliminate sex trafficking in the hospitality industry, including the American Hotel Lodging Association: "Hotel employees who have undergone training are more aware of trafficking when it happens – and are more willing to report it – than those who have not been trained.[15]  In reference to companies like the Defendants, ECPAT observed: "If they do nothing to raise awareness or to prevent child trafficking, they risk becoming an indirect and unintentional conduit for the abuse that takes place."

64.     Given the prevalence of human trafficking in hotels and the abundance of information about how franchisors, owners, operators and hotel employees can identify and respond to this trafficking, it has become apparent that the decision of a hotel chain to continue generating revenue from traffickers without taking reasonable steps to identify and prevent trafficking in its hotels is a conscious decision to financially benefit by supporting and facilitating unlawful sex trafficking.

---

[14] ECPAT USA, *Training for Hotel Associates*, https://www.ecpatusa.org/hotel-training (last visited April 13, 2023).  *See also* Carolin L. et al., *Sex Trafficking in the Tourism Industry*, J. Tourism Hospit. (2015), https://www.longdom.org/open-access/sex-trafficking-in-the-tourism-industry-2167-0269-1000166.pdf.
[15] AHLA, *Free Online Training*, https://www.ahla.com/issues/human-trafficking (last visited April 13, 2023).

PLAINTIFF'S ORIGINAL COMPLAINT            16

65.    Each of the Defendants had a responsibility to adopt, implement, and adequately enforce policies to avoid facilitating sex trafficking and to train hotel staff to identify and respond to "red flags" of sex trafficking.

**III.    Sex Trafficking Has Long Been Prevalent at Wyndham Branded Properties, and Defendants Have Known About It.**

66.    Defendants' actual knowledge is *not* limited to a general awareness of the problem of sex trafficking in the hotel industry. Each of the Defendants has known, since well before Jane Doe (C.M.S.)'s trafficking, that sex trafficking was ongoing and widespread at Wyndham branded properties including the subject properties.

67.    Unfortunately for Jane Doe (C.M.S.), the promises made by the Franchisor Defendants and Franchisee Defendant(s) have proven empty. Defendants have failed, at all levels, to take appropriate action in response to their knowledge of widespread and ongoing human trafficking in their hotels. Instead, they have continued financially benefiting by providing venues for the sexual exploitation of victims like Jane Doe (C.M.S.).

**a.    Sex Trafficking at Wyndham Branded Hotels was well Known by Defendants.**

68.    Use of Wyndham branded properties, including Ramada and Super8 properties, for sex trafficking is well known to Wyndham.

69.    Upon information and belief, at all relevant times Wyndham has adopted a centralized approach to trafficking-related issues at all its branded properties.

PLAINTIFF'S ORIGINAL COMPLAINT                    17

Wyndham's public statements confirm that it knew sex trafficking was a problem at its hotels and that it retained control over the response of its branded hotels to sex trafficking. Wyndham has recognized it has a "critical role in increasing awareness and prevention" of sex trafficking in its hotels.[16] It has publicly claimed to be taking steps to avoid facilitating sex trafficking in its hotels since at least 2011.[17] However, Wyndham has refused to publish reports to show its progress on the EPCAT goals to combat sex trafficking in hotels.[18]

70.    Unfortunately, while Wyndham's statements reflect actual knowledge of the problem of sex trafficking, they reflect only a public relations strategy rather than a genuine commitment to stop facilitating trafficking. Emails among company executives reflect a hesitance to commit to meaningful anti-trafficking measures and a desire to avoid negative publicity without any significant burden.[19]

71.    The problem of sex trafficking at Wyndham properties was sufficiently well known that, in 2011, there was a public petition with thousands of signatures to stop Wyndham hotel staff from supporting child sex trafficking.[20] Although Wyndham publicly committed to take steps to stop facilitating trafficking, this promise proved

---

[16] https://hotelsmag.com/news/wyndham-implements-anti-prostitution-training/
[17] https://hotelsmag.com/news/wyndham-implements-anti-prostitution-training/
[18] https://thecode.my.salesforce-sites.com/apex/MemberProfilenew?id=0019000000GxgPrAAJ&year=2023
[19] https://journalism.berkeley.edu/projects/should-hotel-chains-be-held-liable-for-human-trafficking/ ("Scott McLester, Wyndham's former general counsel and chief compliance officer, wrote in an e-mail to the company's then C.E.O., Stephen Holmes, 'Even though we have been hesitant to commit to everything the [EPCAT] Code was asking for, the issue is not going away and it's starting to impact commercial relationships.' McLester added that the organization's 'concern about being 'bullied' into signing the Code is outweighed by the relative harmlessness of the Code itself.'")
[20] https://www.change.org/p/stop-wyndham-hotel-staff-from-supporting-child-sex-trafficking-in-wyndham-hotels

PLAINTIFF'S ORIGINAL COMPLAINT                18

empty; Wyndham has been named a "major contributor to sexual exploitation" and part of the "dirty dozen list" by the National Center on Sexual Exploitation.[21]

72. Sex trafficking was prominent at Wyndham branded properties, including Super8 and Ramada properties. Public information, including scores of news stories and online reviews, confirms both the widespread sex trafficking problem at Wyndham branded hotels and Defendants' knowledge and understanding of the problem.

73. In the past twenty years, Wyndham-branded properties have been mentioned in at least two hundred criminal trafficking cases filed by the federal government.[22]

74. Examples of notable press involving the frequent use of Wyndham branded hotels for illegal activity, including sex trafficking, include for Ramada:

- In June 1987 a federal grand jury indicted 16 persons on charges stemming from alleged participation in an interstate prostitution ring working out of hotels including a Rockville, Maryland Ramada Inn.[23]

- In September 2009, police discovered a prostitution ring at the Ramada Inn on Roosevelt Boulevard in Philadelphia. Police looking for a defendant in a drug case discovered 11 women. Some of the women reported that they were being held against their will and sexually assaulted.[24]

---

[21] https://endsexualexploitation.org/wyndham/
[22] https://journalism.berkeley.edu/projects/should-hotel-chains-be-held-liable-for-human-trafficking/
[23] Victoria Churchville, 16 INDICTED IN PROSITUTION RING THAT USED PAGERS, POSH HOTELS, The Washington Post, (June 19, 1987), https://www.washingtonpost.com/archive/local/1987/06/19/16-indicted-in-prostitution-ring-that-used-pagers-posh-hotels/c984c86e-6ecf-42ee-bb55-cbc980dab948/
[24] *Possible prostitution ring discovered at Boulevard Ramada*, WHYY PBS (Sept. 8, 2009), https://whyy.org/articles/possible-prostitution-ring-discovered-at-boulevard-ramada/

---

PLAINTIFF'S ORIGINAL COMPLAINT                    19

- In May 2010, Waterloo, Iowa Police followed used a Craigslist ad and made arrangements to meet females for sex at the local Ramada Inn. Police arrested two.[25]

- In February 2010, police in Burbank, California arrested three at the Ramada Burbank Airport Hotel on charges of prostitution as part of their effort to curb the sex trade.[26]

- In June 2012 Beaverton, Oregon police made an arrest at a Ramada Inn Northeast Portland in connection with a nationwide FBI sex trafficking sting.[27]

- In July 2012, East Hartford's "Hot Spot Unit" conducted a sting at at the Ramada Inn on Roberts Street in Hartford, Connecticut where it arrested a man for promoting prostitution and 6 women on charges of prostitution.[28]

- In January 2013 two women were arrested on suspicion of prostitution at the Ramada Inn Burbank in Burbank, CA.[29]

- In April 2013, police found an underage girl in a room where prostitution was believed to be occurring at a Tampa, Florida Ramada Inn.  A twenty-five-year-old woman fled the scene.  She was later arrested on charges of procuring a person under 18 for the purpose of prostitution, deriving support from the proceeds of prostitution and renting space to be used for prostitution.[30]  She was later convicted of charges of trafficking three underage teens, including a 16-year-old girl and a 14-year-old boy.[31]

[25] *Police make Prostitution Arrests*, Waterloo Police Department, https://www.waterloopolice.com/press-release/654-police-make-prostitution-arrests.html

[26] Olsen Ebright, Burbank Hookers, Beware, NBC 4 Los Angeles, (Mar. 3, 2010), https://www.nbclosangeles.com/news/local/burbank-prostitution/1867548/

[27] *Beaverton police arrest two in nationwide, FBI sex trafficking sting*, The Oregonian, (Jun. 26, 2012), https://www.oregonlive.com/beaverton/2012/06/beaverton_police_arrest_two_in.html

[28] *East Hartford Police Arrest Seven on Prostitution Charges*, Harford Courant, (Jul. 26, 2012), https://www.courant.com/community/hartford/hc-xpm-2012-07-27-hc-east-hartford-prostitution-arrests-0728-20120727-story.html

[29] *Two women arrested on suspicion of prostitution at Burbank Ramada Inn*, Burbank Leader (Feb. 1, 2013), https://www.latimes.com/socal/burbank-leader/the818now/tn-818-0201-two-women-arrested-on-suspicion-of-prostitution-at-burbank-ramada-inn-story.html

[30] Kristin Weber, Woman accused of recruiting minor for prostitution, 10 Tampa Bay, (Apr. 2, 2013), https://www.wtsp.com/article/news/local/woman-accused-of-recruiting-minor-for-prostitution/67-326688993

[31] Dan Sullivan, Tampa woman gets 15 years in prison for recruiting teens for prostitution, Tampa Bay Times, (Nov. 11, 2016), https://www.tampabay.com/news/courts/criminal/tampa-woman-gets-15-years-in-prison-for-recruiting-teens-for-prostitution/2302520/

PLAINTIFF'S ORIGINAL COMPLAINT                20

- In November 2013, an investigation into prostitution ring, led to the arrest of five people and the seizure electronic equipment at the Ramada Inn in La Vergne, Tennessee.[32]

- In March 2014, undercover police raided a room at the Ramada Inn on Roosevelt Boulevard in Philadelphia arresting a woman for solicitation of prostitution and a man for suspected drug dealing.[33]

- In April 2014, police in Rock Hill, North Carolina, as part of a prostitution sting that netted five, made arrests at the Ramada Inn.  In total the arrests included three women and two men.[34]

- In June 2014, the mother of a mentally ill woman who police say was killed after meeting for sex at a Ramada Inn in College Park, Maryland said her daughter was mentally ill and was pimped by men via computer ads.[35]

- In September 2014, police in Parsippany, New Jersey – the same city Wyndham maintains its principal place of business - arrested a man and a woman in at a Ramada Inn only 12 minutes from Wyndham's corporate office on charges of theft and prostitution.[36]

- In March 2015, police arrested a woman who was renting a room at the Ramada Inn in Wayne, New Jersey for prostitution.[37]

- In April 2015, a woman was arrested on prostitution and drug charges by an undercover police officer in a sting at a Whitehall, Pennsylvania Ramada Inn.[38]

---

[32] Marie Kemph, Police: Drugs seized in prostitution ring raid, Murfreesboro Post, (Nov. 27, 2017), https://www.murfreesboropost.com/news/police-drugs-seized-in-prostitution-ring-raid/article_5ed959b6-fe72-52ee-bcc8-401c8f28d986.html

[33] *Undercover cops make prostitution, drug arrests* Northeast Times (Mar. 20, 2014), https://northeasttimes.com/2014/03/20/undercover-cops-make-prostitution-drug-arrests/

[34] *Five arrested in prostitution sting at two Rock Hill motels, police say*, WBTV, (Apr. 24, 2014), https://www.wbtv.com/story/25330215/five-arrested-in-prostitution-sting-at-two-rock-hill-motels-police-say/

[35] Darcy Spencer, Mother of Motel Murder Victim: "She's Not a Prostitute," 4 Washington, (Jun. 8, 2014), https://www.nbcwashington.com/news/local/mother-of-motel-murder-victim-denies-daughter-was-a-prostitute/59771/

[36] William Westhoven, Stolen purse at Kmart leads to prostitution bust, Daily Record, (Sept. 7, 2014), https://www.dailyrecord.com/story/news/local/2014/09/07/stolen-purse-kmart-leads-prostitution-bust/15192421/

[37] Natalie Mieles, Prositution Arrest Made N Wayne Hotel, Patch, (Mar. 23, 2015), https://patch.com/new-jersey/wayne/prostitution-arrest-made-wayne-hotel-0

[38] Manuel Gamiz, Jr., Woman faces prosecution, drug charges after sting at Whitehall hotel, The Morning Call, (Apr. 23, 2015), https://www.mcall.com/news/breaking/mc-c-whitehall-hotel-prostitution-arrest-20150423-story.html

---

PLAINTIFF'S ORIGINAL COMPLAINT

21

- In August 2015, at least 20 people were arrested in a prostitution sting conduced at a Des Moines, Iowa Ramada by Wyndham as part of an operation that began as a result of complaints from local business owners and citizens.[39]

- In December 2015 Hanover County, North Carolina District Attorney issued an admonishment to a Ramada Inn on Market Street, Wilmington, North Carolina, among others, for, "repeated acts which create and constitute a breach of the peace, including but not limited to prostitution, assaults, fights, and discharging firearms."[40]

- In February 2016, a Franklin Tennessee Police Department used Backpage.com as part of a sting operation that lead to the arrest of a woman at the Ramada Inn on charges of prostitution, and possession of drug paraphernalia.[41]

75.    Examples of notable press involving the frequent use of Wyndham branded hotels for illegal activity, include:

- In June 2011, a woman was sentenced to 9 years in prison for the sex trafficking of two 14-year-old girls. The girls were forced to work at the Wyndham branded hotel in Hartford, Connecticut.[42]

- In February 2012, a man was arrested by FBI agents and members of the Human Trafficking Task Force on charges of sex trafficking of children for pimping out a 14-year-old girl who was rescued from a Wyndam hotel in Florida.[43]

---

[39] Grant Rodgers and Kim Norvell, More arrests as prostitution stings continue, Des Moines Register, (Aug. 19, 2015), https://www.desmoinesregister.com/story/news/crime-and-courts/2015/08/19/urbandale-businessman-charged-prostitution/31987431/

[40] *DA, police chief focus on motel crime on Market Street*, Star News Online, (Jan. 10, 2016), https://www.starnewsonline.com/story/news/2016/01/10/da-police-chief-focus-on-motel-crime-on-market-street/30994128007/

[41] Zach Harmuth, Nolensville Woman Arrested in Prostitution Sting Awaits Court, Williamson Source, (Feb. 5, 2016), https://williamsonsource.com/nolensville-woman-arrested-prostition-sting-awaits-court/

[42] *East Hartford Woman Sentenced to 9 Years In Prison for Sex Trafficking Of Two 14-Year-Old Girls*, Hartford Courant (June 24, 2011), https://www.courant.com/2011/06/24/east-hartford-woman-sentenced-to-9-years-in-prison-for-sex-trafficking-of-two-14-year-old-girls/.

[43] Alexandra Seltzer, Federal officials catch, arrest man alleged to have prostituted Jupiter girl, 14, The Palm Beach Post (Feb. 7, 2012), https://www.palmbeachpost.com/story/news/crime/2012/02/08/federal-officials-catch-arrest-man/7283405007/.

PLAINTIFF'S ORIGINAL COMPLAINT                    22

- In 2012, the first successful prosecution of a human trafficking case in Wisconsin occurred after a man trafficking a woman at a Wyndam branded hotel in Wausau, Wisconsin.[44]

- Three people were arrested in July 2014 in Fayetteville on human trafficking charges after holding a woman captive at a Wyndham branded hotel.[45]

- In July 2014, three people were arrested and accused of kidnapping and torturing a woman for human trafficking out of a Wyndham branded hotel in Orange County, CA.[46]

- In September 2014, two Nevada residents were arrested on sex trafficking charges. Officers set up surveillance at a Wyndham branded hotel in Nashville and "it did not take long for officers to observe heavy foot traffic in and out of that hotel room consistent with a prostitution operation."[47]

- In April 2015, a Philadelphia man was sentenced for sex trafficking minors. The man worked as a security guard at a Wyndham branded hotel in Philadelphia and "provided protection and assistance to sex traffickers operating at the motel in exchange for a daily fee."[48]

- In June 2015, two Brooklyn men charged with sex trafficking allegedly forced a teenage girl into prostitution from a Long Island City Wyndham branded hotel.[49]

- In July 2015, after investigating possible prostitution at a Wyndham branded hotel in Maryland, Frederick County sheriff's deputies charged a

[44] Shereen Siewert, *Sex-trafficking cases hard to crack in Wisconsin*, Post Crescent (March 25, 2014), https://www.postcrescent.com/story/news/2014/03/25/sex-trafficking-cases-hard-to-crack-in-wisconsin/6884671/.
[45] Three arrested on human trafficking charges in NC, Fox8 (July 2, 2014), https://myfox8.com/news/three-arrested-on-human-trafficking-charges-in-nc/.
[46] Jeanne Kuang, Three Accused of Kidnapping, Torturing Woman for Human Trafficking in Orange County, NBC Los Angeles (July 30, 2014), https://www.nbclosangeles.com/news/three-accused-of-brutally-kidnapping-torturing-woman-for-human-trafficking-in-orange-county/65718/.
[47] Las Vegas Man, Woman Jailed on Prostitution Charges, City of Franklin, TN (Sept. 5, 2014), https://www.franklintn.gov/Home/Components/News/News/2563/.
[48] Philadelphia Man Sentenced for Sex Trafficking Conspiracy, U.S. Attorney's Office (April 9, 2015), https://www.fbi.gov/contact-us/field-offices/philadelphia/news/press-releases/philadelphia-man-sentenced-for-sex-trafficking-conspiracy.
[49] Jackie Strawbridge, *Cuffed Brooklyn Men Allegedly Pimped At LIC Hotel*, licpost (June 9, 2015), https://licpost.com/cuffed-brooklyn-men-allegedly-pimped-at-lic-hotel.

PLAINTIFF'S ORIGINAL COMPLAINT

Hagerstown man with human trafficking after two teenage girls were forced into prostitution.[50]

- In March 2016, a 22 year-old Sandy Springs man was arrested in Athens, Ga., and charged with pimping a person under 18 and sex trafficking after holding a 16-year-old against her will at a Wyndham branded hotel in Athens and forcing her to engage in sex in exchange for money.[51]

76.    Ultimately, several hundred of traffickers involved with hundreds of victims have been prosecuted by state and federal law enforcement agencies for sex trafficking and forced prostitution out of Wyndham branded properties.

77.    Similarly, Defendants knew sex trafficking was occurring at their hotels through publicly available online review websites, which are regularly reviewed by companies such as Defendants. For example, for Ramada locations:

- In December 2007 regarding the Ramada Inn in Toms River, New Jersey, in a review titled, "Hookers, Drugs, and poor service," a reviewer wrote "[a]s my wife and I went to our room, we were first asked for money from some guy in the hallway, then a prostitute informed us for a fee, she would join us…."[52]

- In February 2010 regarding the Ramada by Wyndham in Rochelle Park, New Jersey, a reviewer wrote, "[t]hin walls, so EVERYTHING was heard, especially when some pimp was yelling & cursing at his "employee" from 1am till 4 am. The clientele were mostly thugs & one-night-standers."[53]

---

[50] Jeremy Arias, *Hagerstown man charged with trafficking of two teenage girls*, The Frederick News-Post (July 1, 2015), https://www.heraldmailmedia.com/story/news/local/2015/07/01/hagerstown-man-charged-with-trafficking-of-two-teenage-girls/45202521/.

[51] Dyana Bagby, Sandy Springs man arrested in Athens, Ga., for sex trafficking, RoughDraft atlanta (March 24, 2016), https://roughdraftatlanta.com/2016/03/24/sandy-springs-man-arrested-athens-ga-sex-trafficking/.

[52] https://www.tripadvisor.co.uk/ShowUserReviews-g46870-d98468-r11235472-Ramada_by_Wyndham_Toms_River-Toms_River_New_Jersey.html

[53] https://www.tripadvisor.com/ShowUserReviews-g46782-d92577-r55266477-Ramada_by_Wyndham_Rochelle_Park_Near_Paramus-Rochelle_Park_New_Jersey.html

---

PLAINTIFF'S ORIGINAL COMPLAINT         24

- In September 2010 regarding the Ramada by Wyndham Pikesville/Baltimore North, a customer complained, "[a]nd to top it all off, we were awakened at 2 AM by a large party of about 25 young people outside the room, some of whom were apparently prostitutes--young girls in skimpy clothes talking to men through car windows." The General Manager replied but did not address the prostitution complaint.[54]

- A November 2010 review regarding a Ramada in Seattle, Washington states "Basically if you like Prostitutes and Drug Dealers this is your place, The place is managed by a Very Young Arrogant Manager and his response to my complaints was everyone deserves a second chance, not to mention the noise."[55]

- A June 2011 review of a Ramada Inn in Costa Mesa, CA states "Wow this "hotel" is horrible…We were on the 3rd floor which was the quietest. Swore we saw 2-3 prostitutes walking around outside."[56]

- An October 2011 review of a Ramada in Bangor, ME states "About 1 in the morning there was a group of drunk people in the hallways running up and down the halls and slamming doors. I called the front desk and they said they would send someone up to check on it, however, the slamming continued for over an hour and a half. I also saw a man bringing a prostitute to his room down the hall where they had a "noisy" encounter."[57]

- A September 2011 review regarding a Ramada Inn in Reno, Nevada states "One word... EEWWWWW! Hookers are outside courting truck drivers. Meth heads are going in and out the doors looking for thier next fix. Desk man wasnt anywhere to be found for check-in."[58]

---

[54] https://www.tripadvisor.com/ShowUserReviews-g41317-d250631-r80299255-Ramada_by_Wyndham_Pikesville_Baltimore_North-Pikesville_Maryland.html
[55] https://www.tripadvisor.com/Hotel_Review-g58732-d224851-Reviews-Ramada_by_Wyndham_SeaTac_Airport-SeaTac_Washington.html
[56] https://www.yelp.com/biz/ramada-by-wyndham-costa-mesa-newport-beach-costa-mesa
[57] https://www.tripadvisor.com/Hotel_Review-g40502-d93532-Reviews-Bangor_Grande_Hotel_Conference_Center-Bangor_Maine.html
[58] https://www.yelp.com/biz/ramada-by-wyndham-reno-hotel-and-casino-reno

PLAINTIFF'S ORIGINAL COMPLAINT
25

- In October 2011 regarding the Ramada by Wyndham in East Orange, New Jersey, a reviewer wrote, "[w]as there any prostitution at the hotel? Maybe. But the pimps in the lobby always held the door for us…."[59]

- A May 2012 review of a Ramada in Denver, CO states "Definitely not safe as we witnessed actual drug deals and sex trade going on in back. The front desk staff was too busy flirting with each other to be helpful."[60]

- In June 2012 regarding the Ramada by Wyndham in East Orange, New Jersey, in a review titled, "It Is As Bad As They Say," a reviewer wrote, "[v]isible prostitutes going up and down the hall."[61]

- In September 2012 regarding the Ramada by Wyndham in Wyndham's home town of Parsippany, New Jersey, a reviewer advised, "[p]lease avoid this hotel at all costs unless you're a trucker or prostitute."[62]

- An October 2012 review of a Ramada Inn in Gainesville, FL states "Do NOT stay here. In disrepair, dirty, and a hub for drugs and prostitution. Hotels.com should not represent this hotel."[63]

- In November 2012 regarding the Ramada Limited in Cockeysville, Maryland, a reviewer wrote, "seems to be mainly a place for hooker hookups and not somewhere anyone actually stays."[64]

- A November 2012 review of a Ramada in Portland, Oregon states "First of all this place is disgusting. It is full of pimps and hoes and DRUGS :/."[65]

- In March 2013 regarding the Ramada by Wyndham Baltimore West in Baltimore, Maryland, a reviewer, in a review titled "Prostitute plaza," wrote, "[o]ur second evening we were confronted by ladies who were at

---

[59] https://www.tripadvisor.com/ShowUserReviews-g46403-d92370-r119573653-Ramada_by_Wyndham_East_Orange-East_Orange_New_Jersey.html

[60] https://www.tripadvisor.com/Hotel_Review-g33388-d85325-Reviews-Ramada_by_Wyndham_Denver_Downtown-Denver_Colorado.html

[61] https://www.tripadvisor.com/ShowUserReviews-g46403-d92370-r132718173-Ramada_by_Wyndham_East_Orange-East_Orange_New_Jersey.html

[62] https://www.tripadvisor.com/ShowUserReviews-g46715-d98515-r141158336-Ramada_by_Wyndham_Parsippany-Parsippany_Morris_County_New_Jersey.html

[63] https://www.expedia.com/Gainesville-Hotels-Motel-6-Gainesville.h918788.Hotel-Reviews

[64] https://www.tripadvisor.com/ShowUserReviews-g41075-d93714-r146214352-Ramada_Limited_Cockeysville-Cockeysville_Maryland.html

[65] https://www.tripadvisor.com/Hotel_Review-g52024-d96118-Reviews-Ramada_by_Wyndham_Portland_Airport-Portland_Oregon.html

PLAINTIFF'S ORIGINAL COMPLAINT                26

the time selling themselves to us. As we walked to our car the next morning we were once confronted again by 2 different professional women advancing sexual and in appropriate verbiage to my 18 year old son."[66]

- A March 2013 review of a Ramada Inn in Bowling Green, Kentucky states "I noticed a woman wearing over the knee leather boots standing in front of the hotel, after I had checked in. She was obviously waiting to be "picked up"…If you are looking for hookers, this is the place to go!"[67]

- In August 2013 regarding Ramada by Wyndham West Atlantic City in Atlantic City, New Jersey, a reviewer reported, "a load of police cars because there was a prostitution raid…." The hotel's webmaster replied saying they appreciated the review and observations.[68]

- In September 2013 regarding the Ramada by Wyndham in Yonkers, New York, a reviewer complained, "[a]ll night…drugs and prostitution business is going on there with the knowledge of the staff and managers…."[69]

- In February 2014 regarding the Ramada by Wyndham in East Orange, New Jersey, a concerned citizen reported, "[t]here is also a revolving door of prostitution going on at the Ramada Inn" in East Orange, New Jersey on a message board.[70]

- A March 2014 review of a Ramada Inn in Reno, Nevada states "As I entered the hotel I immediately noticed the type of clients they have. I seriously think is like a pimp/prostitute warehouse."[71]

- An April 2014 of a Ramada in Alpharetta, GA states "The manager checked me in and on my way to the suit, two ladies drunk, smoking at the elevator, went into room and room was smelling old, a/c was not working effectively, no proper lighting in the room, after a while I went

---

[66] https://www.tripadvisor.co.nz/ShowUserReviews-g41045-d93846-r154472777-Ramada_by_Wyndham_Baltimore_West-Catonsville_Maryland.html
[67] https://www.tripadvisor.com/Hotel_Review-g39214-d92797-Reviews-Ramada_by_Wyndham-Bowling_Green_Kentucky.html
[68] https://www.tripadvisor.com/ShowUserReviews-g46742-d98115-r174159963-The_Ramada_Atlantic_City_West-Pleasantville_New_Jersey.html
[69] https://www.tripadvisor.com/ShowUserReviews-g48922-d93875-r175810200-Ramada_by_Wyndham_Yonkers-Yonkers_New_York.html
[70] https://seeclickfix.com/issues/928962-dangerous-elevator-ramada-inn
[71] https://www.yelp.com/biz/ramada-by-wyndham-reno-hotel-and-casino-reno

PLAINTIFF'S ORIGINAL COMPLAINT                    27

to sleep and some one came knocking on the door at abt 2 AM in the night, I was scared and looked through eye piece from the door, a man (supposedly a pimp) and a girl were just knocking all the doors to ask if anyone wants to have sex with that lady, I then called the desk and no one bothered to answer my cal.....waited, calmly went back to bed! later, that morning, complained about the incident and the desk manager doesnt respond properly, poor communication....I wont recommend this to any one!!!"[72]

- In May 2014 regarding the Ramada by Wyndham Baltimore West, in Baltimore, Maryland a reviewer reported, "[a] big complaint was what appeared to be a prostitute going in and out of the room next to ours every 45 minutes or so and having relatively loud sex all night."[73]

- In November 2014 regarding the Ramada by Wyndham Waukegan/Great Lakes in Waukegan, Illinois, a reviewer noted, "I encountered the back door propped open on several occasions and different men pulling up in numerous vehicles, staying for a half hour or less each time. I called the front desk and reported this and was told the one man security would handle it. He didn't. Condoning prostitution is grounds for business license revocation or suspension."  Regarding prostitution, the Manager replied, "We never condone any illegal activities, have overnight security to assure the peace of all our guests, and cooperate fully with local law enforcement immediately should we encounter any illegal activities." [74]

- A June 2015 review of a Ramada Inn in Manchester, Tennessee states "The place looked pretty bad but when I went to the door of my room, I realized that there were pimps and their 'ladies' hanging out around the doorways. I went into my room and eventually pulled the bed cover back and got a big surprise. There was blood all over the sheets! Someone had bled on the bed and then pulled the sheet back over itâ€¦probably very soon before I checked into this hotel.  When I complained to the front desk clerk about it, she affected not to know what was going on and complained about my attitude. She didn't like it that I was mad about hookers bleeding all over the bed I was supposed to sleep in.  She said she had no idea that

---

[72] https://www.tripadvisor.com/Hotel_Review-g35235-d123989-Reviews-Ramada_by_Wyndham_Alpharetta-Roswell_Georgia.html

[73] https://www.tripadvisor.co.nz/Hotel_Review-g41045-d93846-Reviews-Ramada_by_Wyndham_Baltimore_West-Catonsville_Maryland.html

[74] https://www.tripadvisor.com/ShowUserReviews-g36854-d90331-r239174515-Ramada_by_Wyndham_Waukegan_Great_Lakes-Waukegan_Lake_County_Illinois.html

PLAINTIFF'S ORIGINAL COMPLAINT                    28

this was going on, that she was just the clerk wink, wink. Unless you are a customer for prostitutes, avoid this place like the plague."[75]

- In a July 2015 review of a Ramada by Wyndham in East Orange, New Jersey, a reviewer wrote, "[o]n the way back to our room, my husband heard a prostitute making "deals" with her clients. The foot traffic is heavy within this hotel, and now it makes sense. If you're looking for a prostitute, then this is the place to be, but this is not a family friendly hotel." The General Manager replied but did not address the concerns regarding prostitution.[76]

- In August 2015 regarding the Ramada by Wyndham Parsippany in Wyndham's home town of Parsippany, New Jersey, a reviewer titled their review, "Do NOT Feel SAFE Here Anymore-- has Become a HOTSPOT for Prostitution!!-," and wrote, "FIRST ALL DOORS Of the Hotel are "Open" to ANYONE walking from the Streets…Arriving back to my Room one evening at 1A, watching cars parking, then Various men Walking Right into the hotel. When I Went into End main door), I Was Absolutely Scared to Death Noticing a Man Crouched down Behind The STAIRS!!!! "Obviously Waiting His Turn" Hearing him Say "I am here". "I am Inside". The TRAFFIC Coming and Going Just that ONE NIGHT Was unbelieveablofe. It Became OBVIOUS That PROSTITUTION Had Become Quite POPULAR At This Hotel, It Was like a "Rats Nest", Men Walking in all hours, Men sitting in their Cars ALL HOURS. It Was a Very Shameful, and Disturbing Sight. I Did Not Feel SAFE I Did Not Feel Respected by the Hotel, I Was Very Saddened to See What has happened to this place!!!! I Actually Sat in my Car one evening at 11:30PM, literally Saw 7 Vehicles pull into parking lot, they would park, Men walking straight into the HOTEL!!! I Sat for about 20 minutes was All, Seeing All the Weird Men Coming and Going It was A Very CREEPY experience, it was Very Disturbing to me. You Don't have to be a Genius to See what is going on There…It is Hard to Believe that The Hotel is Allowing this type of Illegal Activity, These prostitutes are "Running Their Business" Selfish behavior and Non-Caring. The Hotel is CREEPY Now, ALL WEIRD MEN Coming and Going…The Ramada REPUTATION has certainly Changed for the WORSE. The Prostitution at the Hotel is Bringing WEIRD, CREEPY, LOW-CLASS people, If I WANTED A HOTEL With

[75] https://www.tripadvisor.com/Hotel_Review-g55181-d104564-Reviews-Quality_Inn-Manchester_Tennessee.html
[76] https://www.tripadvisor.com/ShowUserReviews-g46403-d92370-r294451091-Ramada_by_Wyndham_East_Orange-East_Orange_New_Jersey.html

PLAINTIFF'S ORIGINAL COMPLAINT                    29

prostitution, With NO LOCKS on the Doors, With NO SECURITY, Random Men Hiding under stairway, Walking Around inside All hours, I Could get That in Newark. This Whole Place Has Become SHAMEFUL…I Don't Recommend it for Anyone, Unless you are a "JOHN" Wanting a Good Time!!!!"[77]

- In September 2015 regarding the Ramada by Wyndham Parsippany in Wyndham's home town of Parsippany, New Jersey, a reviewer titled their review, "ALL I SAW Was Hookers, (And to Make it More Interesting, TRANS-SEXUAL MEN Who WERE PROSTITUTES)," and wrote, "…the LOCKS ARE ALL BROKEN and ANYONE CAN JUST WALK INSIDE THE BUILDING, NO SECURITY, NO LOCKS … I Think That 75% of the people Were prostitutes, and Everyone that I Saw parking and going inside Were Not GUESTS at the hotel, I Find it very Hard to believe That there is NO MANAGEMENT Seeing this activity…DRUGS, Hookers, It was AWFUL!!!!!"[78]

- In November 2015 regarding the Ramada Hotel & Conference Center by Wyndham in Edgewood, Maryland a reviewer titled their review, "Hookers bad WiFi and smelly room."  The General Manager replied as to the other issues raised, but ignored the prostitution complaint.[79]

78.    Defendants also knew sex trafficking was occurring at their Super8 hotels for example:

- In 2010, a California man was arrested for trafficking a 16-year-old victim after being spotted by law enforcement with the minor at a Super 8 in California.[80]

- In November 2011, a man was sentenced for sex trafficking after he forced minor girls to engage in commercial sex for his financial benefit, including at a Super 8 Motel in Virginia.[81]

---

[77] https://www.tripadvisor.com/ShowUserReviews-g46715-d98515-r302891589-Ramada_by_Wyndham_Parsippany-Parsippany_Morris_County_New_Jersey.html
[78] https://www.tripadvisor.com/ShowUserReviews-g46715-d98515-r313180289-Ramada_by_Wyndham_Parsippany-Parsippany_Morris_County_New_Jersey.html
[79] https://www.tripadvisor.com/ShowUserReviews-g41125-d89414-r325336267-Ramada_Hotel_Conference_Center_by_Wyndham_Edgewood-Edgewood_Maryland.html
[80] https://www.wired.com/2010/11/epps/
[81] Gang member sentenced for sex trafficking in Prince William, News & Messenger (Manassas, Virginia) (November 4, 2011) https://plus.lexis.com/api/permalink/562d85d9-e662-4e4f-8f7f-67b52fa537e8/?context=1530671

PLAINTIFF'S ORIGINAL COMPLAINT                    30

- In January 2011, a man was sentenced to life for child sex trafficking for requiring a minor to perform commercial sex services more than 50 times over a 14-day period at a Florida Super 8 Motel.[82]

- In June 2011, an MS-13 gang member was indicted for trafficking girls at a Super 8 Motel near Washington, D.C.[83]

- In 2012, four were indicted after forcing a 24-year-old woman to engage in commercial sex at Ohio hotels, including a Super 8.[84] In December 2012, a man was arrested for attempting to entice a 15-year-old girl to engage in prostitution at a Super 8 Motel in Oklahoma.[85]

- In April 2013, two were arrested for trafficking a juvenile girl at an Illinois Super 8.[86]

- In June 2013, a man was arrested on human trafficking charges after he forced a woman to engage in commercial sex at hotels, including a Louisiana Super 8 Motel.[87]

- A man was sentenced to 21 years in prison for sex trafficking his 16-year-old girlfriend starting in August 2013 at two hotels in Dallas, including a Super 8 Motel.[88]

- In 2013, a man was arrested at a Super 8 in Rhode Island and charged with trafficking a 17-year-old girl at the motel.[89]

- In September 2013, a Super 8 motel in Massachusetts was searched and a man was charged with sex trafficking of a 17-year-old developmentally disabled girl after staying with her at that hotel.[90]

---

[82] https://www.fbi.gov/jacksonville/press-releases/2011/ja011011.htm

[83] https://www.thepublicdiscourse.com/2011/10/4034/

[84] https://www.10tv.com/article/news/crime/crime-tracker/four-indicted-first-human-trafficking-case-franklin-county/530-36f713e6-5488-4465-90c0-7eb99504a635

[85] Man faces new sex-trafficking charges, Tulsa World (Oklahoma ) (March 9, 2013) https://plus.lexis.com/api/permalink/a9062a1a-76b4-4811-89ab-5b0b3c877a88/?context=1530671

[86] https://www.channel3000.com/news/local-news/2-women-accused-of-human-trafficking-at-motel/article_98edf1d4-d231-5ea1-a6b9-e71c83f44750.html

[87] https://www.endslaverytn.org/news/tenn-man-booked-in-human-trafficking-newsarticle

[88] https://www.ice.gov/news/releases/dallas-gang-member-sentenced-21-years-federal-prison-child-sex-trafficking-conviction

[89] https://turnto10.com/archive/new-details-in-ardrey-sex-trafficing-investigation

[90] https://www.providencejournal.com/story/news/crime/2013/09/14/20130914-missouri-man-charged-with-sex-trafficking-in-mass-teens-disappearance-ece/35397014007/

---

PLAINTIFF'S ORIGINAL COMPLAINT

31

- In November 2013, two pled guilty to sex trafficking charges after forcing a child to engage in commercial sex at Super 8 Motel in Texas.[91]

- In June 2014, two were charged with trafficking a 13-year-old girl at a Minnesota Super 8.[92]

79. These articles are only representative examples. There are many similar articles about sex trafficking and other associated criminal activity at Wyndham branded hotels. Moreover, on information and belief, the Ramada Franchisors and Super8 Franchisors were aware of additional significant law enforcement activity related to trafficking at its hotels that was not reported in the media.

80. Upon information and belief, each of the Ramada Franchisors and Super8 Franchisors monitored criminal activity occurring at its branded hotels and were aware of activity indicating commercial sex trafficking or related crimes occurring at those branded hotels, including the specific property where C.M.S. was trafficked.

81. Reviews of Super 8 branded properties, which upon information and belief each of the Super8 Franchisors, monitored regularly, also show both the pervasiveness of sex trafficking at its branded properties and the Super8 Franchisors' knowledge of the same. For example:

- An August 2008 review of a Super 8 property in Arizona stated: "Woke in middle of night (2:30am) with loud party on 2nd floor with bodies slamming into walls, and looked out window to see hooker and pimp making deal with another man in pickup in the parking lot."[93]

---

[91] https://www.chron.com/news/article/two-plead-guilty-to-child-sex-trafficking-5000132.php
[92] https://www.grandforksherald.com/newsmd/moorhead-police-charge-two-with-sex-trafficking-13-year-old
[93] https://www.tripadvisor.co/Hotel_Review-g60950-d74409-Reviews-Super_8_by_Wyndham_Tucson_Downtown_Convention_Center-Tucson_Arizona.html

---

PLAINTIFF'S ORIGINAL COMPLAINT

- A January 2010 review of a Super 8 property in Escondido, California stated: "This is a hooker hangout, doors slaming at 3:00 AM, You will hear pimps on their cellphones outside in the middle of the night. Ladies arriving at 4:00 AM, Management MUST be aware this is going on and condone this. I expected John Walsh to show up with a film crew."[94]

- A February 2010 review of a Super 8 property in Los Angeles, California stated: "This place lacks security and there were drug dealers trying to push their products inside of the hotel. This place is Scary. The neighborhood was frightening and there were also prostitutes and homeless/addicts all over the place and renting rooms in the hotel. The desk guy looked at my friends attire (faux fur coat) and assumed he was a pimp and that we were prostitutes and seemed surprised that we had made reservations for more than one night. He kept giving us this strange smile... icky. This place left me with a bad feeling. If you want to stay here to save a few bucks my advice is to utilize the buddy system whenever you leave your room to visit the vending machines... after checking in for the night that is probably the only thing you will feel even moderately safe doing. eek. I can deal with scary hotels but this place is a disaster waiting to happen."[95]

- A June 2010 review of a Super 8 property in Virginia stated: "The location is in a very unsafe place. There were junkies and prostitutes using the premises of the hotel."[96]

- A July 2010 review of a Super 8 property in Texas stated: "After a night out parking lot full had to park under drive thur in front of hotel no other space. Number One reason to not stay here HOOKERS!!! walking the parking lot, walking the sidewalks and feeder road roads in front of Motel. All hours of the day."[97]

- An October 2011 review of a Super 8 property in Tennessee stated: "Don't stay here unless you want drugs or a prostitute....or both. There were drunks running up the halls all night and the maid offered to have sex with

[94] https://www.tripadvisor.com/Hotel_Review-g32358-d235407-i132418454-Super_8_Escondido-Escondido_California.html
[95] https://www.tripadvisor.com/Hotel_Review-g32655-d235134-Reviews-Super_8_by_Wyndham_Hollywood_La_Area-Los_Angeles_California.html
[96] https://www.expedia.com/Norfolk-Hotels-Super-8-By-Wyndham-NorfolkChesapeake-Bay.h7202.Hotel-Reviews
[97] https://www.tripadvisor.com/Hotel_Review-g30196-d109015-Reviews-Super_8_by_Wyndham_Austin_North_University_Area-Austin_Texas.html

PLAINTIFF'S ORIGINAL COMPLAINT                    33

my husband for money. When he refused, she then offered to sell him pills."[98]

- A February 2012 review of a Super 8 property in Florida stated: "This hotel should not even be listed as a choice to stay in. Upon check, 3 rooms from me was a sexual battery crime scene. Prostitutes and drug deals were going on all over the property. The room was filthy, smelled horrible and I wouldn't even touch the bed! This hotel is a LIVE IN hotel for Prostitutes, drug dealers and gangs!!!!! DO NOT STAY HERE!!"[99]

- An April 2012 review of a Super 8 property in Virginia stated: "Just beware, there are "escorts" who are constantly on the lookout for fresh meet. A pimp will knock on your door asking to use your cell to call his girlfriend. From then on, she will do the work."[100]

- An April 2012 review of a Super 8 property in Texas stated: "We have stayed in hotels all over the world and I have never had as terrible and frightening an experience as I had at this hotel. The place was crawling with prostitutes and seedy looking guys looking for prostitutes. We tried to stay here anyway, but the night manager started threatening us! In the end we had to call the police in order to safely leave. The police were very sympathetic, and apparently they have frequent problems with this hotel. Stay Away."[101]

- An October 2012 review of a Super 8 property in Florida stated: "the last time i stayed at this super 8, a hooker approached me in the parking lot and i informed you . this time there was a drug dealer in the next door room, cars coming and going all day & night a car would pull up and one person goes inside and 5 minutes later comes out. when i was checking out i told the desk clerk and the girl in the office says oh i know who that is. well if you knew about why was he still there. i will never stay there again, and i'm a loyal super 8 customer."[102]

---

[98] https://www.tripadvisor.com/Hotel_Review-g55138-d97967-Reviews-or165-Super_8_by_Wyndham_Knoxville_Downtown_Area-Knoxville_Tennessee.html
[99] https://www.tripadvisor.com/Hotel_Review-g34378-d113362-Reviews-Super_8_by_Wyndham_Lantana_West_Palm_Beach-Lantana_Florida.html
[100] https://www.expedia.com/Manassas-Hotels-Super-8-By-Wyndham-Manassas.h12141.Hotel-Reviews
[101] https://www.tripadvisor.ca/Hotel_Review-g56003-d240483-Reviews-Super_8_by_Wyndham_Houston_Brookhollow_NW-Houston_Texas.html
[102] https://www.tripadvisor.com/Hotel_Review-g34378-d113362-Reviews-Super_8_by_Wyndham_Lantana_West_Palm_Beach-Lantana_Florida.html

PLAINTIFF'S ORIGINAL COMPLAINT                    34

- A March 2013 review of a Super 8 property in Louisiana stated: "There was a PROSTITUTE running her business from a room, with her pimp standing outside. She propositioned a co-worker as he was going to his room. Then in the middle of the night she and her clients were fighting very loudly over money and services issued!"[103]

- A March 2013 review of a Super 8 property in Ohio stated: "I've been solicited for drugs and by prostitutes here on several occassions. I told the hotel staff about it and they seem to turn a blind eye to the problem because these people are also buying rooms."[104]

- A February 2013 review of a Super 8 property in Minnesota stated: "This hotel was disgusting. Homeless man passed out in lobby, possible prostitute hanging out in hallway with pimp, cigarette smell, ridiculous noise level throughout night, etc. Dirty shoes in microwave, empty beer cans in fridge. I cannot express enough how terrible this place really is."[105]

- An April 2013 review of a Super 8 property in Georgia stated: "The hotel was filled with prostitutes and drug dealers and I was put in the back with my children which gave me no type of security. Super 8 needs to remove their name from this building."[106]

- A July 2013 review of a Super 8 property in California stated: "Our first night we were greeted by undercover police busting the prostitutes using the spare rooms to turn tricks. Maids make extra income unlocking vacant rooms. I would not recommend this place for children.Or anyone for that fact."[107]

- An August 2013 review of a Super 8 property in Ohio stated: "This hotel gives the Super 8 chain a bad reputation. The local restaurant management told us not to answer door due to prostitution issues."[108]

---

[103] https://www.tripadvisor.ca/Hotel_Review-g40314-d120851-Reviews-FairBridge_Inn_Express_Metairie-Metairie_Louisiana.html

[104] https://www.tripadvisor.com/Hotel_Review-g50891-d226034-Reviews-Quality_Inn_Columbus_East-Reynoldsburg_Ohio.html

[105] https://www.tripadvisor.com/Hotel_Review-g43493-d247863-Reviews-Super_8_by_Wyndham_St_Cloud-Saint_Cloud_Minnesota.html

[106] https://www.tripadvisor.com/Hotel_Review-g34856-d217054-Reviews-Super_8_by_Wyndham_Atlanta_Hartsfield_Jackson_Airport-College_Park_Georgia.html

[107] https://www.tripadvisor.com/Hotel_Review-g32655-d252254-Reviews-or50-Super_8_by_Wyndham_Canoga_Park-Los_Angeles_California.html

[108] https://www.tripadvisor.com/Hotel_Review-g50891-d226034-Reviews-Quality_Inn_Columbus_East-Reynoldsburg_Ohio.html

PLAINTIFF'S ORIGINAL COMPLAINT                    35

- An October 2013 review of a Super 8 property in Virginia stated: "We ended up wedging a pole in the door for safety reasons. After dark the place turned into, I do NOT exaggerate, a open hoer house. At lease 4 pimps were doing business with a dozen or so girls there. If not for the safety reasons it was a life experience seeing that side of society. We were surprised at a chain like Super 8 condoning this activity. . . . The big thing was the blatant open prostitution that was condoned by your chain was despicable. The car music blaring and loud laughing and yelling was just like out of a rap video. Shame on you Super 8 for condoning this kind of activity just to fill a room."[109]

82.  These reviews are examples. There are many similar online reviews for Super 8 branded hotels, and, on information and belief, there are additional similar reviews and other customer complaints from before 2013 that are not currently available on the internet but which the Super8 Franchisors know about.

83.  Upon information and belief, news stories and reviews establish that, at the time C.M.S. was trafficked at the Brooklyn Center Super 8, the Super8 Franchisors knew at a minimum:

a.  The use of its branded properties for sex trafficking was not limited to one location or geographic region but was a widespread problem;

b.  Commercial sex work occurring at its branded properties involved trafficking and compelled prostitution;

c.  Their franchisees and hotel staff were not taking reasonable steps to deter, detect, and disrupt known or probable sex trafficking occurring at its hotel properties;

d.  Their efforts, if any, to stop facilitating sex trafficking in Wyndham branded properties were not effective; and

---

[109] https://www.tripadvisor.com/Hotel_Review-g58026-d110776-Reviews-or10-Super_8_by_Wyndham_Norfolk_Chesapeake_Bay-Norfolk_Virginia.html

PLAINTIFF'S ORIGINAL COMPLAINT

36

e. They were, by their acts and omissions, facilitating sex trafficking at Wyndham branded properties by providing venues where that trafficking was occurring widely and without sufficient detection or deterrence.

84. Despite the continually mounting evidence that sex trafficking at Ramada Super8 Franchisors properties was ongoing and growing, the Super8 Franchisors did not change course. The Super8 Franchisors chose to continue earning revenue and profits from renting out space in their hotels as a venue for trafficking.

85. This sampling of news stories, reviews, and other public information establishes that, at the time Jane Doe (C.M.S.) was trafficked at the subject properties, the Ramada Franchisors and the Super8 Franchisors knew or should have known that:

a. There was widespread and ongoing sex trafficking occurring at Wyndham branded properties, including without limitation Ramada Inn and Super8 properties.

b. Sex trafficking was a brand-wide problem for Wyndham originating from management level decisions at their corporate offices in Parsippany, NJ.

c. Ramada Franchisees and Super8 Franchisees and hotel staff were not taking reasonable steps to identify and respond to known or probable sex trafficking occurring at their hotel properties and were facilitating sex trafficking at the branded hotel properties.

d. The efforts of the Ramada Franchisors and Super8 Franchisors, if any, to stop facilitating sex trafficking in their branded properties were not effective.

e. Ramada Franchisors and Super8 Franchisors and their franchisees were earning revenue by providing venues where widespread and ongoing sex trafficking was occurring.

PLAINTIFF'S ORIGINAL COMPLAINT                    37

86.     Despite the mounting evidence that sex trafficking at their properties was ongoing and growing, Ramada Franchisors and Super8 Franchisors continued to earn revenue by continuing conduct that they knew or should have known facilitated sex trafficking.

**b.      Ramada Franchisors and Super8 Franchisors had actual and constructive knowledge of widespread and ongoing sex trafficking at the subject hotels.**

87.     Ramada Franchisors and Super8 Franchisors were specifically aware that sex trafficking was widespread and ongoing at the subject hotels.

88.     Internet reviews for the subject hotels and other Wyndham branded hotels which upon information and belief the Ramada Franchisors and Super8 Franchisors managed and monitored, show the pervasiveness of sex trafficking before and well after Jane Doe (C.M.S.) was trafficked. For example:

- January 2008 Tripadvisor review of a Wyndham branded hotel states "…So, needless to say we had a very long night with the chair propped against the door, and a constant reminder to not touch "anything" because of how old and dirty everything was. It became very obvious that this hotel was nothing more than a meeting place for an after dark drug exchange , or a quick fix for a hooker and her John. I have since contacted hotels.com and they have stated that we will be receiving a $50.00 voucher for our inconvenience. The only thing left to do now is warn the rest of you so that you will not have to experience the same."[110]

- October 2008 review of another Wyndham brand hotel  states "…Woke in middle of night (2:30am) with loud party on 2nd floor with bodies slamming into walls, and looked out window to see hooker and pimp

---

[110] https://www.tripadvisor.ca/Hotel_Review-g60950-d75696-Reviews-Days_Inn_Suites_by_Wyndham_Tucson_AZ-Tucson_Arizona.html

PLAINTIFF'S ORIGINAL COMPLAINT                    38

making deal with another man in pickup in the parking lot. Worst motel we've ever stayed in. Should be investigated by AZ health inspectors, and removed from AAA and Trip Advisor list, except to warn travellers away."[111]

- November 2013 Tripadvisor review of a Ramada states "This was absolutely the worst night of sleep I have ever had. It was a terrible experience and I will not return. Also beware of the surrounding neighborhoods. I thought I had experienced some scary ares, but this area is actually dangerous."[112]

89.    Traffickers, including Jane Doe (C.M.S.)'s traffickers, repeatedly chose to use the subject hotels for their sex trafficking activity. As such, Defendants also knew or should have known about the pervasive sex trafficking at the hotels based on obvious indicators of this activity.

90.    Upon information and belief and based on hotel reviews and records of law-enforcement calls, there were multiple trafficking victims exploited at the subject hotels prior to Jane Doe (C.M.S.)'s trafficking who exhibited "red flags" of trafficking that were observed by hotel staff and management, including paying with cash or prepaid cards, having high volumes of men who were not registered guests in and out of their room at unusual times, arriving with few possessions for extended stays, and other signs consistent with the "red flags" of trafficking identified above. Trafficking has a significant effect on its victims, and, upon information and belief, there were obvious "red flags" of trafficking apparent from the appearance, demeanor, and

---

[111] https://www.tripadvisor.co/Hotel_Review-g60950-d74409-Reviews-Super_8_by_Wyndham_Tucson_Downtown_Convention_Center-Tucson_Arizona.html
[112] https://www.tripadvisor.com/Hotel_Review-g60950-d74505-Reviews-Days_Inn_by_Wyndham_Tucson_City_Center-Tucson_Arizona.html#REVIEWS

PLAINTIFF'S ORIGINAL COMPLAINT                    39

restricted movements of these victims, as well as the nature of these victims' interactions with their traffickers and others, all of which provided notice that these victims were being subject to violence, coercion, control, and exploitation.

91.   All knowledge from the staff at the hotels is imputed to Ramada Franchisors and Super8 Franchisors. Ramada Franchisors and Super8 Franchisors knew about this widespread and ongoing trafficking at the hotels, including the trafficking of Jane Doe (C.M.S.), through the direct observations of hotel staff, including management-level staff.

92.   Upon information and belief, Ramada Franchisors and Super8 Franchisors knew or should have known about widespread and ongoing trafficking activity at the hotel property because of non-public information available because Ramada Franchisors and Super8 Franchisors:

    a.  conducted regular inspections of the hotel property;

    b.  employed "field agents" to work with hotels on trafficking issues;

    c.  publicly represented that it monitored and audited hotels to determine the status of anti-trafficking efforts;

    d.  required franchisee and hotel staff to report suspected trafficking activity to Franchisor;

    e.  was involved in day-to-day consulting on operational issues at hotel;

    f.  had access to surveillance systems;

    g.  collected and monitored data that showed patterns consistent with trafficking;

    h.  participated in internal investigations;

PLAINTIFF'S ORIGINAL COMPLAINT      40

i.  solicited and received customer feedback and complaints;[113]

93.    Upon information and belief, under the Ramada Franchisors and Super8 Franchisors' protocols, which on their face required hotel staff and management to report suspected criminal activity to the Ramada Franchisors and Super8 Franchisors, hotel staff and management were required to report numerous instances of suspected sex trafficking to the Ramada Franchisors and Super8 Franchisors prior to Jane Doe (C.M.S.)'s trafficking based on the numerous "red flags" exhibited by the victims who were exploited at the subject Ramada Inn and Super8 properties.

94.    Upon information and belief, Ramada Franchisors and Super8 Franchisors adopted a protocol that, on its face, required hotel staff and franchisees to report suspected criminal activity, including suspected prostitution and sex trafficking, to Ramada Franchisors and Super8 Franchisors. Based on the existence of this protocol and the widespread and obvious trafficking at the subject properties, there were multiple instances of suspected sex trafficking that were or should have been reported to Ramada Franchisors and Super8 Franchisors.

95.    Based on their knowledge of the problem of sex trafficking in the hotel industry, at Wyndham-branded hotels, and at the subject hotels, Ramada Franchisors and Super8 Franchisors and the Franchisee Defendants each had a duty to exercise

---

[113] https://journalism.berkeley.edu/projects/should-hotel-chains-be-held-liable-for-human-trafficking/  ("In every case, Wyndham received the guest complaint, monitored the response, and tried to placate disgruntled guests with Wyndham Rewards hotel points.")

PLAINTIFF'S ORIGINAL COMPLAINT                41

reasonable prudence to detect ongoing sex trafficking at the subject hotels and to make a reasonable investigation in response to signs of potential sex trafficking. If Ramada Franchisors and Super8 Franchisors and the Ramada Franchisees and Super8 Franchisees had used reasonable prudence, they would have been aware of the widespread and ongoing trafficking at the subject hotels and that they were benefiting from such trafficking.

96.    Ramada Franchisors and Super8 Franchisors and the Ramada Franchisees and Super8 Franchisees had constructive knowledge of the widespread and ongoing trafficking at the properties because this trafficking resulted from their failure to exercise ordinary care operating the hotel.

**c.    Defendants knew Jane Doe (C.M.S.) was being trafficked at the subject Ramada Inn and Super8 properties because of the apparent and obvious "red flags" of sex trafficking.**

97.    During the period that Jane Doe (C.M.S.) was trafficked at the Ramada Inn and Super8 properties, there were obvious signs that her traffickers were engaged in sex trafficking:

a.  Jane Doe (C.M.S.) would sometimes book the room herself. The hotel staff observed her and saw that she was emotional, nervous, and scared.

b.  The hotel rooms in which she was trafficked were frequently paid for with cash, Green Dot, or Netspend.

c.  Other girls were being trafficked at the same hotel at the same time as C.M.S. by her trafficker.

d.  Hotel staff saw Jane Doe (C.M.S.) arrive and leave with her traffickers and saw her traffickers often leave without her.

PLAINTIFF'S ORIGINAL COMPLAINT                42

e. Immediately after she saw a john, the traffickers would often go up to her room to collect the money. The hotel staff saw him go up and down multiple times a day without C.M.S.

f. The "Do Not Disturb" door hanger was used very frequently.

g. Her traffickers often asked for a room far away from the hotel office.

h. Housekeeping staff was often prevented from entering the room for regular cleaning, towel exchange and other standard room services.

i. Jane Doe (C.M.S.) had many johns every day. These individuals entered and left at unusual hours and were present at the hotel for brief periods of time.

j. There was heavy foot traffic in and out of Jane Doe (C.M.S.)'s room involving men who were not hotel guests. This traffic was visible to hotel staff.

k. Depending upon how things were going, Jane Doe (C.M.S.) was trafficked for multiple days or weeks at a time at a single location.

l. Other obvious signs of trafficking consistent with the modus operandi of her trafficker and which included well known "red flags" for trafficking in a hotel.

98.    Based upon information and belief, multiple employees at the Ramda Inn and Super8 properties, including management-level employees, observed or were made aware of these obvious signs of trafficking while acting within the scope and course of their employment.

99.    As such, Defendants knew or were willfully blind to the fact that Jane Doe (C.M.S.) was being trafficked at the subject Ramada Inn and Super8 properties.

100.    Given these obvious signs, Ramada Franchisors and Super8 Franchisors knew or should have known about the trafficking of Jane Doe (C.M.S.) based on its

PLAINTIFF'S ORIGINAL COMPLAINT                 43

policy or protocol that required hotel staff to report suspected criminal activity including sex trafficking.

101.   Ramada Franchisors and Super8 Franchisors also knew or should have known about Jane Doe (C.M.S.)'s trafficking based on the other methods, listed above, that they used to monitor and supervise the subject properties.

102.   Based on their knowledge of the problem of sex trafficking in the hotel industry, at Wyndham-branded hotels, and at the subject hotels, Ramada Franchisors and Super8 Franchisors and the Ramada Franchisees and Super8 Franchisees each had a duty to exercise reasonable prudence to detect ongoing sex trafficking at the subject hotels and to make a reasonable investigation in response to signs of potential sex trafficking. If Ramada Franchisors and Super8 Franchisors and the Ramada Franchisees and Super8 Franchisees had used reasonable prudence, they would have been aware of Jane Doe (C.M.S.)'s trafficking at the subject hotels and that they were benefiting from such trafficking.

**IV.    Defendants actively facilitated sex trafficking at the subject Ramada Inn and Super8 properties, including the trafficking of Jane Doe (C.M.S.)**

103.   Ramada Franchisors and Super8 Franchisors had both actual and constructive knowledge of the trafficking of Jane Doe (C.M.S.) at the subject Ramada Inn and Super8 properties because the trafficking was the direct result of Ramada Franchisors and Super8 Franchisors facilitating her trafficking at the properties.

PLAINTIFF'S ORIGINAL COMPLAINT                    44

**a.   Ramada Franchisees and Super8 Franchisees facilitated the trafficking of Jane Doe (C.M.S.) at the Ramada Inn and Super8 properties.**

104.   Ramada Franchisees and Super8 Franchisees are responsible for the acts, omissions, and knowledge of all employees of the Ramada Inn and Super8 properties when operating the hotel because these acts and omissions were committed in the scope and course of employment, because Ramada Franchisees and Super8 Franchisees ratified these acts and omissions, and because Ramada Franchisees and Super8 Franchisees failed to exercise reasonable care with regard to the hiring, training, and supervision of these employees given the specific risks, known to Ramada Franchisees and Super8 Franchisees, of sex trafficking occurring at Ramada Inn and Super8 properties including the subject locations.

105.   Despite having actual or constructive knowledge of widespread and ongoing sex trafficking at the subject Ramada Inn and Super8 properties, Ramada Franchisees and Super8 Franchisees continued renting rooms to these traffickers, including the rooms used to sexually exploit victims, including Jane Doe (C.M.S.).

106.   Ramada Franchisees and Super8 Franchisees knew or were willfully blind to the fact that Jane Doe (C.M.S.) was being trafficked and, despite this, benefited from continued association with her traffickers by providing them a venue in the form of hotel rooms and related services, to facilitate Jane Doe (C.M.S.)'s sexual exploitation.

PLAINTIFF'S ORIGINAL COMPLAINT                          45

107.  Ramada Franchisees and Super8 Franchisees also facilitated widespread trafficking at the Ramada Inn and Super8 properties, including the trafficking of Jane Doe (C.M.S.), in ways including:

    a.  allowing inappropriate and inadequate practices for hiring, training, supervising, managing, and disciplining front-line staff regarding issues related to human trafficking;

    b.  inadequate and inadequately enforced sex trafficking notice and training for hotel staff;

    c.  choosing not to report known or suspected criminal activity including sex trafficking to the appropriate law enforcement agencies according to reasonable practices, industry standards, and/or applicable franchisor policies and procedures;

    d.  implicitly encouraging the activities of traffickers by creating an environment where they did not need to incur the burden of taking significant steps to conceal their activities but, instead, could operate without concern for detection or interference by the hotel staff.

**b.  Ramada Franchisors and Super8 Franchisors facilitated the trafficking of Jane Doe (C.M.S.) at Ramada Inn and Super8 properties.**

108.  Upon information and belief, the Ramada Franchisors and Super8 Franchisors participated directly in aspects of the operation of the subject Ramada Inn and Super8 properties that influenced whether and to what extent trafficking occurred at the hotel, including but not limited to the trafficking of Jane Doe (C.M.S.), as follows:

    a.  assuming joint responsibility with the franchisee for detecting and preventing human trafficking at the hotel property;

---

PLAINTIFF'S ORIGINAL COMPLAINT

46

b. assuming or retaining control over and responsibility for adopting, monitoring, and enforcing policies and protocols requiring hotel staff to report suspected criminal or trafficking activity to the franchisor;

c. assuming or retaining control over and responsibility for training hotel staff on detecting and responding to human trafficking;

d. assuming or retaining control over and responsibility for adopting, monitoring, and enforcing policies and protocols regarding detecting and responding to human trafficking;

e. employing field-based associates who work with hotels on trafficking issues;

f. assessing or auditing hotel properties, specifically, for the purpose of evaluating whether safety and security measures related to trafficking are in place;

g. establishing systems for guests to report security issues to franchisor;

h. requiring franchisees to provide Wi-Fi/internet access to guests;

i. mandating the specific tools and systems that franchisees must use to provide Wi-Fi/internet access to guests;

j. setting policies and protocols regarding guest use of Wi-Fi/internet, filtering and site-blocking mechanisms deployed, and monitoring/tracking of guest usage;

k. requiring franchisees to use a system to monitor and track housekeeping requests;

l. setting policies for when and how housekeeping services are provided;

m. collecting and monitoring data that shows patterns of use of housekeeping services;

n. setting policies for when and how hotel staff can accept tips.

109. Ramada Franchisors and Super8 Franchisors directly participated in and retained day-to-day control over renting rooms at the subject Wyndham branded properties by, among other things:

PLAINTIFF'S ORIGINAL COMPLAINT

47

a. controlling all details of the guest reservation, check-in, and payment processes through management and control over all systems used for those processes and adoption of detailed and specific policies governing the means and methods used for each of these processes;

b. controlling and overseeing policies and procedures regarding check-in, payment, and identity verification procedures, including whether cash and prepaid cards could be used and who had to show identification.

c. requiring the franchisee to use the franchisor's centralized reservation system and preventing the franchisee from using any other system;

d. reserving rooms and accept payments without requiring franchisee approval or involvement;

e. controlling and restricting the ability of franchisee and staff to refuse or cancel a reservation.

f. requiring the franchisee to use a software system operated and controlled by the franchisor for booking rooms and checking guests into rooms;

g. requiring the franchisee to use a software system operated and controlled by the franchisor to process payments;

h. requiring the franchisee to use a property-management system operated and controlled by the franchisor;

i. requiring the franchisee to use a data-management system operated and controlled by the franchisor;

j. ensuring that data related to each room reservation passes through systems owned, maintained, and managed by the franchisor;

k. exercising control over the price of rooms;

l. controlling all details of the customer loyalty program that the franchisee was required to implement;

m. setting detailed policies for the check-in process, including requirements for identification and payment methods;

PLAINTIFF'S ORIGINAL COMPLAINT    48

n. collecting guest data, requiring franchisees to report guest data, and reviewing and analyzing guest data, including names, payment information, reservation history, internet browsing data, and other details associated with their stay;

o. assuming sole ownership over all guest information;

p. overseeing do not rent (DNR) lists for its branded properties.

110. Despite having actual or constructive knowledge of widespread and ongoing sex trafficking at the subject Ramada Inn and Super8 properties, Ramada Franchisors and Super8 Franchisors continued renting rooms to traffickers, including the rooms used to sexually exploit victims, including Jane Doe (C.M.S.).

111. Ramada Franchisors and Super8 Franchisors knew or should have known that Jane Doe (C.M.S.) was being trafficked and, despite this, benefited from continued association with her traffickers by providing them hotel rooms and related services to facilitate Jane Doe (C.M.S.)'s sexual exploitation.

112. Upon information and belief, despite having actual or constructive knowledge of the ongoing sex trafficking at the subject Ramada Inn and Super8 properties, the Ramada Franchisors and Super8 Franchisors continued participating in a venture at that hotel, with its franchisees and the hotel staff, in a way that it knew or should have known would lead to additional sex trafficking at the hotel, including but not limited to by the following:

a. adopting, maintaining, and enforcing policies and practices regarding guest identification in a way that facilitated trafficking by allowing traffickers, including Jane Doe's traffickers, to secure rooms without providing their own identifying information;

PLAINTIFF'S ORIGINAL COMPLAINT                49

b.  adopting, maintaining, and enforcing policies and practices regarding payment methods in a way that facilitated trafficking by allowing traffickers, including Jane Doe's traffickers, to pay for rooms using non-traceable methods;

c.  adopting and enforcing training methods for the franchisee and hotel staff in a way that led to widespread and ongoing trafficking at the hotel property;

d.  adopting and enforcing policies and protocol regarding trafficking in a way that led to widespread and ongoing trafficking at the hotel property;

e.  providing traffickers continued access to Franchisor-maintained internet systems despite having active or constructive knowledge this access was being used for advertising services related to their trafficking activities;

f.  adopting inappropriate and inadequate practices for monitoring, supervising, and responding to issues regarding the conduct of Franchisee and hotel staff related to human trafficking at the subject Wyndham branded hotels;

g.  implicitly or explicitly encouraging franchisee to continue facilitating trafficking by continuing the same methods of operation at the hotel property despite obvious evidence that those methods were leading to widespread and ongoing sex trafficking.

113.  If Ramada Franchisors and Super8 Franchisors had exercised reasonable diligence when operating the Ramada Inn and Super8 properties and in the areas where it retained control, Ramada Franchisors and Super8 Franchisors would have prevented the Wyndham properties from being used to facilitate widespread and ongoing sex trafficking, including the trafficking of Jane Doe (C.M.S.). Instead, Ramada Franchisors and Super8 Franchisors engaged in the course of conduct that affirmatively

PLAINTIFF'S ORIGINAL COMPLAINT                50

facilitated widespread and ongoing sex trafficking, including the trafficking of Jane Doe (C.M.S.).

## V.      Defendants' ventures at the Ramada Inn and Super8 properties.

114.    Through the conduct described above, Ramada Franchisors and Super8 Franchisors knowingly benefited from engaging in a venture with sex traffickers at the Ramada Inn and Super8 properties, including Jane Doe (C.M.S.)'s trafficker, as follows:

   a. Ramada Franchisors and Super8 Franchisors and Ramada Franchisees and Super8 Franchisees both received benefits, including increased revenue, every time a room was rented.

   b. This venture engaged in violations of violated 18 U.S.C. §1591 through the actions of the criminal traffickers at the properties, which Wyndham and Franchisee Defendants knew or should have known about.

   c. Ramada Franchisors and Super8 Franchisors and Ramada Franchisees and Super8 Franchisees associated with traffickers, including Jane Doe C.M.S.'s traffickers, by acting jointly to continue to rent rooms to these traffickers despite having actual or constructive knowledge of their sex trafficking activity.

   d. Ramada Franchisors and Super8 Franchisors and Ramada Franchisees and Super8 Franchisees had a mutually beneficial relationship with the traffickers at the properties, fueled by sexual exploitation of victims.

   e. Sex traffickers, including Jane Doe C.M.S.'s traffickers, frequently used Wyndham properties for their trafficking because of an implicit understanding that Wyndham properties were a venue that would facilitate their trafficking, providing minimal interference and lowering their risk of detection. This understanding occurred because of the conduct of Ramada Franchisors and Super8 Franchisors and Ramada Franchisees and Super8 Franchisees facilitating that trafficking as described throughout this complaint. This resulted in

PLAINTIFF'S ORIGINAL COMPLAINT                    51

benefits, including increased revenue, for Ramada Franchisors and Super8 Franchisors and Ramada Franchisees and Super8 Franchisees.

f. Both Ramada Franchisors and Super8 Franchisors and Ramada Franchisees and Super8 Franchisees participated in this venture through the conduct described throughout this Complaint as they were jointly responsible for relevant aspects of hotel operations.

g. Jane Doe C.M.S.'s trafficking at a Wyndham branded hotel was a result of Ramada Franchisors and Super8 Franchisors and Ramada Franchisees and Super8 Franchisees' participation in a venture with criminal traffickers. If Ramada Franchisors and Super8 Franchisors and Ramada Franchisees and Super8 Franchisees had not continued participating in a venture that they knew or should have known violated 18 U.S.C. §1591(a), they would not have received a benefit from Jane Doe C.M.S.'s trafficking at the Ramada Inn and Super8 properties.

115. Through the conduct described above, each of the Defendants also knowingly benefited from engaging in a commercial venture with other Defendants and with hotel staff as follows:

a. Ramada Franchisors and Super8 Franchisors and Ramada Franchisees and Super8 Franchisees continued to operate the Ramada Inn and Super8 properties.

b. Pursuant to the terms of the franchising agreement, both Ramada Franchisors and Super8 Franchisors and Ramada Franchisees and Super8 Franchisees received financial benefits from operating the properties, including revenue generated specifically by renting rooms to traffickers. They engaged in revenue sharing and had a common incentive to maximize revenue.

c. This venture violated 18 U.S.C. §1591(a) through the conduct of Super8 Franchisees and the widespread sex trafficking at the properties.

d. Despite its actual or constructive knowledge that the venture was engaged in violations of 18 U.S.C. §1591(a), Ramada Franchisors and

PLAINTIFF'S ORIGINAL COMPLAINT        52

Super8 Franchisors participated in the venture by continuing to associate Ramada Franchisees and Super8 Franchisees to operate the properties in a way that it knew or should have known would lead to further violations of 18 U.S.C. §1591(a), including trafficking of victims like Jane Doe C.M.S.

e.  Jane Doe C.M.S.'s trafficking was a result of Ramada Franchisors and Super8 Franchisors and Ramada Franchisees and Super8 Franchisees' facilitation of the widespread and ongoing violations of 18 U.S.C. §1591(a) at the properties. Had Ramada Franchisors and Super8 not continued participating in a venture that they knew or should have known was engaged in violations of 18 U.S.C. §1591(a), they would not have received a benefit from Jane Doe C.M.S.'s trafficking.

**VI.    Ramada Franchisees and Super8 Franchisees and the Staff at the Ramada Inn and Super8 Properties Acted as Actual Agents of Ramada Franchisors and Super8 Franchisors.**

116.   Ramada Franchisors and Super8 Franchisors is vicariously liable for the acts, omissions, and knowledge of Ramada Franchisors and Super8 Franchisors and staff at the subject Ramada Inn and Super8 properties, which are Ramada Franchisors and Super8 Franchisors' actual agents or subagents.

117.   The Ramada Franchisors and Super8 Franchisors subjected Ramada Inn Franchisees and Super8 Franchisees to detailed standards and requirements regarding the operation of the subject Ramada Inn and Super8 properties through the franchising agreement, through detailed written policies and manuals, and through other formal and informal protocols, directives, mandates, and expectations imposed by the Ramada Franchisors and Super8 Franchisors.

PLAINTIFF'S ORIGINAL COMPLAINT                53

118.   The Ramada Franchisors and Super8 Franchisors obscure the full extent of control they exercise over the franchisees by treating the manuals and certain policies as confidential and proprietary and prohibiting any public disclosure of those policies and manuals. Upon information and belief, the standards that the Ramada Franchisors and Super8 Franchisors imposed on the franchisees:

a. did not merely identify quality or outcome standards but instead specifically controlled the means, methods, and tools Franchisee Defendants used; and

b. covered virtually all aspects of hotel operations, including but not limited to personnel, building, grounds, furnishings, fixtures, decor, equipment, vehicles, supplies, foodstuffs, printed matters, and internal operating functions; and

c. dictated the specific manner in which Ramada Franchisees and Super8 Franchisees and hotel staff must carry out most day-to-day functions; and

d. significantly exceeded what was necessary for Ramada Franchisors and Super8 Franchisors to protect its registered trademarks.

119.   In addition to the ways described above, upon information and belief, Ramada Franchisors and Super8 Franchisors exercised and reserved the right to exercise systemic and pervasive control over Ramada Franchisees and Super8 Franchisees day-to-day operation of the subject properties, including the following ways:

a. Ramada Franchisors and Super8 Franchisors required franchisees and management of franchised hotels to participate in mandatory training programs, both during onboarding and on an ongoing basis. This training covered all aspects of hotel operations, including aspects of hotel operations that go significantly beyond what would be necessary

PLAINTIFF'S ORIGINAL COMPLAINT                   54

for Ramada Franchisors and Super8 Franchisors to protect its registered trademarks;

b. Ramada Franchisors and Super8 Franchisors maintained a team of regionally based trainers to provide training at branded hotels. Ramada Franchisors and Super8 Franchisors provided training for hotel management and select hotel staff on-site and at locations selected by Ramada Franchisors and Super8 Franchisors;

c. Ramada Franchisors and Super8 Franchisors provided hotels staff with training they created through an online learning platform, Wyndham University, they controlled and maintained, including training specific to hotel-based jobs, such as safety and security training for housekeeping staff and safety and security training for the front desk;

d. Ramada Franchisors and Super8 Franchisors controlled training provided by franchisees to hotel staff by dictating the content of that training, providing required content for that training, and dictating the training methods used;

e. Ramada Franchisors and Super8 Franchisors retained sole discretion to determine whether all training had been completed satisfactorily;

f. Ramada Franchisors and Super8 Franchisors maintained oversight in hiring, disciplining, and terminating hotel management and employees;

g. Ramada Franchisors and Super8 Franchisors required franchisees to participate in mandatory centralized services for day-to-day operation of the hotel;

h. For certain products and services that franchisee was required to purchase to operate the property, Ramada Franchisors and Super8 Franchisors designated approved vendors and prohibited franchisee from purchasing goods and services from anyone other than an approved vendor;

i. Ramada Franchisors and Super8 Franchisors required franchisees to use its revenue management system, through which it dictated pricing and strategies to maximize revenue, and which gave it direct ability to supervise day-to-day operations at through the hotel through direct access to the system;

PLAINTIFF'S ORIGINAL COMPLAINT                    55

j. Ramada Franchisors and Super8 Franchisors set required staffing levels for the subject properties;

k. Ramada Franchisors and Super8 Franchisors established detailed job descriptions for all positions in its branded properties and drafted numerous, detailed policies that referenced these positions and dictated which positions must perform which tasks and how they must do so;

l. Ramada Franchisors and Super8 Franchisors set requirements for the hiring process used by franchisees and oversaw employee discipline processes and termination decisions;

m. Ramada Franchisors and Super8 Franchisors provided benefits for employees of franchised hotels;

n. Ramada Franchisors and Super8 Franchisors controlled channels for guests to report complaints or provide feedback regarding the subject properties and directly participated in the response and/or supervised and the response to customer complaints or other feedback. Wyndham retained the right to provide refunds or other compensation to guests and to require Franchisee Defendants to pay associated costs;

o. Ramada Franchisors and Super8 Franchisors generated reports and analysis of guest complaints and online reviews for the subject properties;

p. Ramada Franchisors and Super8 Franchisors set detailed requirements for insurance that Franchisee Defendants must purchase;

q. Ramada Franchisors and Super8 Franchisors exercised or retained control over the franchisee's day-to-day accounting and banking practices;

r. Ramada Franchisors and Super8 Franchisors regularly audited the books and records of Franchisee Defendants;

s. Ramada Franchisors and Super8 Franchisors conducted frequent and unscheduled inspections of the subject properties;

t. Ramada Franchisors and Super8 Franchisors retained the right to issue fines, require additional training, to impose and supervise implementation of detailed corrective action plans, and to take other steps up to and including termination of the franchising agreement if

franchisee violated any of the franchisors' detailed rules, expectations, protocols, or policies, including those that governed day-to-day operations of the subject properties;

u. Ramada Franchisors and Super8 Franchisors controlled all marketing for the subject properties, directly provided marketing services, and prohibited Ramada Franchisees and Super8 Franchisees from maintaining any online presence unless specifically reviewed and approved by Ramada Franchisors and Super8 Franchisors;

v. Ramada Franchisors and Super8 Franchisors exercised or retained control over all aspects of building and facility design;

w. Ramada Franchisors and Super8 Franchisors imposed detailed recordkeeping and reporting requirements on Ramada Franchisee and Super8 Franchisee regarding virtually all aspects of hotel operations;

x. Ramada Franchisors and Super8 Franchisors supervised and controlled day-to-day operations of the subject properties through detailed information and extensive reports that it obtained through the property management system and other software systems it required Ramada Franchisees and Super8 Franchisees to use;

y. Ramada Franchisors and Super8 Franchisors required the franchisee and hotel staff to implement a data system that gives Franchisor real-time information that it can monitor on a day-to-day basis; and

z. Ramada Franchisors and Super8 Franchisors retained the virtually unlimited right to revise policies or adopt new requirements for the day-to-day aspects of hotel operations.

120.    Upon information and belief, Ramada Franchisors and Super8 Franchisors had the right to and did enforce its control over Ramada Franchisees and Super8 Franchisees through various methods, including:

a. the right to conduct detailed inspections of the subject properties;

b. monitoring or auditing the Ramada Franchisees and Super 8 Franchisees for compliance with policies and expectations;

PLAINTIFF'S ORIGINAL COMPLAINT                   57

c. directing Ramada Franchisees and Super 8 Franchisees to take specific steps to come into compliance with detailed and exacting standards regarding day-to-day operations;

d. mandating training and education for franchisees and/or hotel staff;

e. employing consultants or field agents to become involved in the day-to-day operations of franchised hotels;

f. the right to impose fines or penalties;

g. the right to impose additional conditions on franchisee or to restrict or limit its right to provide goods and services; and

121. the right to terminate the franchise agreement for failure to comply with policies that govern the means and methods used for day-to-day operations.

**VII. Ramada Franchisors and Super8 Franchisors are jointly responsible for the trafficking of Jane Doe (C.M.S.)**

122. All the Ramada Franchisors and Super8 Franchisors were participants in a joint venture, which involved a common enterprise, profit-sharing, a community of interests, and joint rights of control and management, and are vicariously liable for the violations of the other participants in the joint venture.

123. Upon information and belief, operation of the subject properties was part of a single unified operation by Ramada Franchisors and Super8 Franchisors. Upon information and belief, all Ramada Franchisors and Super8 Franchisors shared a common parent company, were subject to joint control, and operated as an integrated enterprise and/or as alter-egos. Upon information and belief, Ramada Franchisors and Super8 Franchisors acted jointly to own, operate, control, manage, and supervise the

PLAINTIFF'S ORIGINAL COMPLAINT    58

subject properties. As an integrated enterprise and/or joint venture, Defendants were separately and jointly responsible for compliance with all applicable laws.

## VIII. Defendants are Jointly and Severally Liable for Jane Doe (C.M.S.)'s Damages.

124.  The venture or ventures in which each Defendant participated were direct, producing, and proximate causes of the injuries and damages to Jane Doe (C.M.S.).

125. Under the TVPRA, Defendants are jointly and severally liable for all damages that a jury awards to Jane Doe (C.M.S.) for past and future losses she suffered as a proximate result of her sexual exploitation and trafficking.

## IX.    IX. Sex Trafficking Has Long Been Prevalent at Hilton Branded Properties, and Hilton-Homewood Suites Franchisor Should Have Known About It.

126.  Hilton-Homewood Suites Franchisor's actual knowledge is *not* limited to a general awareness of the problem of sex trafficking in the hotel industry. Hilton-Homewood Suites Franchisor's has known, since well before Jane Doe (C.M.S.)'s trafficking, that sex trafficking was ongoing and widespread at Hilton branded properties including the subject properties.

127.  Unfortunately for Jane Doe (C.M.S.), the promises made by the Hilton-Homewood Suites Franchisor and Hilton-Homewood Suites Franchisee have proven empty. Hilton-Homewood Suites Franchisor have failed, at all levels, to take appropriate action in response to their knowledge of widespread and ongoing human

PLAINTIFF'S ORIGINAL COMPLAINT                    59

trafficking in their hotels. Instead, they have continued financially benefiting by providing venues for the sexual exploitation of victims like Jane Doe (C.M.S.).

128. Upon information and belief, Hilton-Homewood Suites Franchisor monitored news stories and online reviews for indicia of criminal activity, including sex trafficking. Examples of news stories and online reviews confirming the widespread presence of sex trafficking, prostitution, and related criminal activity at Hilton branded hotels, include:

129. A 2009 review of a Hilton branded property in New York noted that the hotel bar was used by prostitutes to pick up guests, that this could be spotted from a mile off, and that the hotel staff allowed it.[114]

130. A 2010 review of a Hilton property in New York stated "It's true what other reviewers have commented on regarding prostitutes/escorts in the hotel bars. If you are paying attention you will be able to pick them out. we sat right next to a table one night when this was going on. the staff didn't seem to care. It's too bad because there were families in the bar also."[115]

131. In 2011, a man was convicted of sex trafficking a minor at a Hilton branded hotel in Minnesota.[116]

---

[114] https://www.tripadvisor.com/Hotel_Review-g60763-d93618-Reviews-Waldorf_Astoria_New_York-New_York_City_New_York.html

[115] https://www.tripadvisor.com/Hotel_Review-g60763-d93618-Reviews-Waldorf_Astoria_New_York-New_York_City_New_York.html

[116] https://www.startribune.com/28-years-for-man-who-used-girl-for-prostitution/118163089/

132. In 2011, a prostitute was raped when two men forced their way into her room at a Hilton branded property in New Hampshire.

133. In 2012, a man was charged with sex trafficking at another Hilton-Homewood Suites Franchisor branded hotel in Minnesota.[117]

134. In 2012, a couple was charged with sex trafficking an 18-year-old girl with Autism Spectrum Disorder at a Hilton branded property.[118]

135. In 2012, a man was charged with forced labor and sex trafficking following a sting at a Hilton branded hotel in California.[119]

136. In 2012, arrests were made after police conducted a prostitution sting operation at a Hilton branded property in Memphis.[120]

137. A 2013 review of a Hilton property in New York stated "But the prostitution going on in the lobby bar is so obvious The Waldorf must endorse it. Shame on you!"[121]

138. In 2013, a man was charged with forcing a woman into prostitution at a Hilton property in Florida.[122]

[117] https://www.startribune.com/fridley-man-st-paul-woman-accused-of-prostituting-iowa-teen/138615249/
[118] https://www.twincities.com/2012/02/01/couple-charged-with-prostituting-runaway-iowa-girl-with-asperger-syndrome/
[119] https://www.nbclosangeles.com/news/local/long-beach-roshaun-kevin-nakia-porter-accused-human-trafficking-orange-county-pimp/1951757/
[120] https://www.actionnews5.com/story/20142585/suspected-prostitutes-busted-at-beale-area-hotel/
[121] https://www.tripadvisor.com/Hotel_Review-g60763-d93618-Reviews-Waldorf_Astoria_New_York-New_York_City_New_York.html
[122] https://www.nbcmiami.com/news/local/broward-judge-sets-30000-bond-for-man-charged-with-human-trafficking/1923493/

139.  In 2014, a sex trafficking victim was found murdered at a Hilton property in Oregon.[123]

140.  Sex trafficking at Hilton branded properties was not isolated to one hotel or geographic area and became a nationwide problem due to decisions made by top tier managers and employees of Hilton-Homewood Suites Franchisor.

141.  Hilton-Homewood Suites Franchisor knew the sex trafficking crisis was prevalent in the hotel industry generally and specifically at their branded hotels, including the Homewood Suites, where Plaintiff was trafficked.

142.  Upon information and belief, at all relevant times, Hilton-Homewood Suites Franchisor, acting directly and through affiliates, adopted centralized policies that controlled the Hilton-Homewood Suites Franchisee Defendants and Hilton-branded properties, including the Homewood Suites, San Jose. This extends to the hotels' approach to human trafficking.

143.  Sex trafficking was prevalent at Hilton-branded properties, including Homewood Suites properties, both on a national scale and in the State of Washington.

144.  Hilton-Homewood Suites Franchisor was aware of the issue of sex trafficking in Hilton-branded properties, including through the following public statements:

---

[123] https://www.krem.com/article/news/nation/sex-trafficking-victim-found-slain-in-portland-hotel/293-157195643

PLAINTIFF'S ORIGINAL COMPLAINT                    62

145.  As early as 2010, Chinese police found a brothel operating inside a Hilton branded hotel, which prompted Hilton Worldwide officials to publicly claim to be working a code of conduct to prevent child sex trafficking at their branded properties.[124]

146.  Hilton-Homewood Suites Franchisor, on behalf of its brands including Homewood Suites, joined the ECPAT-USA Code in 2011, acknowledging its duties to prevent and protect children from trafficking after over a year of advocacy directed at Hilton branded properties anti-trafficking advocates.[125]

147.  Speaking on behalf of its brand, Hilton-Homewood Suites Franchisor stated in 2013: "Sex trafficking and sexual tourism is a large and growing problem worldwide, and Hilton Worldwide must never allow any of its properties, products, or services to be used in a nan manner that supports or enables any form of abuse and exploitation."[126]

148.  In 2015 Hilton-Homewood Suites Franchisor conducted a global human rights assessment for all its branded properties, which identified the following risk: hotels may be used by criminals to traffic victims for exploitation.[127]

**CAUSES OF ACTION—SEX TRAFFICKING UNDER THE TVPRA**

149.  Jane Doe (C.M.S.) incorporates all other allegations.

---

[124] https://www.nasdaq.com/articles/hilton-working-abolsish-child-sex-trafficking-2010-11-03
[125] https:stopchildlabororg/Hilton-signs-code-of-conduct-to-prevent-child-prostitution/
[126] https://thecode.my.salesforce-site.com/apex/publicPdf?id=0019000000GxgQIAAAZ&year=2013
[127] https://esg.hilton.com/wp-content/uploads/sites/3/2002/08/Hilton-FY-2021-Modern -Slavery-Act-Statement-1.pdf

**I.      Cause of Action: Perpetrator liability under 18 U.S.C §1595(a) based on violation of 18 U.S.C §1591(a) (Ramada Franchisees, Super8 Franchisees and Hilton-Homewood Suites Franchisees)**

150.   Jane Doe (C.M.S.) is a victim of sex trafficking within the meaning of § 1591 and 1595(a) and is thus entitled to bring a civil action under 18 U.S.C §1595(a) against the "perpetrator" of any violation of the TVPRA.

151.   Ramada Franchisees, Super8 Franchisees and Hilton-Homewood Suites Franchisees are perpetrators within the meaning of 18 U.S.C §1595(a) because they:

     a.  violated 18 U.S.C §1591(a)(1) when, through the acts and omissions described throughout this Complaint, they harbored individuals (including Jane Doe (C.M.S.)) knowing or in reckless disregard of the fact that the victims would be caused, through force, coercion, or fraud, to engage in commercial sex acts while at their respective hotel properties.

     b.  violated 18 U.S.C §1591(a)(2) when, through the acts and omissions described throughout this Complaint, they knowingly received financial benefit by knowingly assisting, supporting, or facilitating a venture that was engaged in violations under 18 U.S.C §1591(a)(1) at their respective hotel properties.

152.   Violations of 18 U.S.C §1595(a) by each of the Ramada Franchisees, Super8 Franchisees and Hilton-Homewood Suites Franchisees as "perpetrators" operated, jointly, with other unlawful acts and omissions alleged in this Complaint, to cause Jane Doe (C.M.S.) to suffer substantial physical and psychological injuries and other damages because of being trafficked and sexually exploited at the Defendants' hotel properties.

PLAINTIFF'S ORIGINAL COMPLAINT                    64

**II.    Cause of Action: Beneficiary Liability under §1595 (a) of the TVPRA (all Defendants).**

153.  Jane Doe (C.M.S.) is a victim of sex trafficking within the meaning of 18 U.S.C §§ 1591 and 1595(a) and is thus entitled to bring a civil action under the "beneficiary" theory in 18 U.S.C §1595(a) against anyone who knowingly benefited from participation in a venture that the person knew or should have, with reasonable diligence, known was engaged in a violation of the TVPRA.

154. Through acts and omissions described throughout this Complaint, Defendants received a financial benefit from participating in a venture with traffickers, including Jane Doe (C.M.S.)'s traffickers, despite the fact that each defendant knew or should have known that these traffickers, including Jane Doe (C.M.S.)'s traffickers, were engaged in violations of 18 U.S.C §1591(a)(1) and 18 U.S.C §1591(a)(2). Thus, Defendants are liable as a beneficiary under 18 U.S.C §1595(a).

155. Through the acts and omissions described throughout this Complaint, Defendants received a financial benefit from participating in a venture with its respective franchisees regarding the operation of its respective hotel property despite the fact that Defendants knew or should have known that this venture was violating 18 U.S.C §§ 1591(a) and 1595(a).

156. Violations of 18 U.S.C §1595(a) by Defendants as "beneficiaries" operated, jointly, with other unlawful acts and omissions alleged in this Complaint, to cause Jane Doe (C.M.S.) to suffer substantial physical and psychological injuries and

PLAINTIFF'S ORIGINAL COMPLAINT                65

other damages because of being trafficked and sexually exploited at the Defendants' hotel properties.

**III.   Cause of Action: Vicarious Liability for TVPRA Violations (Ramada Franchisors, Super8 Franchisors, Hilton-Homewood Suites Franchisor).**

157.   Under the TVPRA and the federal common law, each member of a joint venture is vicariously liable for the acts and omissions of all other members of that joint venture.

158.   Under the TVPRA and the federal common law, an entity vicariously liable for the acts and omissions of its alter-egos.

159.   Ramada Franchisees, Super8 Franchisees and Hilton-Homewood Suites Franchisees acted as the actual agents of Ramada Franchisors, Super8 Franchisors and Hilton-Homewood Suites Franchisor, respectively.

160.   Through the acts and omissions described throughout this Complaint, Ramada Franchisors, Super8 Franchisors and Hilton-Homewood Suites Franchisor exercised or retained the right to exercise systematic and day-to-day control over the means and methods used by their franchisees to operate their respective hotel properties.

161.   Ramada Franchisors, Super8 Franchisors and Hilton-Homewood Suites Franchisor are vicariously liable for the TVPRA violations of their franchisees and the subagents of that franchisee.

PLAINTIFF'S ORIGINAL COMPLAINT

162.  Additionally, on information and belief, each of the Ramada Franchisors, Super8 Franchisors and Hilton-Homewood Suites Franchisor participated in a joint venture. They had highly integrated operations at the hotels, shared revenue and profits generated from the hotels, and exercised mutual control over the venture at the hotels. They functioned as a single integrated entity and/or as alter-egos of one another.

## DISCOVERY RULE

163.  To the extent Defendants assert an affirmative defense of limitations, Jane Doe (C.M.S.) invokes the discovery rule. At the time she was harmed and through at least 2014, Jane Doe (C.M.S.) was under coercion and control of traffickers who abused and manipulated her. Thus, Jane Doe (C.M.S.) did not discover and could not reasonably have discovered the legal cause of her injury more than ten years before she filed this lawsuit. While she was under the control of her trafficker, Jane Doe (C.M.S.)—through no fault of her own—lacked the information to bring a claim because she did not know both her injury and the cause of her injury. This lack of information was a direct result of C.M.S. being kept under the control of her traffickers, which Defendants facilitated.

164.  At the time Jane Doe (C.M.S.) was harmed, she did not know that she was the victim of human trafficking as that term is defined by law, that her injury arose from being trafficked at Defendants' hotel or that she was a person trafficked, much less that she was being victimized by a human trafficking venture, and she did not

PLAINTIFF'S ORIGINAL COMPLAINT                    67

discover and was not in a position to discover the legal cause of her injury, more than ten years before suit was filed..

165.  To the extent Defendants assert an affirmative defense of limitations, Jane Doe (C.M.S.) invokes the doctrine of equitable tolling because, as a result of being a victim of trafficking, Jane Doe (C.M.S.) faced extraordinary circumstances, which arose through no fault of her own, that prevented her from filing a lawsuit, and those circumstances did not end more than 10 years before Jane Doe (C.M.S.) filed this lawsuit.

166.  As a result of her continuous trafficking at the subject properties through at least 2015, Jane Doe (C.M.S.) was beaten, drugged, sexually assaulted, and mentally abused. She lacked the mental capacity to recognize the extent and scope of her injuries or those responsible particularly those who financially benefited from her trafficking but may not have been seen to be directly involved.

167.  Jane Doe (C.M.S.) was under the continuous control of her traffickers through at least 2015. As a result, she did not have the freedom to investigate her claims, to identify those responsible or to seek legal representation necessary to pursue her legal rights.

168.  To the extent Defendants assert an affirmative defense of limitations, Jane Doe (C.M.S.) also invokes the continuing tort doctrine because this lawsuit arises out of a pattern of continuous and ongoing tortious conduct.

PLAINTIFF'S ORIGINAL COMPLAINT

68

169. Jane Doe (C.M.S.) was subject to continuous trafficking at the subject properties through at least 2015, which is not more than 10 years before Jane Doe (C.M.S.) filed this lawsuit.

170. This continuous trafficking resulted from Defendants' continuous facilitating of trafficking at the subject properties and Defendants' ongoing venture with one another and with criminal traffickers.

## **DAMAGES**

171. Defendants' acts and omissions, individually and collectively, caused Jane Doe (C.M.S.) to sustain legal damages.

172. Defendants are joint and severally liable for all past and future damages sustained by Jane Doe (C.M.S.).

173. Jane Doe (C.M.S.) is entitled to be compensated for personal injuries and economic damages, including:

a. Actual damages (until trial and in the future)

b. Incidental and consequential damages (until trial and in the future);

c. Mental anguish and emotional distress damages (until trial and in the future);

d. Lost earnings and lost earning capacity (until trial and in the future);

e. Necessary medical expenses (until trial and in the future);

f. Life care expenses (until trial and in the future);

g. Physical pain and suffering (until trial and in the future);

h.  Physical impairment (until trial and in the future);

i.  Exemplary/Punitive damages;

j.  Attorneys' fees; and

k.  Costs of this action.

l.  Pre-judgment and all other interest recoverable.

## JURY TRIAL

174.  Jane Doe (C.M.S.) demands a jury trial on all issues.

## RELIEF SOUGHT

175.  WHEREFORE, Jane Doe (C.M.S.) prays that this case be set for trial before a jury and that, upon a final hearing of the cause, judgment be entered for Jane Doe (C.M.S.) against all Defendants jointly and severally for the actual, compensatory, and punitive damages as the evidence may show, and the jury may determine to be proper, together with the costs of suit, prejudgment interest, post-judgment interest, and such other and further relief to which Jane Doe (C.M.S.) may, in law or in equity, show herself to be justly entitled.

DATED:  January 31, 2024                Respectfully submitted,

By: /s/Moze Cowper
C. Moze Cowper (Bar No. 326614)
mcowper@cowperlaw.com
**COWPER LAW PC**
12301 Wilshire Boulevard, Suite 303

PLAINTIFF'S ORIGINAL COMPLAINT              70

Los Angeles, California 90025
Tel.: (877) 529-3707

Patrick Barrett (*to be admitted pro hac vice*)
pbarrett@pulf.com
**PROVOST UMPHREY LAW FIRM**
4205 Hillsboro Pike, Suite 303
Nashville, Tennessee 37215
Tel.: (615)297-1932

Bryan O. Blevins (*to be admitted pro hac vice*)
bblevins@pulf.com
**PROVOST UMPHREY LAW FIRM**
350 Pine Street, Suite 1100
Beaumont, Texas 77701
Tel.: (409) 838-8858

Edward Fisher (*to be admitted pro hac vice*)
efisher@pulf.com
**PROVOST UMPHREY LAW FIRM**
350 Pine Street, Suite 1100
Beaumont, Texas 77701
Tel.: (409) 838-8813

Annie McAdams (*to be admitted pro hac vice*)
annie@mcadamspc.com
**ANNIE MCADAMS PC**
2200 Post Oak, Suite 1000
11th Floor, PNC Tower
Houston, Texas 77056


*Attorneys for Plaintiff*

PLAINTIFF'S ORIGINAL COMPLAINT    71