UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE (C.M.S.), an individual,<br><br>                                        Plaintiff,<br><br>v.<br><br>WYNDHAM HOTELS & RESORTS, INC., et al.,<br><br>                                        Defendants. | Case No.: 24-CV-217 JLS (AHG)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**<br><br>(ECF Nos. 54, 75, 76, 77, 78, 100, 123, 135, 138) |

Presently before the Court are eight (8) Motions to Dismiss Plaintiff Jane Doe C.M.S.'s ("Plaintiff" or "C.M.S.") Second Amended Complaint filed by Defendants: (1) ESA P Portfolio LLC; ESH/HV Properties LLC; ESH Hospitality, Inc.; ESA P Portfolio Operating Lessee, LLC (collectively, "ESA" or "ESA Defendants"); (2) Wyndham Hotels & Resorts, Inc.; Wyndham Hotel Group, LLC; Ramada Worldwide Inc.; Super 8 Worldwide, Inc.[1] (collectively, "Wyndham" or "Wyndham Defendants"); (3) Choice Hotels International, Inc. ("Choice"); (4) Apple Eight Hospitality Management, Inc. ("Apple"), which Hilton Domestic Operating Company Inc. ("Hilton") joined and

---

[1] The Court notes Defendants La Quinta Franchising, LLC and La Quinta Holdings, Inc. were also included in this Motion as "Wyndham Defendants," however they were both subsequently voluntarily dismissed from this Action. *See* ECF Nos. 104, 105. Accordingly, the Motion (ECF No. 75) as to these two Defendants is **DENIED** as **MOOT**.

provided supplemental argument in its Notice of Joinder; (5) Pacific Coast Inn, LLC ("Pacific Coast"); (6) Sports Arena Hotel Venture, LP ("Sports Arena"); (7) Mount Vernon Inn, LLC ("MVI"); and (8) OHM Kareshver, Inc. ("OHM").[2]   ECF No. 54 ("ESA MTD"), ECF No. 75 ("Wyndham MTD"), ECF No. 76 ("Choice MTD"), ECF No. 77 ("Apple MTD"), ECF No. 78 ("Hilton Joinder"), ECF No. 100 ("Pacific Coast MTD"), ECF No. 135 ("MVI MTD"); ECF No. 138 ("OHM MTD").

ESA, Wyndham, Choice, Apple, Pacific Coast, and Sports Arena each filed a Memorandum of Points and Authorities in support of their respective Motions.   ECF No. 54-1 ("ESA Mem."), ECF No. 75-1 ("Wyndham Mem."), ECF No. 76-1 ("Choice Mem."), ECF No. 100-1 ("Pacific Coast Mem."), ECF No. 123-1 ("Sports Arena Mem.").

Plaintiff then filed Oppositions to all but OHM's Motion.   ECF No. 123-1 ("Pl.'s ESA Opp'n"), ECF No. 110 ("Pl.'s Wyndham Opp'n"), ECF No. 111 ("Pl.'s Choice Opp'n"), ECF No. 112 ("Pl.'s Apple Opp'n"), ECF No. 143 ("Pl.'s Sports Arena Opp'n"), ECF No. 144 ("Pl.'s MVI Opp'n"), ECF No. 146 ("Pl.'s Pacific Coast Opp'n").   Plaintiff also filed an Opposition to Hilton's Notice of Joinder.   ECF No. 113 ("Pl.'s Hilton Opp'n").   Subsequently, ESA, Choice, Wyndham, Apple, Sports Arena, MVI, and Pacific Coast filed Replies to Plaintiff's respective Oppositions.   ECF Nos. 97, 124, 125, 127, 147, 148, 149.

The Court took this matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1).   *See* ECF Nos. 137, 150.   Having carefully considered the Parties' arguments, Plaintiff's Second Amended Complaint ("SAC," ECF No. 29), and the law, the Court rules as follows.

/ / /

/ / /

/ / /

---

[2] The Court refers to Jane Doe C.M.S. as Plaintiff, or by her pseudonym, although she has not formally moved for permission to proceed anonymously.  Plaintiff will need to move separately to continue to proceed under a pseudonym.  The motion for leave to do so must be filed within 20 days of entry of this Order.

# BACKGROUND

## I.    Plaintiff's Allegations

Plaintiff is an alleged victim of sex trafficking.  SAC ¶ 10.  Per Plaintiff, between 2013 and 2015 she was controlled by traffickers "through physical violence and force" and was made to "engage in commercial sex acts for [the traffickers'] financial benefit."  *Id.* ¶ 99.  While under the control of her traffickers, "she was repeatedly beaten, drugged, sexually assaulted, and mentally abused."  *Id.*

Plaintiff alleges her traffickers "continuously trafficked her" during this time, "including at hotels throughout California."  *Id.* ¶ 101.  The traffickers followed a "common *modus operandi* and used methods and tactics that followed common patterns among traffickers."  *Id.*  As a result, according to Plaintiff, "there were obvious signs of this trafficking that matched up with 'red flags' that the hotel industry was aware of and that made this trafficking readily detectable to Defendants."  *Id.*

Plaintiff alleges she was "repeatedly trafficked" at ten (10) California hotels during specific time periods: (1) the Anaheim Ramada Inn in February 2014, (2) the Escondido Super 8 from January 2014 through May 2014, (3) the San Diego Wyndham Garden from March 2015 through June 2015, (4) the Temecula La Quinta from October 2014 through March 2015, (5) the San Jose Homewood Suites from February 2014 through September 2014, (6) the Escondido Comfort Inn from January 2014 through March 2014, (7) the Oceanside Rodeway Inn in April 2014, (8) the Escondido Econo Lodge from August 2014 through November 2014, (9) the Escondido Quality Inn from April 2014 through June 2014, and (10) the San Diego Extended Stay America in July 2014 (collectively, the "Subject Hotels").  *Id.* ¶¶ 102–13.

Plaintiff indicates Wyndham Defendants franchised Anaheim Ramada Inn, Escondido Super 8, Temecula La Quinta, and San Diego Wyndham Garden.  *Id.* ¶¶ 17, 25, 30, 41.  Sports Arena was the franchisee that owned the San Diego Wyndham Garden, *id.* ¶¶ 30–34, and OHM was the franchisee that owned the Temecula La Quinta, *id.* ¶¶ 44–45.  Per Plaintiff, Choice franchised the Escondido Comfort Inn, Oceanside Rodeway Inn,

1   Escondido Econo Lodge, and Escondido Quality Inn. *Id.* ¶¶ 54, 61, 68, 76. MVI was the
2   franchisee that owned the Escondido Quality Inn, *id.* ¶¶ 81–82, and Pacific Coast was the
3   franchisee that owned the Oceanside Rodeway Inn, *id.* ¶¶ 66–67. She also alleges Hilton
4   franchised San Jose Homewood Suites, *id.* ¶¶ 46–47, and Apple was the franchisee, *id.*
5   ¶ 48–49. Finally, Plaintiff avers the ESA Defendants "jointly owned" and operated San
6   Diego Stay America. *Id* ¶ 84.

7        Plaintiff alleges traffickers operated at each of the Subject Hotels "with little regard
8   for concealment, due to an implicit understanding between the hotel staff and the
9   traffickers." *Id.* ¶¶ 159, 220, 282, 342. According to Plaintiff, ESA, Wyndham, Choice,
10  and Hilton all knew that sex trafficking was a problem in the hotel industry, *id.* ¶¶ 119,
11  133, and knew about the widespread sex trafficking at their hotels based on news articles
12  and reviews, *id.* ¶¶ 141, 213, 272, 332, 394–95. Plaintiff also alleges hotel reviews and
13  records of law enforcement calls reflect that multiple trafficking victims had been exploited
14  at each of the Subject Hotels, prior to Plaintiff's trafficking, and these victims exhibited
15  "red flags" of trafficking that were observed by hotel staff and management. *Id.* ¶¶ 160,
16  221, 283, 343, 402.

17       Hotel staff and management at each of the Subject Hotels also allegedly observed
18  "obvious signs" of Plaintiff's trafficking when she was trafficked at each Subject Hotel.
19  She alleges the following "obvious signs" of her trafficking were present during each
20  period she was trafficked at each Subject Hotel:

21           a. C.M.S.'s trafficker would sometimes force her to book the
22              room herself. The hotel staff observed her and saw that she
23              was emotional, nervous, and scared.
24           b. The hotel rooms in which she was trafficked were frequently
25              paid for with cash.
26           c. Hotel staff saw C.M.S. arrive and leave with her traffickers.
27              These traffickers escorted C.M.S. around the hotel and it was
28              apparent they were monitoring her and controlling her

movements.

    d.  The "Do Not Disturb" door hanger was used very frequently.

    e.  Housekeeping staff was often prevented from entering the room for regular cleaning, towel exchange[,] and other standard room services. C.M.S.'s traffickers would require staff to provide towels, linens and other supplies at the door without allowing them to enter.

    f.  C.M.S. had many johns every day. These individuals entered and left at unusual hours and were present at the hotel for brief periods of time.

    g.  There was heavy foot traffic in and out of C.M.S.'s room involving men who were not hotel guests. This traffic was visible to hotel staff.

    h.  C.M.S.'s continuous trafficking and the associated physical violence, control, threats, and manipulation her traffickers used had profound effects on her, consistent with "red flags" of trafficking that are well recognized in the hospitality industry. These effects were obvious and apparent to the staff and management of the subject hotels including effects on C.M.S.'s appearance, demeanor, movements throughout the hotels, and her interactions with her traffickers, hotel staff, and others. Observing these effects provided Defendants with notice that C.M.S. was being continually subjected to coercion, control, and exploitation.

    i.  Other obvious signs of trafficking consistent with the modus operandi of her trafficker and which included well-known "red flags" for trafficking in a hotel.

*Id.* ¶¶ 170, 231, 293, 353, 408.

Plaintiff alleges Defendants knew or were willfully blind of her trafficking at the Subject Hotels, and despite this, Defendants continued renting rooms to her traffickers and continued to operate the Subject Hotels in a way that facilitated sex trafficking. *Id.* ¶¶ 180–81, 201, 261, 302–03, 308, 323, 363–64, 369, 384, 415–16.

Based on these and other allegations set forth in her SAC, Plaintiff asserts violations of the Trafficking Victims Protection Reauthorization Act ("TVPRA") against all Defendants. Plaintiff pursues (1) direct beneficiary claims against all Defendants; (2) direct perpetrator claims against Apple, Sports Arena, Pacific Coast Inn, MVI, and OHM (collectively, the "Franchisees" or "Franchisee Defendants"); and (3) indirect beneficiary and perpetrator claims based on vicarious liability theories against Wyndham, Choice, and Hilton (collectively, the "Franchisors" or "Franchisor Defendants") for violations of the TVPRA by their franchisees, including the Franchisee Defendants. Plaintiff also pursues a direct perpetrator claim against the ESA Defendants as well as indirect beneficiary and perpetrator claims based on their vicarious liability for each other's TVPRA violations, due to ESA Defendants' joint operation and common ownership.

## II.    Procedural Background

Plaintiff filed her original Complaint on January 31, 2024, *see* ECF No. 1, and subsequently filed a First Amended Complaint on March 29, 2024, *see* ECF No. 4. The Parties jointly moved to substitute parties on June 17, 2024, and the Court granted Plaintiff leave to file a Second Amended Complaint. *See* ECF No. 28. The SAC was filed the next day and is the operative Complaint.

## LEGAL STANDARD

Rule 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original).

To survive a 12(b)(6) motion, then, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

When reviewing a motion to dismiss under Rule 12(b)(6), the Court applies its "judicial experience and common sense." *Id.* (citation omitted). Further, "a district court must accept as true all facts alleged in the complaint" and "draw all reasonable inferences in favor of the plaintiff." *Wi-LAN Inc. v. LG Elecs., Inc.*, 382 F. Supp. 3d 1012, 1020 (S.D. Cal. 2019) (citing *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014)). Where a complaint does not survive 12(b)(6) review, the Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . could cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## ANALYSIS

The TVPRA makes forced labor and sex trafficking criminal offenses. 18 U.S.C. § 1591; *see also J.C. v. Choice Hotels Int'l, Inc.*, No. 20-cv-00155-WHO, 2020 WL 6318707, at *3 (N.D. Cal. Oct. 28, 2020). "[I]n addition to the criminal prohibition," the TVPRA also "creates civil liability for two categories of defendants: (1) those who have themselves committed a criminal offense under § 1591 of the TVPRA (i.e., perpetrator liability), and (2) those who are not themselves subject to criminal liability but who knowingly benefitted from participation in a venture that they knew or should

have known was committing an offense under § 1591 of the TVPRA (i.e., beneficiary liability)." *B.J. v. G6 Hosp., LLC*, No. 22-cv-03765-MMC, 2023 WL 6120682, at *3 (N.D. Cal. Sept. 18, 2023) (internal citations and quotations omitted).

As noted, in her SAC, Plaintiff asserts both beneficiary and perpetrator theories of liability. The Court will address both theories below.

## I. Plaintiff's Allegations She is a Victim of a TVPRA Violation

First, as a threshold matter, the Court must address whether Plaintiff has plausibly alleged she is a victim of a TVPRA violation. The sufficiency of these allegations is only expressly challenged by Apple, though it is also suggested by ESA. *See* Apple Mem. at 10 ("Plaintiff has not plausibly alleged she was a TVPRA victim at [Apple's hotel]"); *see also* ESA Mem. at 4 (arguing since Plaintiff alleges in her SAC that "she did not know . . . that she was a person trafficked" at the time of the events alleged, she was either "*not* forced or coerced to have commercial sex, or she did not *realize* she was being forced or coerced to have commercial sex until years later" (emphasis in original)).

To invoke the TVPRA, a plaintiff must plausibly allege that she was "a victim of a violation of this chapter." 18 U.S.C. § 1595(a). Section 1591, in turn, requires Plaintiff to establish that she was "harbor[ed]" or "provid[ed]" and "cause[d] . . . to engage in a commercial sex act" by "means of force, threats of force, fraud, [or] coercion." 18 U.S.C. § 1591(a). "A plaintiff plausibly alleges they were a 'victim' of trafficking if their allegations show a defendant '*could be* criminally liable.'" *Doe (S.A.S.) v. ESA P Portfolio LLC*, No. 3:23-cv06038-TMC, 2024 WL 3276417, at *5 (W.D. Wash. July 2, 2024) (quoting *G.G. v. Salesforce. com, Inc.*, 76 F.4th 544, 552 (7th Cir. 2023)) (emphasis in original).

Plaintiff alleges her traffickers used physical violence to make her engage in commercial sex and threatened her when she attempted to refuse. SAC ¶ 99. She also alleges that her traffickers beat her, drugged her, and mentally abused her. *Id.* Moreover, she alleges her traffickers brought her to each of the Subject Hotels "for the express purpose of forcing her to engage in commercial sex for their financial benefit" and that she was

repeatedly trafficked at each of the Subject Hotels. *Id.* ¶¶ 102–14. The Court finds such allegations sufficient to plausibly allege she is a victim of a TVPRA violation. *See Doe (S.A.S.)*, 2024 WL 3276417, at *6 (finding allegations that plaintiff "did not want to" participate in her traffickers' commercial sex operation, but "when she refused they beat her," and when she would try to "leave" they would threaten to murder her, her children, and her grandparents, to be "more than sufficient to show [plaintiff's] trafficking plausibly violated the TVPRA's criminal provision").

To the extent ESA suggests Plaintiff is not a victim under the TVPRA because she lacked knowledge that she was a victim of human trafficking—as that term is defined by law—during the time she was trafficked, the Court is unpersuaded. *See id.* at *12 (rejecting ESA Portfolio LLC's same argument as "ESA cite[d] no authority for the proposition that the victim must be *subjectively* aware that they are being caused to participate in commercial sex through force, fraud, or coercion in order to be 'trafficked.' Indeed, that interpretation could prevent some of the most vulnerable potential victims . . . from establishing the victimhood element.'") (emphasis in original)).

The Court thus proceeds to Plaintiff's beneficiary and perpetrator liability claims.

## II.    Beneficiary Liability Claims

"To state a claim under a section 1595(a) beneficiary theory, [the plaintiff] must allege facts from which it can reasonably [be] inferred that [the defendants] (1) knowingly benefit[ted] financially or by receiving anything of value; (2) from participation in a venture; (3) they knew or should have known has engaged in sex trafficking." *J.C.*, 2020 WL 6318707, at *4 (internal citations and quotations omitted). "A plaintiff may satisfy these elements in one of two ways. Specifically, such plaintiff may show that the defendant's own acts, omissions, and state of mind establish each element, i.e., that such defendant is directly liable under the statute, or such plaintiff may impute to the defendant the acts, omissions, and state of mind of an agent of the defendant, i.e., that the defendant is indirectly, or vicariously, liable under the statute." *B.J.*, 2023 WL 6120682, at *3 (internal citations and quotations omitted).

"While some district courts have analyze[d] these components as three distinct elements (*see J.C.*, 2020 WL 6318707, at *4), others have addressed the second and third elements as if they are a combined, single element." *Doe v. Wyndham Hotels & Resorts*, No. 2:23-CV-01676-DAD-CSK, 2024 WL 3088722, at *4 (E.D. Cal. June 20, 2024) (citing as examples *A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1024–28 (D. Or. 2021) (analyzing whether the defendants "knowingly benefitted" as the first element and whether they "participated in a venture which Defendants knew, or should have known, engaged in sex trafficking" as the second element); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 935–39 (D. Or. 2020) (same); *B.J.*, 2023 WL 6120682, at *4 (internal quotation and citation omitted) ("The third prong of a direct beneficiary liability claim overlaps substantially with the second . . . .")).

Here, Plaintiff proffers two distinct "ventures" that she contends could each, individually, support beneficiary liability.  Plaintiff first alleges that each Defendant took part in a venture where they developed and maintained a continuous business relationship and implicit understanding with sex traffickers at the Subject Hotels, including Plaintiff's traffickers, by renting them rooms and providing them related services despite the fact that each Defendant knew or should have known these traffickers were using the Subject Hotels to engage in sex trafficking violations, including the trafficking of Plaintiff ("Venture 1"). SAC ¶ 427.  Plaintiff also alleges that Defendants participated in a hotel-operating venture through a continuing business relationship involving a common objective of maximizing revenue at the hotels, including gross room revenue, despite actual or constructive knowledge that widespread sex trafficking occurred at each of the hotels, including the trafficking of Plaintiff ("Venture 2").  *Id.* at ¶ 428.

As in *Doe,* the allegations set forth in Plaintiff's SAC present significant overlap between the second and third elements, particularly since her description of the ventures that Defendants allegedly participated in involve their knowledge of her trafficking. 2024 WL 3088722, at *4.  Persuaded by the reasoning in *Doe*, the Court will analyze Defendants' "participation in a venture and knowledge that the venture was engaged in sex

trafficking as one combined element," given, as in *Doe*, Plaintiff's "allegations in this case that the ventures themselves involved defendant knowledge." *Id.*

Where the Court discusses the allegations against grouped Defendants, such as the Franchisor or Franchisee Defendants, it is based on the Court's consideration of separate allegations similar in nature and similar arguments proffered by each of the Defendants in their respective Motions. Accordingly, "[c]ombining the analysis of the issues is solely for the purpose of brevity. There is no confusion by the Court that Plaintiff must separately plead and prove her case against [each Defendant]." *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-00656-BLF, 2020 WL 4368214, at * 4 (N.D. Cal. July 30, 2020).

The Court will first discuss Plaintiff's direct beneficiary claims against all Defendants, then proceed to Plaintiff's indirect beneficiary claims, based on vicarious liability, as to ESA, Wyndham, Choice, and Hilton.

### A.   *Direct Beneficiary Claims*

#### 1.   *Knowingly Benefit*

Only Choice substantively argues that Plaintiff has not plausibly alleged that it knowingly benefitted from her alleged trafficking. *See* Choice Mem. at 19–20. However, the Court notes MVI and OHM each disputed this element, albeit in a conclusory fashion.[3] *See* MVI MTD at 14; OHM MTD at 14. The remaining Defendants do not dispute this element; thus, the Court focuses its analysis as to allegations regarding Choice, MVI, and OHM.

---

[3] The Court notes Plaintiff did not file an opposition to OHM's Motion to Dismiss, *see generally* Docket, and under certain circumstances, a district court may properly grant a motion to dismiss for failure to respond to a motion. *See Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995) (per curiam); *see also* S.D. Cal. Civ. LR 7.1(f)(3)(c). In doing so, however, the Court must weigh several factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases of [sic] their merits; and (5) the availability of less drastic sanctions." *Id.* at 53 (quoting *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986)). Here, in light of Plaintiff filing Oppositions to all other Motions to Dismiss in this action, one of which is nearly identical to OHM's instant Motion, *see* MVI MTD, the Court does not find dismissal on these grounds appropriate. Instead, the Court will reach the merits and evaluate whether OHM has shown Plaintiff's SAC fails to state a claim against it.

"To satisfy the first element, [the plaintiff] must plausibly allege the [defendants] knowingly benefit[ted] financially or by receiving anything of value from the trafficking venture."  *J.C.*, 2020 WL 6318707, at *4 (citation omitted).  "[T]he rental of a room . . . constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element."  *B.J. v. G6 Hosp.,* LLC, No. 22-cv-03765-MMC, 2023 WL 3569979, at *4 (N.D. Cal. May 19, 2023) (citation omitted).  Plaintiff alleges Choice profited from renting rooms at the hotels where she was trafficked.  SAC ¶ 371.  Plaintiff also alleges OHM and MVI "profited from every room rented to a trafficker or for use in trafficking at its respective hotel, both from the room fee and from fees for other hotel services."  *Id.* ¶¶ 249, 372.  The Court finds these allegations sufficient to satisfy the first element of her beneficiary claim brought against Choice, OHM, and MVI.

Choice urges the Court to require a "causal relationship between the affirmative conduct furthering the sex-trafficking venture and receipt of a benefit, with . . . constructive knowledge of that causal relationship."  Choice Mem. at 18 (quoting *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019)).  Plaintiff, in turn, points out that *Geiss* relied on criminal case law, an approach that has been rejected by many courts.  Pl.'s Choice Opp'n at 7.  For instance, the Seventh Circuit explained "*Geiss* is an outlier whose gloss on 'knowingly benefits' has been rejected by virtually every other court."  *G.G.*, 76 F.4th at 565 n.20 (collecting cases).  In Reply, Choice insists there still must be "some link between the participation and the financial benefit."  ECF No. 124 at 8.

The Court is persuaded by "the vast majority of district courts" that have found allegations similar to Plaintiff's sufficient to meet this element.  *Doe v. Wyndham Hotels & Resorts*, No. 2:23-CV-01676-DAD-CSK, 2025 WL 85831, at *11 (E.D. Cal. Jan. 7, 2025); *see e.g.*, *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 965 (S.D. Ohio 2019) ("[T]he rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the [section] 1595(a) standard."); *A.B. v. Marriott Int'l*, 455 F. Supp. 3d 171, 191 (E.D. Pa. 2020) (same); *J.C.*, 2020 WL 6318707, at *4 (same); *H.H. v. G6 Hosp., LLC*, 2:19-CV-755, 2019 WL 6682152, at *2 (S.D. Ohio

24-CV-217 JLS (AHG)

1    Dec. 6, 2019) (same); *Doe S.W. v. Lorain-Elyria Motel, Inc.*, No. 2:19-CV-1194,

2    2020 WL 1244192, at *5 (S.D. Ohio Mar. 16, 2020) (same); *A.C. v. Red Roof Inns, Inc.*,

3    No. 2:19-cv-4965, 2020 WL 3256261, at *4 (S.D. Ohio Jun. 16, 2020) (same); *S. Y. v.*

4    *Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1257 (M.D. Fla. 2020) (same); *A.B.*,

5    484 F. Supp. 3d at 936 (same).

6                    2.      *Participation in a Venture Defendants Knew or Should Have Known*

7                            *Engaged in Sex Trafficking*

8            All Defendants argue, in their respective Motions, that Plaintiff failed to plausibly

9    allege they participated in a venture or that they knew or should have known the venture

10   engaged in trafficking Plaintiff.

11           "The phrase 'participation in a venture' requires that the [plaintiff] allege that [the

12   defendants] took part in a common undertaking or enterprise involving risk and potential

13   profit." *B.J.*, 2023 WL 3569979, at *4 (citations omitted).  The allegations must "connect

14   the dots between [the p]laintiff's alleged sex trafficking and these [d]efendants." *B.M.*,

15   2020 WL 4368214, at *5; *see also Doe v. Wyndham Hotels and Resort*,

16   No. 8:23-cv-01554-JVS-JDE, 2024 WL 2104596, at *3 (C.D. Cal. Feb. 28, 2024).

17   "[T]here are two ways in which a plaintiff can connect the dots between the plaintiff's

18   experience as a victim of sex trafficking and the specific defendant in the lawsuit for

19   purpose of pleading the second prong of a TVPRA claim: by alleging a direct association

20   between the defendant hotel and the plaintiff's trafficker, or by showing a continuous

21   business relationship between a defendant hotel and a sex trafficker where the defendant

22   rented rooms to people it knew or should have known were engaged in sex trafficking."

23   *B.J.*, 2023 WL 6120682, at *4 (citation omitted); *see also B.J.*, 2023 WL 3569979, at *4

24   (noting that a plaintiff can allege a defendant's participation in a venture through

25   allegations that show "a continuous business relationship between the trafficker and the

26   defendant such that it would appear that the trafficker and the defendant have established

27   a pattern of conduct or could be said to have a tacit agreement").

28   / / /

a.     Franchisee Defendants

The Franchisee Defendants each argue Plaintiff has failed to sufficiently plead the Franchisees participated in a venture and knew or should have known the venture was engaged in sex trafficking Plaintiff.

Apple first argues Plaintiff must show it participated in a venture with "*actual knowledge* of the common purpose" with the traffickers.  Apple Mem. at 13 (emphasis in original).  Apple urges the Court not to follow the many cases holding that a plaintiff may state a claim by showing a continuous business relationship between a defendant hotel and a sex trafficker where the defendant rented rooms to people it knew or should have known were engaged in sex trafficking.  *Id.* at 16.  According to Apple, this line of case law is based on *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019), and "essentially impose[s] a strict liability standard on hotels for participant claims," which has been "uncritically adopted" by some district courts.  Apple Mem. at 16–17.

The Court is not persuaded by Defendant's characterization that courts have blindly adopted the reasoning of *M.A.*  Rather, the Court notes many courts have analyzed *M.A.*, and have agreed with its articulation of the constructive notice requirement.  *J.B. v. G6 Hosp., LLC*, 19-CV-07848, 2020 WL 4901196, at *8–9 (N.D. Cal. Aug. 20, 2020) (analyzing and agreeing with *M.A.*'s interpretation of § 1595 (a)); *A.B.*, 455 F. Supp. 3d at 192 (holding that *M.A.*'s approach to "participation in a venture" element "best conforms to Congress's intent in amending the Act to include a civil remedy provision"); *Doe (S.A.S.)*, 2024 WL 3276417, at *7 n.5 (noting *M.A.* has "recognized persuasiveness").

Instead, this Court is persuaded by the many courts in the Ninth Circuit and throughout the country that have applied beneficiary liability to hotel defendants who rent rooms to traffickers despite actual or constructive knowledge of the trafficking.  *B.M.*, 2020 WL 4368214, at *3 (holding that a plaintiff is "not required to allege an overt act in furtherance of or actual knowledge of a sex trafficking venture in order to sufficiently plead her section 1595 civil liability claim"); *A.B. v. Shilo Inn, Salem, LLC*, No. 3:23-CV-00388-IM, 2023 WL 5237714, at *5 (D. Or. Aug. 15, 2023) ("To satisfy the

'participation' element of a civil TVPRA claim, Plaintiff need not allege that Defendant had actual knowledge of a venture engaged in trafficking by 'force, threats of force, fraud, [or] coercion' or that Defendant performed an overt act in furtherance of the venture."); *Doe*, 2025 WL 85831, at *6 (explaining that "in order to connect the dots between plaintiff's experience as a victim of sex trafficking and [the defendant hotel]," a plaintiff need only allege "a continuous business relationship between [the defendant hotel] and sex traffickers where [the defendant] rented rooms to people it knew or should have known were engaged in sex trafficking" (citing *B.J.*, 2023 WL 6120682, at *4)); *Doe v. Wyndham Hotels & Resorts, Inc.*, No. 2:24-CV-00109-DAE, 2024 WL 4224915, at *9 (W.D. Tex. Aug. 30, 2024) (explaining that "one way to establish a Section 1595(a) venture is to show a continuous business relationship between a defendant hotel and sex traffickers in which the defendants rented rooms to people it knew or should have known were engaged in sex trafficking").

Accordingly, the Court analyzes whether Plaintiff plausibly alleges the Franchisees had a continuous business relationship with sex traffickers where the Franchisees rented rooms to people it knew or should have known were engaged in Plaintiff's trafficking.

Plaintiff alleges that the Franchisee Defendants developed continuous business relationships and implicit understandings with sex traffickers at their respective hotels, including Plaintiff's traffickers. SAC ¶¶ 190, 250, 312, 373. According to Plaintiff, the population of traffickers, including hers, were familiar to the staff at the Franchisees' hotels. *Id.* ¶¶ 196, 256, 318, 379. The traffickers reduced their operating burden because they did not need to make significant efforts to conceal their activities from the staff at the hotels but, instead, freely made requests that would facilitate their trafficking activities without concern for detection or interference by the staff. *Id.* ¶¶ 196, 256, 318, 379. Per Plaintiff, the Franchisee Defendants allowed traffickers to take steps that would minimize their traceability to law enforcement, such as accepting cash payments and not requiring identification from appropriate parties; and Defendants provided additional services to traffickers—including Plaintiff's traffickers—including but not limited to, internet access,

excessive towels, and extra housekeeping services to clean the activities of the trafficking venture once the traffickers vacated the rooms.  *Id.* ¶¶ 196, 256, 318, 379.  Plaintiff also alleged the staff at the Subject Hotels accommodated the traffickers' requests for preferred locations, which facilitated their illegal activities.  *Id.* ¶¶ 196, 256, 318, 379.

And she asserts the Franchisee Defendants knew or should have known about her trafficking, as she indicates her traffickers followed a "common *modus operandi* and used methods and tactics that followed common patterns among traffickers," resulting in "obvious signs of this trafficking that matched up with 'red flags' the hotel industry was aware of," which made her trafficking "readily detectable to Defendants."  *Id.* ¶ 101.  She alleges the following "obvious signs" of her trafficking were present during each period she was trafficked at each of the Franchisees' hotels:

      a. C.M.S's trafficker would sometimes force her to book the room herself. The hotel staff observed her and saw that she was emotional, nervous, and scared.

      b. The hotel rooms in which she was trafficked were frequently paid for with cash.

      c. Hotel staff saw C.M.S. arrive and leave with her traffickers. These traffickers escorted C.M.S. around the hotel and it was apparent they were monitoring her and controlling her movements.

      d. The "Do Not Disturb" door hanger was used very frequently.

      e. Housekeeping staff was often prevented from entering the room for regular cleaning, towel exchange[,] and other standard room services. C.M.S.'s traffickers would require staff to provide towels, linens and other supplies at the door without allowing them to enter.

      f. C.M.S. had many johns every day. These individuals entered and left at unusual hours and were present at the hotel for brief

periods of time.

g.  There was heavy foot traffic in and out of C.M.S.'s room involving men who were not hotel guests. This traffic was visible to hotel staff.

h.  C.M.S.'s continuous trafficking and the associated physical violence, control, threats, and manipulation her traffickers used had profound effects on her, consistent with "red flags" of trafficking that are well recognized in the hospitality industry. These effects were obvious and apparent to the staff and management of the subject hotels including effects on C.M.S.'s appearance, demeanor, movements throughout the hotels, and her interactions with her traffickers, hotel staff, and others. Observing these effects provided Defendants with notice that C.M.S. was being continually subjected to coercion, control, and exploitation

i.  Other obvious signs of trafficking consistent with the modus operandi of her trafficker and which included well-known "red flags" for trafficking in a hotel.

*Id.* ¶¶ 170, 231, 293, 353.

The Court finds these factual allegations support the reasonable inference that there was an ongoing business relationship between Plaintiff's traffickers and Franchisee Defendants such that, when Plaintiff was trafficked at the Subject Hotels, hotel staff rented a room to her traffickers with at least constructive knowledge that they were engaged in sex trafficking.  *B.J.*, 2023 WL 6120682, at *4 (citation omitted).

Apple, OHM, Pacific Coast, and MVI argue Plaintiff's allegations are insufficient to show the Franchisees participated in a venture they knew or should have known trafficked Plaintiff because her allegations of "red flags" observed by hotel staff at the Subject Hotels are equally consistent with commercial sex activity.  OHM MTD at 10;

MVI MTD at 10 n.2; Apple Mem. at 19; Pacific Coast Mem. at 18.  These Franchisees cite

cases where courts have rejected beneficiary claims because the plaintiff's allegations did

not "allow courts to infer that motel or hotel employees should have known that human

trafficking was occurring, as opposed to other criminal conduct, such as prostitution."  *J.B.*,

2020 WL 4901196, at *11; *see also B.J.*, 2023 WL 3569979, at *6; *A.B.*, 484 F. Supp. 3d

at 941.

While some of Plaintiff's allegations could also reflect commercial sex activity

generally, the Court finds here, considering the totality of Plaintiff's allegations, she has

sufficiently pled hotel staff witnessed signs of commercial sex activity "by force, threats

of force, fraud, [or] coercion."  18 U.S.C. § 1591(a).  For instance, Plaintiff alleges that

hotel staff observed her at check-in where she appeared "emotional, nervous, and scared."

SAC ¶¶ 170, 231, 293, 353.  And hotel staff saw Plaintiff's traffickers "escort" her around

the hotel and it was apparent that these traffickers "were monitoring [Plaintiff] and

controlling her movements."  *Id.*  Further, Plaintiff alleges her traffickers' physical

violence, control, threats, and manipulation caused obvious effects on her appearance,

demeanor, movements throughout the hotels, and interactions with her traffickers and hotel

staff that were apparent to staff and management of the Franchisees' hotels.  *Id.*

These allegations, along with others, including, but not limited to, allegations that

she was repeatedly trafficked and hotel rooms were frequently paid with cash, there was

heavy foot traffic visible to hotel staff of men in and out of her room who were not guests,

housekeeping was often prevented from entering the room and Plaintiff's traffickers would

require staff to provide towels, linens, and other supplies at the door without allowing them

to enter, are sufficient to state a claim for beneficiary liability against the Franchisees.  *See*

*Doe (G.N.C.) v. Uniquest Hosp., LLC*, No. 23-cv-7980 (PKC), 2024 WL 4149251, at *3

(S.D.N.Y. Sept. 11, 2024) (finding that in totality, the plaintiff's allegations that she

"stayed for extended periods," that housekeeping staff were "prevented from entering the

room," and that her trafficker was often present with her at check-in and "limited her ability

to communicate with hotel staff, such that it was obvious and apparent she was being

subjected to coercion and control" were sufficient to state a claim for beneficiary liability against the franchisee defendant); *see also Doe (S.C.) v. Sheraton, LLC*, No. 23CV00451 KG/JMR, 2024 WL 1329422, at *5 (D.N.M. Mar. 28, 2024) (finding that, "considering the totality of observations," such as "bar staff overhearing conversations [with potential customers about services], front desk staff observing [the plaintiff's] nervous demeanor and cash payments, housekeeping observing the Do Not Disturb sign and providing additional linens, and general knowledge of sex trafficking in the industry," the hotel staff "should have known of [the plaintiff's] trafficking had they used reasonable care or diligence").

Next, Pacific Coast, Sports Arena, MVI, and OHM each argue Plaintiff's SAC is insufficient because Plaintiff fails to provide specific factual content tying each of them to her trafficking, and contend her allegations are identical in structure and fashion to each Defendant.  MVI MTD at 6–8; OHM MTD at 6–8; Sports Arena Mem. at 6–7, 9; Pacific Coast Mem. at 19.  Plaintiff responds that her allegations referencing multiple Defendants do not create ambiguity as it is apparent these Defendants are part of the Franchisees alleged to have engaged in observing the alleged red flags, at their respective hotels.  Pl.'s MVI Opp'n at 10–11; Pl.'s Sports Arena Opp'n at 10–11; Pl.'s Pacific Coast Opp'n at 11–12.  She further argues the overlap in the allegations is justified because these Defendants "operate within the same industry, are being sued under the same statute, and are involved in similar transactions: specifically, renting hotel rooms to sex traffickers and managing hotels in a manner that facilitates traffickers."  Pl.'s MVI Opp'n at 11; *see also* Pl.'s Sports Arena Opp'n at 10–11; Pl.'s Pacific Coast Opp'n at 11–12.  Plaintiff contends that sex trafficking often follows established patterns, and the SAC provides this context, alleging that her traffickers "followed a common *modus operandi* and used methods and tactics that followed common patterns among traffickers."  Pl.'s MVI Opp'n at 11; *see also* Pl.'s Sports Arena Opp'n at 11; Pl.'s Pacific Coast Opp'n at 12.

The Court agrees with Plaintiff and finds the SAC contains sufficient facts to meet the Rule 8 notice requirement for the purposes of surviving a motion to dismiss.

Ultimately, "while the [S]AC is not a model for specificity, it does include factual allegations to each defendant and 'identifies the specific hotel locations where she was allegedly trafficked and ties those locations to each [d]efendant." *J.C.*, 2020 WL 6318707, at *11 (citing *B.M.*, 2020 WL 4368214, at *7) (denying defendants' motions to dismiss TVPRA claim on the basis that plaintiff had failed to plead specific facts about the hotel locations); *see also M.A.*, 425 F. Supp. 3d at 973 ("While Plaintiff has made similar allegations against the other Defendants, this is not a situation where defendants '[were] not even mentioned in the body of the complaint' and '[t]he only allegations that could plausibly apply [t]o [t]hem are allegations directed at all . . . Defendants.'"); *Doe v. Best W. Int'l, Inc.*, No. 2:23-CV-3459, 2024 WL 3759761, at *5 (S.D. Ohio Aug. 12, 2024) ("[I]t is of no moment that the details of the 'red flags' at ESA and at the other hotel where she was trafficked . . . are similar. . . . This was the same trafficker and the same victim, within the same period of time; that he had a *modus operandi* is unsurprising.").

Finally, some of the Franchisees suggest they must have "actually *engaged* in some aspect of the sex trafficking" to be liable.  MVI MTD at 12 (emphasis in original) (quoting *Does 1-6 v. Reddit*, 51 F.4th 1137, 1145 (9th Cir. 2022)); *see also* OHM MTD at 11. However, these Franchisees' reliance on the Ninth Circuit's decision in *Reddit* is misplaced.  There, the court evaluated what is required to "hold a defendant *criminally liable* as a beneficiary of sex trafficking," *Reddit*, 51 F.4th at 1145 (emphasis added), and clarified that this question involves a standard "higher" than the one applicable to ordinary beneficiary liability, *id*. at 1141.  Because of the effect of Section 230 of the Communications Decency Act, 47 U.S.C. § 230 (c)(1), which created immunity for certain online activities, the court found the plaintiff had to allege the defendant-website's own conduct violated the criminal trafficking statute, Section 1591.  *See also Doe v. Grindr*, No. 24-cv-475, 2025 WL 517817, at *4 (9th Cir. Feb. 18, 2025) (explaining that in order to satisfy the exception to Section 230(c), enacted in the Allow States and Victims to Fight Online Sex Trafficking Act of 2018, 47 U.S.C. § 230(e)(5), a plaintiff bringing an action under Section 1595, must allege the defendant's "own conduct" violated the criminal

trafficking statute, Section 1591 (citing *Reddit*, 51 F.4th at 1141)).  As Defendants do not argue, nor could they, that Section 230 applies to the instant action involving liability of hotels, Plaintiff does not have to meet the higher standard of beneficiary liability under the criminal sex trafficking statute to state a Section 1595 claim here.  *See B.D.G. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-3202, 2023 WL 5935646, at * 5 (S.D. Ohio Sept. 12, 2023) (rejecting Choice's suggestion the court "follow the lead" of the Ninth Circuit, explaining that "the Ninth Circuit analyzed a beneficiary claim pursuant to § 1595 within the context of whether Reddit could receive immunity for suit pursuant to 47 U.S.C. § 230(e)(5)(A)" and "[t]hat immunity statute for websites, however, is not at issue" as the case involved hotel franchisor liability).

And Plaintiff's allegations amount to more than a failure to affirmatively prevent and police sex trafficking, as argued by the Franchisees.  Apple Mem. at 12 n.4; Sports Arena at 8; MVI MTD at 11; OHM MTD at 11.  For instance, Plaintiff also alleges the Franchisee Defendants facilitated the sex trafficking activity at the Subject Hotels, including the trafficking of Plaintiff, by developing "familiar relationships with traffickers," "accommodating specific requests such as requests regarding preferred room locations," and creating an "implicit understanding" that enabled the traffickers "to operate freely without expending significant resources on concealment, as they had found venues where they could conduct their operations without disruption."  SAC ¶¶ 196, 256; 318; 364.  Such allegations, in light the hotel staff's observation of "obvious signs" and "red flags" of Plaintiff's trafficking, are also sufficient to plead participation in a venture they knew or should have known was engaged in sex trafficking.  *Doe*, 2024 WL 4224915, at *9 (noting that "participation in a hotel-operating venture qualifies as participation in a venture under Section 1595(a) when the hotel operates in a manner that facilitates sex trafficking" and finding that the plaintiff had stated a claim for beneficiary liability against the franchisee defendant where she alleged "that the traffickers developed a relationship with employees at the hotel" and "that the hotel employees accommodated specific requests made by the traffickers"); *A.D. v. Best W. Int'l, Inc.*, No. 2:22-cv-651-JES-NPM,

2023 WL 5510064, at *4 (M.D. Fla. Aug. 25, 2023) ("The fact that Trafficker 2 spent all day loitering around the parking lot without consequences and that a 'procession of men' who were not registered guests were openly going into a room support[ed] participation in the venture.").

Accordingly, the Court finds Plaintiff has adequately alleged beneficiary claims against the Franchisee Defendants.  Thus, the Court **DENIES** Apple, Sports Arena, OHM, MVI, and Pacific Coast Inn's respective Motions to Dismiss on this ground.

> b.    ESA

ESA raises similar arguments to those addressed above, contending that Plaintiff has not sufficiently alleged ESA possessed constructive knowledge Plaintiff was a trafficking victim or that ESA participated in a venture.  ESA Mem. at 3.  First, ESA argues since Plaintiff alleges in her SAC that she did not know "she was a person trafficked" at the time of the events alleged, she was either "*not* forced or coerced to have commercial sex, or she did not *realize* she was being forced or coerced to have commercial sex until years later." *Id.* at 4. (emphasis in original).  As discussed above, the Court is not persuaded by ESA's suggestion that Plaintiff cannot plead she is a victim under the TVPRA because she lacked knowledge that she was a victim of human trafficking—as that term is defined by law— during the time she was trafficked.  *See Doe (S.A.S.)*, 2024 WL 3276417, at *12.

ESA also argues that if Plaintiff lacked knowledge that she was a victim of human trafficking at the time she was trafficked, then "there was no way for ESA to know she was being forced or coerced, because if Plaintiff subjectively believed that she was willingly engaging in commercial sex, she would not present as a 'victim' to ESA staff who allegedly observed her."  ESA Mem.  at 5.  The Court again disagrees.  As the court explained in *Doe (S.A.S.)*, ESA's argument asks the Court "to draw an unnecessary inference in ESA's favor."  2024 WL 3276417, at *12.  Moreover, ESA "cites no authority for the argument that evidence of the victim's own mindset is relevant to the *defendant's* knowledge or constructive knowledge of her alleged trafficking." *Id.* (emphasis in original).

Here, Plaintiff alleges ESA staff, including management-level employees, observed

22

or were made aware of the same "obvious signs" and "red flags" identified above of Plaintiff's trafficking, SAC ¶¶ 408–09, and that she was trafficked repeatedly at San Diego Extended Stay America, *id* ¶ 113.  Plaintiff also alleges, as above, that traffickers, including hers, repeatedly chose the San Diego Extended Stay America for their sex trafficking activity because of ESA's policies and practices, *id.* ¶ 400, and ESA facilitated activities of these traffickers "by creating an environment where they did not need to incur the burden of taking significant steps to conceal their activities, but instead, could operate without concern for detection or interference by the hotel staff," *id* ¶ 416.  Such allegations, as previously explained, support a reasonable inference that there was an ongoing business relationship between Plaintiff's traffickers and the ESA Defendants, such that, when Plaintiff was trafficked at their hotel, ESA staff rented a room to her traffickers with at least constructive knowledge they were engaged in trafficking.  *See Doe (G.N.C.)*, 2024 WL 4149251, at *3.

The Court finds Plaintiff has adequately alleged beneficiary claims against the ESA Defendants and **DENIES** ESA's Motion to Dismiss on this ground.

c.    Franchisor Defendants

The Court next addresses whether Plaintiff plausibly alleges the Franchisors participated in a venture they knew or should have known trafficked Plaintiff.

Wyndham and Choice argue that Plaintiff's SAC lacks well-pled allegations that they participated in a venture or that they knew or should have known the venture was engaged in sex trafficking.  Wyndham Mem. at 7–16; Choice MTD at 6–18.  Hilton joined its franchisee Apple's Motion, which as discussed above, challenges whether Plaintiff adequately alleged participation in a venture and whether Apple or Hilton knew or should have known Plaintiff was being trafficked for the purposes of a direct beneficiary liability claim.  Hilton Joinder at 1.  Hilton "adopts the positions and arguments set forth in Apple's Motion as though set forth fully herein," but also contends "these arguments apply with even greater force as to Hilton, which never owned, operated, or staffed the San Jose Homewood Suites."  *Id*.  Hilton emphasizes that "courts are more hesitant to permit

TVPRA claims to proceed against franchisors like Hilton[.]" *Id*. The Court finds it appropriate, in light of the overlapping arguments and allegations, to evaluate together whether Plaintiff has sufficiently alleged Wyndham, Choice, and Hilton, as franchisors, participated in a venture they knew or should have known trafficked Plaintiff.

Again, to successfully state a direct beneficiary liability claim against the Franchisors, Plaintiff must allege facts supporting that the Franchisors, "at the very least, rented rooms to people they should have known were engaging in her sex trafficking." *Doe*, 2025 WL 85831, at *7 (quoting *J.C.*, 2020 WL 6318707, at *4).

Plaintiff alleges traffickers, including her traffickers, repeatedly chose to use each of the Subject Hotels franchised by the Franchisors for their sex-trafficking activity. SAC ¶¶ 157, 218, 280, 340. She alleges the Subject Hotels have a population of traffickers who were known to hotel staff and whose activities followed recognized patterns of trafficking that were, at all relevant times, known in the hotel industry and known to the Franchisors and franchisees of the Subject Hotels, including the Franchisee Defendants. *Id.* ¶¶ 158, 219, 281, 341. Plaintiff alleges traffickers, including hers, operated at the Subject Hotels with little regard for concealment, due to an implicit understanding between the hotel staff and traffickers. *Id.* ¶¶ 159, 220, 282, 342. She further alleges while she was repeatedly trafficked at each Subject Hotel, hotel staff at each Subject Hotel observed obvious behaviors and facts consistent with sex trafficking. *Id.* ¶¶ 170, 231, 293, 353. Per Plaintiff, the Franchisor Defendants required hotel staff and franchisees to report suspected criminal activity, including sex trafficking, to the Franchisors. *Id.* ¶¶ 165, 226, 288, 348. She alleges because "red flags" and signs of widespread trafficking were so prevalent and obvious at each of the Subject Hotels, hotel staff, management, and franchisees, including the Franchisee Defendants, were required to, and did make numerous reports to the Franchisors about indicators of sex trafficking activity prior to the time Plaintiff was trafficked. *Id.* ¶¶ 166–67, 227–228; 289–90, 349–50. Moreover, the Franchisors knew or should have known about the trafficking of Plaintiff because the signs of her trafficking "were sufficiently obvious and numerous that the [franchisees, including the Franchisee

Defendants] were obligated to, and upon information and belief did, report the suspected trafficking at their respective hotels to [the Franchisors]." *Id.* ¶¶ 174, 235, 297, 357.

Additionally, Plaintiff alleges that the Franchisors should have known about her traffickers' trafficking through their "extensive tools" used to "monitor and supervise" the Subject Hotels including, but not limited to, conducting regular inspections, employing field agents to work with hotels on trafficking issues, reviewing customer surveys and complaints, maintaining access to surveillance footage, and retaining or monitoring data about guests and/or operations. *Id.* ¶¶ 165, 288, 348.

The Wyndham Defendants argue that Plaintiff cannot allege they had constructive knowledge they were participating in a venture that trafficked Plaintiff or that they had a continuous business relationship with her traffickers because Plaintiff relies on "conclusory allegations purely based 'upon information and belief' that [their franchisees] 'did report the suspected trafficking' of Plaintiff to the Wyndham Defendants." Wyndham Mem. at 15. Plaintiff responds that "making these reporting allegations on information and belief" is a recognized appropriate use of information-and-belief pleading. Pl.'s Wyndham Opp'n at 14.

The Court agrees with Plaintiff. "[T]he Ninth Circuit has held that the *Iqbal/Twombly* plausibility standard does not prevent a plaintiff from pleading facts alleged upon information and belief." *Doe*, 2025 WL 85831, at *8 (citing *Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017)). An allegation made on information and belief is sufficient "where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Id.* (quoting *Park*, 851 F.3d at 928). Further, facts about "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

The Court finds *Doe*, where the court recently rejected a similar argument by Wyndham brand defendants, instructive. 2025 WL 85831, at *8. There, the court noted Plaintiff's allegation "that upon information and belief [the franchisee defendant] reported the activities of Plaintiff's traffickers to the Wyndham brand defendants prior to her being

trafficked appear[ed] to be based on plaintiff's understanding of internal policies and procedures that required [the franchisee defendant] and hotel staff to report observation of such activities." *Id.*   And the court found, "the facts underlying the Wyndham brand defendants' policies[,] procedures[,] and the state of mind of [the franchisee defendant's] staff who observed plaintiff's traffickers are peculiarly within the control of those defendants." *Id.* (citing *S.C. v. Hilton Franchise Holding LLC*, No. 2:23-cv-02037-APG-DJA, 2024 WL 4773981, at *3 (D. Nev. Nov. 12, 2024) ("Most of the facts S.C. alleges on information and belief go to either internal training, policies, and procedures of the hospitality defendants, which are peculiarly within those defendants' control, or involve allegations about the state of mind of the employees who observed S.C. and her traffickers' behavior at the Hampton Inn. I therefore consider these allegations in determining whether S.C. has plausibly stated her claims.")).   This Court likewise considers Plaintiff's allegations based on information and belief. *See J.C.*, 2020 WL 6318707, at *6 (accepting the plaintiff's allegations on information and belief, finding that the "human trafficking policies and trainings implemented by each of the defendants . . . make it plausible that local hotel staff, pursuant to the guidance provided in such policies and trainings, reported to [the franchisor defendant] incidents involving [the plaintiff]").

Next, Wyndham and Choice also argue Plaintiff's allegations are insufficient as they amount to an argument these Defendants are liable for a failure to detect and prevent trafficking.[4]  Wyndham Mem. at 11–12; Choice Mem. at 9–12.  Although these Defendants are correct that the mere failure to prevent sex trafficking is not sufficient to show

---

[4] The Court notes Choice also relies on *Reddit* to argue Plaintiff must allege Choice "actually *engaged* in some aspect of the sex trafficking." Choice Mem. at 7 (emphasis in original) (citing *Reddit*, 51 F.4th at 1145).  As explained above with respect to the Franchisees, the Court does not find Choice's reliance on *Reddit* persuasive in light of the different standard applied in that case due to the immunity created by Section 230 for certain online activities.  *See B.D.G.*, 2023 WL 5935646, at * 5 (rejecting Choice's suggestion the court "follow the lead" of the Ninth Circuit, explaining that "the Ninth Circuit analyzed a beneficiary claim pursuant to § 1595 within the context of whether Reddit could receive immunity for suit pursuant to 47 U.S.C. § 230(e)(5)(A)" and "[t]hat immunity statute for websites, however, is not at issue" as the case involved hotel franchisor liability).

beneficiary liability, Plaintiff does not claim the Franchisors had an obligation to affirmatively stop all trafficking. *See e.g.*, *B.M.*, 2020 WL 4368214, at *7 ("To be clear, the Court does not read section 1595 of TVPRA [as] requiring hotels or their franchisors to affirmatively stop sex trafficking."). Rather, Plaintiff alleges that a venture resulted when the Franchisors and their franchisees, including the Franchisee Defendants, continued renting rooms to Plaintiff's traffickers and created an environment that facilitated their sex trafficking despite obvious signs of that activity. SAC ¶¶ 193–94, 253–254, 315–16; 376–78. As discussed above, Plaintiff alleges hotel employees witnessed signs of her traffickers' activities, were required to report instances of suspected trafficking to the Franchisors and did make a report to the Franchisors about Plaintiff's trafficking. *Id.* ¶¶ 165–67, 173–74, 234–35, 288–90, 296–97, 348–50.

Plaintiff also alleges the Franchisors participated in the venture despite receiving that report, in that they "played a primary role in renting rooms" at each of the Subject Hotels and "were directly involved in aspects of hotel operations related to sex trafficking." *Id.* ¶¶ 194, 316, 377. The Franchisors purportedly controlled and oversaw "all details of the guest reservation, check-in, and payment processes," requiring the franchisees to use a central reservation system and various software systems that the Franchisors operated and controlled to book rooms, check guests into rooms, process payments, manage the property, and collect and manage data. *Id.* ¶¶ 183, 243, 305, 366. Wyndham also "exercise[ed] control over the price of rooms," *id.* ¶ 183, Choice "controlled the room rates offered to each guest," *id.* ¶ 366, and Hilton "set[] room rates, required discounts, mandatory fees, and rewards programs," *id.* ¶ 305. Thus, to the extent the Franchisors also contend Plaintiff has not sufficiently alleged a link between them and Plaintiff's traffickers, Choice Mem. at 8–9; Wyndham Mem. at 10–11, the Court disagrees. Rather, as in *Doe*, the Court finds these factual allegations "support [Plaintiff's] contention that [the Franchisors], by controlling booking and payments, are the defendants that directly rented rooms to her traffickers." *Doe*, 2025 WL 85831, at *9 (citing *J.M. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-00672-KJM-JDP, 2023 WL 3456619, at *4 (E.D. Cal. May 15, 2023)

24-CV-217 JLS (AHG)

(finding that the plaintiff had stated a direct beneficiary liability claim against the franchisor hotel, highlighting the plaintiff's allegation that the defendant, "in controlling the booking and payment processing, was the entity directly renting rooms to plaintiff's trafficker")).

And given Plaintiff's plausible allegation that the Franchisors had been previously notified of her traffickers' trafficking activities, Plaintiff has sufficiently alleged a continuous business relationship between the traffickers and the Franchisors such "that it would appear that the traffickers and the [Franchisors] had established a pattern of conduct or could be said to have had a tacit agreement." *Doe*, 2025 WL 85831, at *9 (denying Wyndham brand defendants' motion to dismiss where plaintiff alleged defendants controlled the booking and payments and hotel employees witnessed signs of her traffickers' activities, were required to report instances of suspected trafficking to Wyndham brand defendants, and on information and belief, did make a report); *see also B.J.*, 2023 WL 6120682, at *8 (finding the plaintiff's allegations sufficient to support a direct beneficiary claim against the franchisor hotel where her allegations "permit an inference that [ ] staff members had knowledge of her trafficking and would have reported it to [the franchisor defendant]"); *S.C.*, 2024 WL 4773981, at *5 (rejecting the franchisor hotel's argument that the plaintiff failed to allege that it participated in a venture that engaged in trafficking, finding that the plaintiff's allegations that hotel employees concluded that she was being trafficked, "were under a duty to inform [the franchisor defendant] of suspected trafficking, and that the [ ] employees did inform [the franchisor defendant] of suspected trafficking" were sufficient).

Accordingly, the Court **DENIES** Wyndham and Choice's Motions to Dismiss. To the extent Hilton's Notice of Joinder presented arguments in excess of those presented in Apple's Motion to Dismiss, Hilton's Notice is **DENIED**.[5]

---

[5] Choice also challenges Plaintiff's allegations as "implausibly similar" to the other Franchisor Defendants. Choice Mem. at 13. The Court rejected a similar argument above with respect to the Franchisees and does so again here. While there is overlap among the allegations directed at the

24-CV-217 JLS (AHG)

**B.    Indirect Beneficiary Liability Claims**

As stated above, Plaintiff also pursues an indirect beneficiary claim, based on vicarious liability, against the Franchisors for violations by their franchisees and against the ESA Defendants for each other's violations.

**1.    Franchisor Defendants**

The Franchisors first argue that Plaintiff's allegations do not support a claim for vicarious liability because the statute does not recognize a claim for such liability. Wyndham Mem. at 16–17; Hilton Joinder at 1; Choice Mem. at 20.    The Court is unpersuaded.    *See J.M. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-00672-KJM-JDP, 2022 WL 10626493, at *5 (E.D. Cal. Oct. 18, 2022) ("As a threshold matter, a plaintiff may hold franchisors vicariously liable under the TVPRA.").    The Franchisors are correct that the TVPRA does not explicitly address the issue of vicarious liability, but "statutes are presumed not to disturb the common law, unless the language of a statute [is] clear and explicit for this purpose."    *State Eng'r of Nev. v. S. Fork Band of Te-Moak Tribe of W. Shoshone Indians of Nev.*, 339 F.3d 804, 814 (9th Cir. 2003) (citation and quotations omitted).    And "[w]hile a franchisor-franchisee relationship does not necessarily create an agency relationship . . . a franchisor may be held liable for a franchisee's actions if the franchisor controls the franchisee's day-to-day operations."    *B.J.*, 2023 WL 3569979, at *8 (quoting *J.M.,* 2022 WL 10626493, at *5 (finding allegations in complaint sufficient to show agency relationship where plaintiff "allege[d] defendants exercised control over the day-to-day operations of the hotels by hosting online bookings, setting hotel employee wages, making employment decisions for the hotels, providing standardized training

---

Franchisors, the Court notes they are not identical, and does not find the overlap sufficient to discredit Plaintiff's allegations in light of the allegations that the Franchisors are members of the same industry being sued for the same transactions involving traffickers following well-established patterns in a hotel environment.    Choice's reliance on *Bryars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051 (C.D. Cal. Feb. 14, 2023) does not counsel otherwise, as there, the district court dismissed a serial litigant's complaint that did not include a single factual allegation specific to the defendant and never mentioned the company the plaintiff sued after the caption page.    *See Bryars*, 656 F. Supp. 3d at 1059–61.

methods for hotel employees, and fixing hotel room rent prices")).  "When assessing the existence of an actual agency relationship, the 'extent of control exercised by the [principal]' is the 'essential ingredient.'"  *S.G. v. Vagabond Inn. Corp.*, No. SACV 21-955 PSG (KESX), 2022 WL 22903718, at *8 (C.D. Cal. Mar. 2, 2022) (quoting *J.C.*, 2020 WL 6318707, at *8).

The Franchisors next argue Plaintiff's allegations are conclusory and do not allege the requisite "day-to-day" control, emphasizing that the Franchisors "must be permitted to retain such control as is necessary to protect and maintain [their] trademark[s], trade name[s], and good will, without risk of creating an agency relationship with [their] franchisees."  Wyndham Mem. at 19 (first quoting *Cislaw v. Southland Corp.*, 6 Cal. Rptr. 2d 386, 393 (Cal. App. 1992); then citing *Oberlin v. Marlin Am. Corp.*, 596 F.2d 1322, 1327–28 (7th Cir. 1979); then citing *Mini Maid Servs. Co. v. Maid Brigade Sys., Inc.*, 967 F.2d 1516, 1520 (11th Cir. 1992); and then citing *Arguello v. Conoco, Inc.*, 207 F.3d 803, 1327–28 (5th Cir. 2000)); Choice Mem. at 21–23; Hilton Joinder at 3–4. Plaintiff responds that federal common law governs whether Plaintiff has pled an agency relationship, not California law, as relied upon by the Franchisors.[6] Pl.'s Wyndham Opp'n at 20; Pl.'s Choice Opp'n at 22; Pl.'s Hilton Opp'n at 2.

Plaintiff contends she has sufficiently pled the Franchisors exercised pervasive control over the Franchisees, both through standards and rules governing the means and methods used to operate the hotel, as well as through their direct involvement in hotel operations, that went beyond control necessary for Franchisors to protect their trademarks. Pl.'s Wyndham Opp'n at 21; Pl.'s Choice Opp'n at 22; Pl.'s Hilton Opp'n at 2–3.  Plaintiff also argues she has sufficiently pled agency through allegations that the Franchisors exercised control over the specific means and methods of operations that caused her

---

[6] The Court notes the Franchisor Defendants do not solely rely on California law, but also cite to the Restatement (Third) of Agency, *see* Hilton Joinder at 4, and cases applying federal common law to determine an actual agency relationship, *see* Wyndham Mem. at 19–20 (citing *B.J.*, 2023 WL 3569979, at *7–8); *see also* Choice Mem. at 20–21 (citing the same).

injuries.  Pl.'s Wyndham Opp'n at 22; Pl.'s Choice Opp'n at 23; Pl.'s Hilton Opp'n at 4.
Finally, Plaintiff argues her allegations do not "parrot legal conclusions" or merely recite
the elements of the cause of action as argued by the Franchisors, but instead add "helpful
detail" about how the element was met and must be credited at the motion to dismiss stage.
Pl.'s Wyndham Opp'n at 22–23; Pl.'s Choice Opp'n at 23.

The Court is persuaded that federal common law applies, considering that "most
courts apply the federal common law of agency to determine the existence of an agency
relationship for § 1595 claims."  *S.G.*, 2022 WL 22903718, at *8 (first citing *A.B.*,
484 F. Supp. 3d at 938; and then citing *J.C.*, 2020 WL 6318707, at *8); *see also Doe v.
Wyndham Hotels & Resorts*, No. 8:23-cv-1554-JVS (JDEx), 2023 WL 8888836, at *6
(C.D. Cal. Nov. 13, 2023).  *But see B.M.*, 2020 WL 4368214, at *6 (applying California
common law of agency).  Franchisors Wyndham and Choice also do not dispute that federal
common law applies in their respective Replies.[7]  *See* ECF Nos. 124, 125.

"Courts in the Ninth Circuit apply common law agency principles from the
Restatement (Third) of Agency."  *S.G.*, 2022 WL 22903718, at *8.  In the TVPRA context,
courts consider whether Plaintiff has alleged that each "franchisor exercises control over
the day-to-day operations of the franchisee such that it controls the instrumentality that
caused the plaintiff's harm."  *J.C.*, 2020 WL 6318707, at *8; *see also S.C.*, 2024 WL
4773981, at *7.

The SAC alleges the Franchisors "directly participated in and retained day-to-day
control over renting rooms" at the franchisee-owned hotels by, among other things,
requiring their respective franchisees to use the Franchisors' centralized reservation
system, or directly taking reservations through a central system it controlled and operated
with the ability to make reservations and take payments without franchisee approval or
involvement, controlling payment methods and identification verification that would be
accepted, controlling and restricting the ability of the franchisees and hotel staff to refuse

---

[7] Defendant Hilton did not file a reply in support of its Notice of Joinder.  *See generally* Docket.

or cancel a reservation, setting room rates or exercising control over the price of rooms, and collecting and retaining extensive guest data. SAC ¶¶ 183, 305, 366. Further, the Franchisors purportedly exercised and reserved the right to exercise "systemic and pervasive control" over their respective franchisees' "day-to-day operation" at each of the Subject Hotels by requiring the franchisees and management of the Subject Hotels to participate in mandatory training regarding all aspects of hotel operations, controlling the details of training conducted for hotel staff, establishing job descriptions, setting required staffing levels, controlling channels for guests to report complaints or provide feedback, imposing fines or penalties on the franchisees, and imposing detailed recordkeeping and reporting requirements. *Id.* ¶¶ 207–208, 329, 390.

Finally, Plaintiff alleges the Franchisors participated directly in aspects of the operation of the Subject Hotels that influenced trafficking at the hotels, including Plaintiff's trafficking, through (1) assuming or retaining control over and responsibility for training hotel staff on detecting and responding to human trafficking; (2) adopting, monitoring, enforcing policies and protocols regarding detecting and responding to human trafficking; (3) employing field-based associates who work with hotels on trafficking issues; (4) assessing or auditing hotel properties, specifically for the purposes of evaluating whether safety and security measures related to trafficking are in place; (5) establishing systems for guests to report security issues to franchisors; (6) requiring their franchisees to use a system to monitor and track housekeeping requests; (7) setting policies for how and when housekeeping services are provided; (8) and collecting and monitoring data that shows patterns of use of housekeeping services. *Id.* ¶¶ 182, 304, 365.

The Court finds Plaintiff has alleged a plausible claim for an actual agency relationship between the Franchisors and their respective franchisees, including the Franchisor Defendants. *Doe*, 2024 WL 4224915, at *8 (finding plaintiff plausibly alleged an agency relationship was created through: "providing mandatory training to hotel staff; maintaining oversight over hiring of hotel management and staff; requiring franchisees to use centralized services for day to day hotel operations; controlling reservation, property

management and revenue management systems; providing employee benefits to staff; controlling systems for guest feedback and complaints; imposing detailed recordkeeping and reporting obligations; controlling the price of rooms; setting up job qualifications"); *see also Doe*, 2024 WL 3088722, at 9–10 (finding allegations franchisor restricted the ability of franchisees to refuse or cancel a reservation, required mandatory training for hotel employees, set staffing levels, established job descriptions, and imposed detailed record keeping requirements, as well as had policies and procedures regarding hotel security, identification requirements, and payment method requirements, among other things, sufficient to state an agency relationship).   The Court is not persuaded Plaintiff's allegations are entirely conclusory and emphasizes that, "[a]t this stage, Plaintiff only needs to plead an agency relationship, not prove one."  *Doe*, 2024 WL 4224915, at *8.

Likewise, the Court is not persuaded by Hilton's cursory argument that even if Plaintiff adequately alleged an agency relationship, imputation would not be appropriate because she has not "plausibly allege[d] that violating the TVPRA's prohibitions against sex trafficking furthers Hilton's interest."  Hilton Joinder at 4.  Hilton cites no case law to support its argument, and the Court disagrees, as Plaintiff has alleged Hilton received a financial benefit from the rent of hotel rooms to Plaintiff's traffickers.  SAC ¶ 314.

Finally, the Franchisors argue Plaintiff has not stated a claim for vicarious liability because she does not plausibly allege their franchisees violated the TVPRA.  Wyndham Mem. at 20–21; Choice Mem. at 24–25; Hilton Joinder at 1.  With respect to the Franchisee Defendants, as indicated above, the Court finds Plaintiff's allegations sufficient to plead beneficiary liability, and accordingly the Court rejects this argument.  With respect to the Franchisors' other franchisees and hotel staff of the remaining Subject Hotels not owned by the named Franchisee Defendants, Plaintiff's allegations are also sufficient as she indicates her traffickers had a common modus operandi at all the Subject Hotels, and hotel staff observed the same "red flags" at each of the Subject Hotels franchised by the Franchisors and continued to rent rooms to Plaintiff's traffickers.  SAC ¶¶ 170–71, 179, 293–94, 301, 353–54, 362.  Thus, she has plausibly alleged the Franchisors' franchisees

violated the TVPRA.

The Court accordingly **DENIES** the Franchisors' Motions to Dismiss Plaintiff's vicarious liability claims brought against them under the TVPRA.

### 2. ESA

The ESA Defendants do not specifically challenge Plaintiff's argument they are vicariously liable for one another. SAC ¶ 433. Plaintiff alleges the ESA Defendants are corporate affiliates that acted together to operate San Diego Extended Stay America. *Id.* ¶ 418. She alleges each of the ESA Defendants directly participated in operation and control of the hotel, profited from revenue at the hotel, and exercised mutual control over the affiliated entities involved in the operation of the hotel. *Id.* Plaintiff alleges "all ESA Defendants were subject to common control and ownership and shared officers, finances, resources, and information regarding operation of the San Diego Extended Stay America." *Id.* ¶ 419. Finally, per Plaintiff, each of the ESA Defendants "participated in a joint venture operating the San Diego Extended Stay America involving common enterprise, profit-sharing, a community of interests, and joint rights of control and management." *Id.* ¶ 420. The Court finds these allegations sufficient, particularly considering they appear unchallenged by the ESA Defendants.

To the extent the ESA Defendants move to dismiss Plaintiff's TVPRA claim, as alleged under a vicarious liability theory, the ESA Defendants' Motion is **DENIED**.

## II. Perpetrator Liability Claims

As above, the Court will first analyze Plaintiff's direct perpetrator claims against ESA, Apple, Pacific Coast, Sports Arena, MVI, and OHM, then address Plaintiff's indirect perpetrator claims, based on vicarious liability, against ESA, Wyndham, Choice, and Hilton.

### A. Direct Perpetrator Claims

As noted above, "the TVPRA creates civil liability for defendants who have knowingly benefitted from TVPRA ventures (beneficiary liability) and for those who have themselves committed a criminal offense under § 1591 of the TVPRA (perpetrator

liability).'" *Doe*, 2024 WL 3088722, at *11.  Section 1591 imposes criminal sanctions on "whoever knowingly . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person . . . knowing . . . that means of force, threats of force, fraud, coercion . . . or any combination of such means will be used to cause the person to engage in a commercial sex act."  18 U.S.C. § 1591(a).  "Section 1591 imposes an actual knowledge requirement."  *J.M.*, 2023 WL 3456619, at *2 (citation omitted); *see also A.D. v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-cv-120, 2020 WL 8674205, at *2 n.1 (E.D. Va. July 22, 2020) (differentiating the "actual knowledge requirement" from the "constructive knowledge requirement" required for a beneficiary civil liability claim).  Thus, "to state a § 1595(a) claim against a hotel under a perpetrator theory, a plaintiff must allege facts plausibly establishing the defendant 'knowingly harbored or maintained a person with knowledge that fraud or force would be used to cause her to engage in a commercial sex act.'"  *B.J.*, 2023 WL 6120682, at *11 (quoting *J.M.*, 2023 WL 3456619, at *2).  "What the statute requires is that the defendant kn[ew] in the sense of being aware of an established modus operandi that will in the future cause a person to engage in prostitution."  *J.M.*, 2023 WL 3456619, at *2 (quoting *United States v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010)).

### 1.    Franchisee Defendants

The Franchisees argue Plaintiff has not alleged facts sufficient to state claims against them under a perpetrator liability theory.  OHM MTD at 13; Apple Mem. at 18–19; Pacific Coast Mem. at 20–21; Sports Arena Mem. at 5–7; MVI MTD at 13–14.  Plaintiff responds that she has pled facts sufficient to support an inference that the Franchisees kept providing rooms to Plaintiff's traffickers knowing or in reckless disregard of the fact that they would be used to exploit her and other victims.  Pl.'s Apple Opp'n at 22; Pl.'s Pacific Coast Opp'n at 20–21; Pl.'s Sports Arena Opp'n at 16–17; Pl.'s MVI Opp'n at 19–20.  She also argues her allegations that hotel staff were familiar with Plaintiff's traffickers and implicitly encouraged the traffickers' illegal activities demonstrate participation in a criminal venture.  Pl.'s Apple Opp'n at 23; Pl.'s Pacific Coast Opp'n at 21; Pl.'s Sports Arena Opp'n

at 16–17; Pl.'s MVI Opp'n at 19–20.

"Because a plaintiff must allege actual knowledge rather than constructive knowledge, district courts tend to look beyond allegations of 'red flag' signs that should have put a defendant on notice of sex trafficking, and in particular focus on allegations regarding hotel staff actions or duration and age that are suggestive of actual knowledge of sex trafficking." *Doe*, 2025 WL 85831, at *13; *see also B.J.*, 2023 WL 6120682, at *6 (finding that the plaintiff had stated a perpetrator liability claim against defendant Concord Inn, but not as to any of the other defendant hotels, where she alleged that "her trafficker worked directly with the manager of the Studio 6 Concord to sell [plaintiff] for commercial sex"); *Doe (S.A.S.)*, 2024 WL 3276417, at *2 (finding that the plaintiff stated a claim for perpetrator liability where she alleged that a manager from the hotel "was a customer himself, exchanging free rooms for [the plaintiff's] services"); *J.M.*, 2023 WL 3456619, at *2 (finding that the plaintiff plausibly pleaded the defendant's actual knowledge where she alleged that hotel staff rented her trafficker rooms away from other guests and "[i]nstructed 'johns' to 'hurry up' as they entered and left her room," among other allegations that hotel staff witnessed and overheard physical abuse); *S.C.*, 2024 WL 4773981, at *1, 6 (finding that the plaintiff plausibly pleaded actual knowledge where she alleged that she visited the same hotel three times per week for a year, looked visibly younger than eighteen and met with "older men . . . approximately 50 years old," and the activity bore other indicia of sex trafficking).

Here, the Court finds Plaintiff has not alleged that the staff at the Subject Hotel took actions that suggest actual knowledge of her traffickers' sex trafficking, such as a manager working directly with her traffickers. Nor does she allege specific details regarding her age or the duration and frequency of her traffickers' activity to support a claim that the Franchisees actually knew, rather than should have known, that they were participating in a sex trafficking venture. As noted above, the Court finds Plaintiff's allegations that her traffickers "frequently" trafficked her at the Subject Hotels, that hotel staff observed her and her traffickers behaving in ways consistent with trafficking, the front desk staff

24-CV-217 JLS (AHG)

permitted payments by cash, that hotel staff provided extra housekeeping, among other allegations, sufficient to plausibly state constructive knowledge.  However, the Court does not find that these same allegations support a conclusion that the Franchisees had actual knowledge of the sex trafficking activity.  *See Doe*, 2025 WL 85831, at *14 (finding plaintiff's allegations that "her traffickers 'frequent[ly]' used the Sacramento Days Inn, that she was trafficked there at least twice, that hotel staff had interactions at check-in with her traffickers and their victims that were consistent with trafficking, that her traffickers did not provide identification, that she had visible injuries, that front desk staff permitted payments by cash and prepaid card, and that hotel staff provided extra housekeeping, among other allegations," were sufficient to plausibly state constructive knowledge, but not actual knowledge of trafficking); *see also Doe (G.N.C.)*, 2024 WL 4149251, at *3 (holding that the plaintiff's allegations that she stayed at the subject hotel for "extended periods," that her "trafficker was often present with [her] at check in and would linger around the hotel or in the parking lot while she was with a john," that the "hotel room was paid for with a prepaid card," that her trafficker "limited her ability to communicate with hotel staff, such that it was obvious and apparent she was being subjected to coercion and control," that "[h]ousekeeping staff were prevented from entering the room for regular cleaning," that there was "heavy foot traffic" in and out of her room, and that she would "enter[ ] the hotel lobby in lingerie" were sufficient to allege the hotel defendant's constructive knowledge but not actual knowledge of trafficking).

Accordingly, the Court **GRANTS** the Franchisees' Motions to Dismiss as to Plaintiff's perpetrator liability claim.  However, the Court will **GRANT** Plaintiff **LEAVE TO AMEND** as the Court does not find, at this time, that amendment would be futile.  *DeSoto*, 957 F.2d at 658 (finding leave to amend should be granted unless the court determines that no modified contention "consistent with the challenged pleading . . . could cure the deficiency" (quoting *Schreiber Distrib. Co.*, 806 F.2d at 1401)).

/ / /

/ / /

2.    *ESA*

The Court notes that ESA appears to lump both Plaintiff's perpetrator and beneficiary liability claims together in its Motion to Dismiss and does not expressly delineate sections of its Motion to challenge perpetrator liability as opposed to beneficiary liability.  Instead, ESA argues generally that Plaintiff has not established ESA was aware of her trafficking, focusing largely on the lack of "constructive" knowledge." *See generally* ESA Mem.  The Court found above that Plaintiff sufficiently pled that ESA knew or should have known it engaged in a venture that trafficked Plaintiff.  However, the Court finds, as it did for the Franchisee Defendants, that Plaintiff has not plausibly alleged facts establishing the ESA Defendants had actual knowledge, as opposed to constructive knowledge, of Plaintiff's trafficking.  Plaintiff has similarly not alleged staff at the San Diego Extended Stay America took actions suggesting actual knowledge, nor has she alleged specific details regarding the duration and frequency of her traffickers' activities at this hotel to support an inference ESA had actual knowledge.  Accordingly, for the same reasons as above, the Court **DISMISSES** Plaintiff's perpetrator claim.  Likewise, as above, the Court finds amendment of Plaintiff's perpetrator claim against ESA would not be futile and thus **GRANTS** Plaintiff **LEAVE TO AMEND**.

**B.    *Indirect Perpetrator Claims***

1.    *Franchisor Defendants*

As discussed above, Plaintiff also pursues a vicarious liability theory against the Franchisors for violations by their franchisees.  However, as the Court finds Plaintiff has failed to state perpetrator claims against the Franchisees, Plaintiff's vicarious liability theories for her perpetrator claims fail.[8]  *See A.B.*, 532 F. Supp. 3d at 1028 ("Plaintiff fails to state a claim under an agency theory because the Amended Complaint does not plausibly allege that the hotels are liable under § 1595.").  Accordingly, the Franchisors' Motions on

---

[8] To the extent Plaintiff seeks to hold the Franchisors vicariously liable for perpetrator claims committed by franchisees not named as defendants in this Action, the SAC's allegations do not differ as to these franchisees, and thus Plaintiff similarly fails to allege perpetrator violations by these franchisees.

38

this ground are **GRANTED**.  However, as the Court has granted Plaintiff leave to amend her perpetrator claims against Franchisees, the Court finds Plaintiff could possibly cure the deficiency with her vicarious liability theories on these claims, and accordingly, Plaintiff is **GRANTED LEAVE TO AMEND**.

### 2.   *ESA*

Like the Franchisors, Plaintiff also pursues a vicarious liability theory against the ESA Defendants for each other's violations.  The Court notes, as explained above with respect to Plaintiff's indirect beneficiary claim, that the ESA Defendants do not expressly address Plaintiff's vicarious liability theory against them.  However, here, as the Court finds Plaintiff fails to state a perpetrator claim against ESA, her claim for vicarious liability against the ESA Defendants for each other's perpetrator violations, necessarily fails.  Accordingly, the Court **DISMISSES** this claim, but **GRANTS** Plaintiff **LEAVE TO AMEND**, in light of the Court's finding Plaintiff could possibly cure her direct perpetrator claim's deficiency.

## III.   Joinder

Alternatively, Apple, joined by Hilton, argues that Plaintiff improperly joined each of them in this suit, and as such, claims against Apple and Hilton should be severed and dismissed without prejudice.  Apple Mem. at 19; Hilton Joinder at 1.  "Rule 20(a) governs permissive joinder, and identifies two prerequisites for the joinder of defendants: (1) a right to relief must be asserted against the defendants jointly, severally or in the alternative with respect to or arising out of the same transaction, occurrence or series of transactions or occurrences; and (2) some question of law or fact common to all defendants will arise." *Armstead v. City of Los Angeles*, 66 F. Supp. 3d 1254, 1262–63 (C.D. Cal. 2014), *aff'd sub nom. Alvarado v. City of Los Angeles*, 720 F. App'x 889 (9th Cir. 2018) (first citing Fed. Civ. R. P. 20(a)(2); then citing *League to Save Lake Tahoe v. Tahoe Reg'l Plan. Agency,* 558 F.2d 914, 917 (9th Cir.1977); and then citing Wright & Miller, Federal Practice and Procedure: Civil § 1653).  Joinder is to be construed liberally "in order to promote trial convenience and to expedite the final determination of disputes, thereby

preventing multiple lawsuits." *League to Save Lake Tahoe,* 558 F.2d at 917. Indeed, under the federal rules, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 724 (1966). And district courts retain broad discretion in applying Rule 20. *See Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1296–97 (9th Cir. 2000).

Apple argues Plaintiff's claims do not form the same transaction or occurrence as the San Jose Homewood Suites (owned by Apple and franchised by Hilton), is the only hotel property in this action located in Northern California, and all the other properties are located in Southern California. Apple Mem. at 21. Apple also asserts Plaintiff's claims involve different hotel brands and owners and she alleges she was trafficked at various properties at different times, starting in January 2014, and ending in June 2015, thus the employees and witnesses for the other claims will be different as well. *Id.*

Plaintiff in turn, argues the claims against all Defendants arise out of the same transaction or occurrence as she was continuously trafficked while under the control of the same street-level traffickers, and her trafficking at all the Defendants' hotels occurred during overlapping time periods. Pl.'s Apple Opp'n at 24. She explains that her traffickers used a consistent modus operandi during this period, resulting in common patterns of "red flags" at all the hotels where she was trafficked. *Id.* Because of this, she contends there are "common overlapping factual issues and judicial economy would be served through joinder of these claims together for common discovery." *Id.*

The Parties each cite district court cases outside of this Circuit where courts have found joinder to be both proper and improper in TVPRA actions. *Compare A.D. v. Cavalier Mergersub LP*, No. 2:22-CV-095-JES-NPM, 2022 WL 4357989, at *4 (M.D. Fla. Sept. 20, 2022) (finding the "individualized nature" of plaintiff's claims against each defendant made the sex trafficking at each hotel chain a "separate transaction or occurrence"), *with G.M. v. Choice Hotels Int'l, Inc.*, 725 F. Supp. 3d 766, 774–75 (S.D. Ohio 2024) (finding issues related to plaintiff's relationship with her traffickers and injuries

resulting from the trafficking were common issues that made joinder proper).

The Court finds, on the facts before it in this case, that Plaintiff's SAC meets the liberal standard for permissive joinder. First, the Court is persuaded that although Plaintiff was trafficked at different hotels, as she was trafficked by the same individuals with a consistent modus operandi at the hotels during overlapping time periods, her claims arise out of a series of occurrences that "involve related activities and have a similarity in factual background." *See Gonzalez v. Wal-Mart Stores, Inc.*, No. 2:14-cv-00230-JCM-NJK, 2014 WL 2591690, at * 6 (D. Nev. May 22, 2014), *report and recommendation adopted*, No. 2:14-CV-230 JCM (NJK), 2014 WL 2591499 (D. Nev. June 10, 2014). And while the Court recognizes there may be differences between Defendants in this action, Plaintiff has shown some question of law or fact common to all Defendants will arise, such as her relationship with her traffickers and the common pattern of "red flags" at each hotel. *See id.* (emphasizing "it is important to keep in mind that the text of Rule 20 does not require a multitude of common questions or that common questions predominate, but rather that there be '*any* question of law or fact common to all defendants [that] will arise in the action'" (emphasis in original) (citing Rule 20(a)(2)(13)).

Accordingly, the Court **DENIES** Apple's Motion and Hilton's Joinder to sever and dismiss claims against them.

## CONCLUSION

For the foregoing reasons:

1. ESA's Motion to Dismiss (ECF No. 54) is **GRANTED IN PART WITH LEAVE TO AMEND** as to Plaintiff's direct and indirect perpetrator theories and **DENIED IN PART** as to Plaintiff's direct and indirect beneficiary theories.

2. Wyndham's Motion to Dismiss (ECF No. 75) is **GRANTED IN PART WITH LEAVE TO AMEND** as to Plaintiff's indirect perpetrator theory and **DENIED IN PART** as to Plaintiff's direct and indirect beneficiary theories.

3. Choice's Motion to Dismiss (ECF No. 76) is **GRANTED IN PART WITH LEAVE TO AMEND** as to Plaintiff's indirect perpetrator theory and **DENIED IN PART**

as to Plaintiff's direct and indirect beneficiary theories.

   4. Apple's Motion to Dismiss (ECF No. 77) and Hilton's Joinder (ECF No. 78) are **GRANTED IN PART WITH LEAVE TO AMEND** as to Plaintiff's direct and indirect perpetrator theories and **DENIED IN PART** as to Plaintiff's direct and indirect beneficiary theories and Apple and Hilton's improper joinder argument.

   5. Pacific Coast's Motion to Dismiss (ECF No. 100) is **GRANTED IN PART WITH LEAVE TO AMEND** as to Plaintiff's direct perpetrator theory and **DENIED IN PART** as to Plaintiff's direct beneficiary theory.

   6. Sports Arena's Motion to Dismiss (ECF No. 123) is **GRANTED IN PART WITH LEAVE TO AMEND** as to Plaintiff's direct perpetrator theory and **DENIED IN PART** as to Plaintiff's direct beneficiary theory.

   7. MVI's Motion to Dismiss (ECF No. 135) is **GRANTED IN PART WITH LEAVE TO AMEND** as to Plaintiff's direct perpetrator theory and **DENIED IN PART** as to Plaintiff's direct beneficiary theory.

   8. OHM's Motion to Dismiss (ECF No. 138) is **GRANTED IN PART WITH LEAVE TO AMEND** as to Plaintiff's direct perpetrator theory and **DENIED IN PART** as to Plaintiff's direct beneficiary theory.

   Finally, as noted above, Plaintiff **SHALL** file a motion to proceed under a pseudonym **within 20 days** of entry of this Order.

   **IT IS SO ORDERED.**

Dated:  March 13, 2025

             *Janis L. Sammartino*

             Hon. Janis L. Sammartino
             United States District Judge